CC' Town Atty, KK King, VKVLake

| SUMMONS - CIVIL | | STATE OF CONNECTICUT |
|---|---|---|
| JD-CV-1   Rev. 2-20 | For information on | **SUPERIOR COURT** |
| C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259; | ADA accommodations, | www.jud.ct.gov |
| P.B. §§ 3-1 through 3-21, 8-1, 10-13 | contact a court clerk or go to: www.jud.ct.gov/ADA. | |

**Instructions are on page 2.**

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk (Number, street, town and zip code) | Telephone number of clerk | Return Date (Must be a Tuesday) |
|---|---|---|
| 235 Church Street, New Haven, CT 06511 | ( 203 ) 503 – 6800 | 08/18/2020 |

| ☒ Judicial District | G.A. | At (City/Town) | Case type code (See list on page 2) | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | New Haven | Major: T | Minor: 90 |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (if attorney or law firm) |
|---|---|
| Dey Smith Steele, LLC, 9 Depot Street, 2nd Floor, New Haven, CT 06460 | 412130 |

| Telephone number | Signature of plaintiff (if self-represented) |
|---|---|
| ( 203 ) 882 – 3351 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. ☒ Yes ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book (if agreed) jhs@deysmith.com |
|---|---|

| Parties | Name (Last, First, Middle Initial) and address of each party (Number; street; P.O. Box; town; state; zip; country, if not USA) | |
|---|---|---|
| First plaintiff | Name: Washington, Stephanie <br> Address: c/o Dey Smith Steele, LLC, 9 Depot Street, 2nd Floor, Milford, CT 06460 | P-01 |
| Additional plaintiff | Name: <br> Address: | P-02 |
| First defendant | Name: Eaton, Devin <br> Address: c/o Hamden Police Department, 2900 Dixwell Avenue, Hamden, CT 06518 | D-01 |
| Additional defendant | Name: Pollock, Terrance <br> Address: c/o Yale University Police Department, 101 Ashmun Street, New Haven, CT 06511 | D-02 |
| Additional defendant | Name: Abdullatf, Aziz <br> Address: 68 Warner Street, Apartment 3, Hamden, CT 06514 | D-03 |
| Additional defendant | Name: Leng, Curt B., Mayor, Town of Hamden <br> Address: c/o Vera Morrison, Town Clerk, Hamden Government Center, 2750 Dixwell Avenue, Hamden, CT 06518 | D-04 |

| Total number of plaintiffs: 1 | Total number of defendants: 15 | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   The court staff is not allowed to give advice on legal matters.

| Date | Signed (Sign and select proper box) | ☒ Commissioner of Superior Court | Name of person signing |
|---|---|---|---|
| 07/02/2020 | | ☐ Clerk | John-Henry M. Steele |

| If this summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. | |
| c. The court staff is not permitted to give any legal advice in connection with any lawsuit. | |
| d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | |

| I certify I have read and understand the above: | Signed (Self-represented plaintiff) | Date | Docket Number |
|---|---|---|---|

A TRUE COPY
ATTEST

TIMOTHY S. WALL, STATE MARSHAL
NEW HAVEN COUNTY CONNECTICUT

2/41

## Instructions

1. *Type or print legibly. If you are a self-represented party, this summons must be signed by a clerk of the court.*

2. *If there is more than one defendant, make a copy of the summons for each additional defendant. Each defendant must receive a copy of this summons. Each copy of the summons must show who signed the summons and when it was signed. If there are more than two plaintiffs or more than four defendants, complete the Civil Summons Continuation of Parties (form JD-CV-2) and attach it to the original and all copies of the summons.*

3. *Attach the summons to the complaint, and attach a copy of the summons to each copy of the complaint. Include a copy of the Civil Summons Continuation of Parties form, if applicable.*

4. *After service has been made by a proper officer, file the original papers and the officer's return of service with the clerk of the court.*

5. *Use this summons for the case type codes shown below.*

   *Do not use this summons for the following actions:*

   (a) *Family matters (for example divorce, child support, custody, paternity, and visitation matters)*
   (b) *Any actions or proceedings in which an attachment, garnishment or replevy is sought*
   (c) *Applications for change of name*
   (d) *Probate appeals*

   (e) *Administrative appeals*
   (f) *Proceedings pertaining to arbitration*
   (g) *Summary Process (Eviction) actions*
   (h) *Entry and Detainer proceedings*
   (i) *Housing Code Enforcement actions*

## Case Type Codes

| MAJOR DESCRIPTION | CODE Major/ Minor | MINOR DESCRIPTION | MAJOR DESCRIPTION | CODE Major/ Minor | MINOR DESCRIPTION |
|---|---|---|---|---|---|
| Contracts | C 00 | Construction - All other | Property | P 00 | Foreclosure |
| | C 10 | Construction - State and Local | | P 10 | Partition |
| | C 20 | Insurance Policy | | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | C 30 | Specific Performance | | P 30 | Asset Forfeiture |
| | C 40 | Collections | | P 90 | All other |
| | C 50 | Uninsured/Underinsured Motorist Coverage | Torts (Other than Vehicular) | T 02 | Defective Premises - Private - Snow or Ice |
| | C 60 | Uniform Limited Liability Company Act – C.G.S. 34-243 | | T 03 | Defective Premises - Private - Other |
| | C 90 | All other | | T 11 | Defective Premises - Public - Snow or Ice |
| Eminent Domain | E 00 | State Highway Condemnation | | T 12 | Defective Premises - Public - Other |
| | E 10 | Redevelopment Condemnation | | T 20 | Products Liability - Other than Vehicular |
| | E 20 | Other State or Municipal Agencies | | T 28 | Malpractice - Medical |
| | E 30 | Public Utilities & Gas Transmission Companies | | T 29 | Malpractice - Legal |
| | E 90 | All other | | T 30 | Malpractice - All other |
| Housing | H 10 | Housing - Return of Security Deposit | | T 40 | Assault and Battery |
| | H 12 | Housing - Rent and/or Damages | | T 50 | Defamation |
| | H 40 | Housing - Housing - Audita Querela/Injunction | | T 61 | Animals - Dog |
| | H 50 | Housing - Administrative Appeal | | T 69 | Animals - Other |
| | H 60 | Housing - Municipal Enforcement | | T 70 | False Arrest |
| | H 90 | Housing - All Other | | T 71 | Fire Damage |
| Miscellaneous | M 00 | Injunction | | T 90 | All other |
| | M 10 | Receivership | Vehicular Torts | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | M 15 | Receivership for Abandoned/Blighted Property | | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | M 20 | Mandamus | | V 05 | Motor Vehicles* - Property Damage only |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) | | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | M 40 | Arbitration | | V 09 | Motor Vehicle* - All other |
| | M 50 | Declaratory Judgment | | V 10 | Boats |
| | M 63 | Bar Discipline | | V 20 | Airplanes |
| | M 66 | Department of Labor Unemployment Compensation Enforcement | | V 30 | Railroads |
| | M 68 | Bar Discipline - Inactive Status | | V 40 | Snowmobiles |
| | M 70 | Municipal Ordinance and Regulation Enforcement | | V 90 | All other |
| | M 90 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 | | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| | M 83 | Small Claims Transfer to Regular Docket | | | |
| | M 84 | Foreign Protective Order | Wills, Estates and Trusts | W 10 | Construction of Wills and Trusts |
| | M 89 | CHRO Action in the Public Interest - P.A. 19-93 | | W 90 | All other |
| | M 90 | All other | | | |

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2    Rev. 9-12

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

3/41

First named Plaintiff *(Last, First, Middle Initial)*

First named Defendant *(Last, First, Middle Initial)*

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)*   Address *(Number, Street, Town and Zip Code)* | CODE | |
|---|---|---|
| Sullivan, John, Acting Chief of Police, Town of Hamden<br>c/o Vera Morrison, Town Clerk, Hamden Government Center, 2750 Dixwell Avenue, Hamden, CT 06518 | 05 | |
| Town of Hamden<br>c/o Vera Morrison, Town Clerk, Hamden Government Center, 2750 Dixwell Avenue, Hamden, CT 06518 | 06 | |
| Hamden Police Department<br>c/o Vera Morrison, Town Clerk, Hamden Government Center, 2750 Dixwell Avenue, Hamden, CT 06518 | 07 | |
| Higgins, Ronnell, Chief of Police<br>c/o Division of the Senior Vice President and General Counsel, 2 Whitney Avenue, 6th Floor, New Haven, CT 06511 | 08 | |
| Yale University<br>c/o Division of the Senior Vice President and General Counsel, 2 Whitney Avenue, 6th Floor, New Haven, CT 06511 | 09 | |
| Yale University Police Department<br>c/o Division of the Senior Vice President and General Counsel, 2 Whitney Avenue, 6th Floor, New Haven, CT 06511 | 10 | |
| Elicker, Justin, Myor, City of New Haven<br>c/o Michael B. Smart, Town Clerk, 200 Orange Street, Room 202, New Haven, CT 06510 | 11 | |
| Reyes, Otoniel, Chief of Police<br>c/o Michael B. Smart, Town Clerk, 200 Orange Street, Room 202, New Haven, CT 06510 | 12 | *FOR COURT USE ONLY - File Date* |
| City of New Haven<br>c/o Michael B. Smart, Town Clerk, 200 Orange Street, Room 202, New Haven, CT 06510 | 13 | |
| New Haven Police Department<br>c/o Michael B. Smart, Town Clerk, 200 Orange Street, Room 202, New Haven, CT 06510<br>T&S United, LLC<br>c/o Albert J. Barr, Esq., Barr & Morgan, 22 Fifth Street, Stamford, CT 06905 | 14<br>~~14~~<br>15 | Docket number |

**CIVIL SUMMONS-Continuation**



RETURN DATE: AUGUST 18, 2020          :          SUPERIOR COURT

STEPHANIE WASHINGTON                   :          JUDICIAL DISTRICT

V.                                                          :          OF NEW HAVEN

DEVIN EATON, TERRANCE              :          AT NEW HAVEN
POLLOCK, AZIZ ABDULLATTF,         :
CURT B. LENG, JOHN SULLIVAN,    :
TOWN OF HAMDEN, TOWN OF         :
HAMDEN POLICE DEPARTMENT,      :
RONNELL HIGGINS, YALE              :
UNIVERSITY, YALE UNIVERSITY      :
POLICE DEPARTMENT, JUSTIN        :
ELICKER, OTONIEL REYES, CITY      :
OF NEW HAVEN, NEW HAVEN          :
POLICE DEPARTMENT, and T&S        :
UNITED, LLC                                    :          JULY 13, 2020

## COMPLAINT

### FIRST COUNT: (Negligence v. Defendant Eaton)

     1.     The plaintiff, Stephanie Washington ("Ms. Washington"), is an individual residing in West Haven, Connecticut.

     2.     The defendant, Devin Eaton ("Defendant Eaton"), is an individual who was at the time of the incident described herein, a police officer employed by Defendant Hamden, acting under color of state law and within the scope of his employment as an employee of the Town of Hamden ("Defendant Hamden") assigned to the defendant, Town of Hamden's Police Department ("Defendant HPD").[1]

---

[1] Defendant Eaton is sued in his individual capacity.

5/41

3.    At the time of the incident alleged herein, Defendant Eaton was under the direction and control of Defendant Hamden and Defendant HPD and was acting in furtherance of the law enforcement business and interests of Defendant Hamden, and Defendant HPD.

4.    The defendant Terrance Pollock ("Defendant Pollock"), was at the time of the incident described herein, acting under color of state law as a police officer employed by the defendant, Yale University ("Defendant Yale") assigned to Defendant Yale's Police Department ("Defendant YPD").

5.    At the time of the incident alleged herein, and continuously to the present day, Defendant Yale's police officers, including Defendant Pollock, have acted in a dual capacity as law enforcement agents for Defendant Yale and for the defendant, City of New Haven ("Defendant New Haven").

6.    At the time of the incident alleged herein, Defendant Pollack was under the direction and control of Defendant Yale, Defendant YPD, Defendant New Haven, and the defendant, New Haven Police Department ("Defendant NHPD") and was acting in furtherance of the law enforcement business and interests of Defendant Yale, Defendant YPD, Defendant New Haven, and Defendant NHPD.[2]

7.    The defendant, Aziz Abdullattf, now or formerly of 68 Warner Street, Apartment 3, Hamden, CT 06514 ("Defendant Abdullattf") is an individual who was at the time of the incident described herein employed by the Defendant, T&S United, LLC

---

[2] Defendant Pollock is sued in his individual capacity.

6/41

(the "LLC-Defendant") and was acting at all times within the scope of his employment with the LLC-Defendant.

8.      The defendant, Curt B. Leng ("Defendant Leng"), was at the time of the incident described herein, and still is, Mayor of Defendant Hamden.[3]

9.      The defendant, John Sullivan ("Defendant Sullivan"), is currently Acting Chief of Police for Defendant Hamden.[4]

10.     Defendant Hamden was at the time of the incident described herein, and still is, a municipal corporation organized and existing under the laws of the State of Connecticut.[5]

11.     The defendant, Hamden Police Department ("Defendant HPD") was at the time of the incident described herein, and still is, a lawfully formed police department organized and operating under the broader corporate structure of Defendant Hamden.[6]

12.     The defendant, Ronnell Higgins ("Defendant Higgins"), was at the time of the incident described herein, and still is, Director of Public Safety and Chief of Police for Defendant Yale.[7]

13.     Defendant Yale was at the time of the incident described herein, and still is, a private corporate entity existing under the laws of the State of Connecticut.[8]

---

[3] Defendant Leng is sued in his official capacity.
[4] Defendant Sullivan is sued in his official capacity.
[5] Defendant Hamden is sued in its individual capacity for the indemnity claim and in its official capacity for the Monell claim.
[6] Defendant HPD is sued in its official capacity.
[7] Defendant Higgins is sued in his official capacity.

7/41

14.    Defendant YPD is a lawfully formed private police department existing and operating under the broader organizational structure of Defendant Yale.[9]

15.    Despite its status as a private police department, the officers of Defendant YPD are appointed to Defendant Yale's police force by the Defendant New Haven's Board of Police Commissioners pursuant to section 3 of Public Act 83-466, and have all of the enforcement powers conferred on police officers for Defendant New Haven.

16.    The defendant, Justin Elicker ("Defendant Elicker") is currently Mayor of Defendant New Haven.[10]

17.    The defendant, Otoniel Reyes ("Defendant Reyes") was at the time of the incident described herein, and still is, Chief of Police for Defendant New Haven.[11]

18.    Defendant New Haven was at the time of the incident described herein, and still is, a municipal corporation organized and existing under the laws of the State of Connecticut.[12]

19.    Defendant NHPD was at the time of the incident described herein, and still is, a lawfully formed police department under the broader municipal corporate structure of Defendant New Haven.[13]

---

[8] Defendant Yale is sued in its individual capacity for the claim for indemnity and the claims for respondeat superior, and in its official capacity for the Monell claim.
[9] Defendant YPD is sued in its official capacity.
[10] Defendant Elicker is sued in his official capacity.
[11] Defendant Reyes is sued in his official capacity.
[12] Defendant New Haven is sued in its individual capacity for the state law claim for indemnity and in its official capacity for the Monell claim.
[13] Defendant NHPD is sued in its official capacity.

8/41

20.     At the time of the incident described herein, the LLC-Defendant was, and still is, a limited liability company organized and existing under the laws of the State of Connecticut, doing business at its principal place of business as Go on Gas, a 24-hour gas station/convenience store located at 144 Arch Street, Hamden, Connecticut.

21.     At all times relevant to the claims herein, a cross-policing agreement was in force between Defendant New Haven and Defendant Hamden entitled, "TOWN OF HAMDEN AND THE CITY OF NEW HAVEN NON-EMERGENCY INTERAGENCY AGREEMENT" (hereinafter referred to as the "Cross-Policing Agreement"), which was signed by John DeStefano, Jr., Mayor of Defendant New Haven on March 11, 2011, and Scott Jackson, Mayor of the Defendant Hamden on March 9, 2011.

22.     Incorporated by reference into the terms of the Cross-Policing Agreement are the terms of the Non-Emergency Interagency Agreement Between Hamden and New Haven Operational Guidelines ("Operational Guidelines").

23.     The Operational Guidelines were signed by Frank Limon, Police Chief, City of New Haven on January 31, 2011, and by Thomas Wydra, Police Chief, Town of Hamden on March 9, 2011.

24.     Prior to signing of the Cross-Policing Agreement and the Operational Guidelines, the terms of same were approved by Defendant Hamden and Defendant New Haven in the same manner as ordinances are approved by each municipality.

25.     The terms of the Cross-Policing Agreement and Operational Guidelines were at the time of the incident described herein applicable to Defendant Yale,

5

9/41

Defendant YPD, and the individual employees of Defendant YPD, including Defendant Pollock and Defendant Higgins.

26.     Accordingly, the Cross-Policing Agreement and the Operational Guidelines, which were authorized by statute and voluntarily entered into by Defendant New Haven and Defendant Hamden, were binding upon and consequently an official policy of Defendant New Haven, Defendant NHPD, Defendant Hamden, and Defendant HPD.

27.     Pursuant to the terms of the Cross-Policing Agreement and the Operational Guidelines, the Police Chiefs of Defendant Hamden and Defendant New Haven constitute the oversight board for the administration and performance of the Cross-Policing Agreement.

28.     Pursuant to the terms of the Cross-Policing Agreement, and at the time of the incident alleged herein, each police officer of Defendant Hamden had the power to take any action in the City of New Haven that he or she could take in the Town of Hamden, subject to applicable terms of the Cross-Policing Agreement, the Operational Guidelines, and the laws of the State of Connecticut.

29.     Additionally, pursuant to the express terms of the Operational Guidelines:

      2.     All participating agencies will ensure that officers are not actively engaged in proactive law enforcement activity outside of their home jurisdiction-unless engaged in a cooperative effort with a participating municipality and within the jurisdiction of the participating municipality.

      …

6

10 41

6.    Officers, when considering invoking inter-agency authority, should ensure their objective is to accomplish a public safety initiative, and such action avoids, to the extent possible, unintended or undesirable consequences or will likely result in embarrassment to the municipalities involved. Considerations may include, but are not limited to:

a.    Are you uniformed or easily identified as a Police Officer?

b.    Are you operating a police vehicle?

c.    Do you have the appropriate equipment to intervene?

d.    Do you have communications with the agency?

e.    Is it necessary to act immediately?

Additionally, when witnessing an infraction, officers will consider the following prior to taking enforcement action:

1.    Are you driving a non-government (private) vehicle?

2.    Are you accompanied by non-law enforcement citizen(s)?

3.    Does ignoring the infraction put the public at immediate risk? For example, the infraction does not appear to be escalating, such as an infraction that may be a DUI, etc.

7.    Upon taking action as authorized by this Agreement, any out-of-town officer shall notify such local department as to their location, nature of the incident, and any assistance necessary as soon as practical and safe. The officer involved shall notify their home agency of the aforementioned information .... "On-scene" incident supervision will rest with the local agency.

30.    On or about April 16, 2019, at or before 4:17 A.M., Ms. Washington was traveling with a companion, Paul Witherspoon ("Mr. Witherspoon"), to the LLC-

7

Defendant's principal place of business in a two-door 1999 red Honda Civic, Connecticut license plate #AK 63322 ("the red Honda Civic"), which Ms. Washington owned. Ms. Washington was in the passenger seat. Mr. Witherspoon drove.

31.    Upon arriving at the LLC-Defendant's principal place of business at approximately 4:17 A.M., Mr. Witherspoon parked the red Honda Civic in front of a gas pump close to the late-night service window, exited the red Honda Civic, and approached Defendant Abdullattf, who was working for the LLC-Defendant at the window.

32.    Ms. Washington remained in the passenger seat of red Honda Civic as Mr. Witherspoon made his purchase through the LLC-Defendant's agent, servant and/or employee, Defendant Abdullattf.

33.    At approximately this same time and place, Mr. Jordany Rodriguez ("Mr. Rodriguez"), pulled his vehicle up to a different gas pump adjacent to the red Honda Civic, walked past the front bumper of the red Honda Civic, and approached the late-night service window where Mr. Witherspoon was standing.

34.    At approximately 4:18 A.M., Mr. Witherspoon and Mr. Rodriguez engaged in some sort of discussion near the late-night service window that was inaudible to Ms. Washington.

35.    Mr. Rodriguez left the area near the gas station window, passed the front bumper of the red Honda Civic, and started walking towards his vehicle.

8

12/41

36.     Mr. Witherspoon followed Mr. Rodriguez and the pair continued their discussion, which was still inaudible to Ms. Washington.

37.     After their discussion concluded, Mr. Witherspoon tapped the back of Mr. Rodriguez's vehicle who then drove off.

38.     At approximately 4:20 A.M., and as a direct and proximate consequence of supposedly witnessing the interaction between Mr. Witherspoon and Mr. Rodriguez, Defendant Abdullattf, initiated a 911 call with the Dispatch Operator for the Defendant, Town of Hamden's, Municipal Police Department ("Defendant Hamden's Dispatch").

39.     Portions of this 911 call include the following:

> **Defendant Abdullatif:** Uh, I have my delivery for the newspaper. Uh, somebody who delivered my newspaper and I have, like, a regular customer driver a red car (UI) license plate AK63322 long dreads parking here, long dreads. He pulled a gun at the guy who delivered the paper here in Hamden its clear he was asking for money outside, outside a gas station.

> **Defendant Hamden's Dispatch:** Ok, so did he take his money?

> **Defendant Abdullattf:** No. The guy who jumped in the car run right away.

> . . .

> **Defendant Abdullattf:** . . . I need some help. He's a dangerous. He's harassing the second customer, too.

> **Defendant Hamden's Dispatch:** . . . [i]s he a white male, black male?

> **Defendant Abdullattf:** Black, African American. He goes, he goes to the, he goes to the Arch to Dixwell.

> . . .

9

13/41

**Defendant Hamden's Dispatch:**  He's in the car now?

**Defendant Abdullattf:** He's in the car with the female, yes.

. . .

**Defendant Hamden's Dispatch:**  . . . [h]e take the Arch Street to Dixwell, yes.

. . . .

**Defendant Abdullattf:** OK. We have help on the way."

40.     Mr. Rodriguez is the individual whom Defendant Abdullattf was referring to as "the guy who delivered the paper."

41.     Mr. Witherspoon is the individual whom Defendant Abdullattf was claiming attempted to rob "the guy who delivered the paper."

42.     Video from the LLC-Defendant's surveillance camera reveals no effort by Mr. Witherspoon to rob Mr. Rodriguez at gunpoint.

43.     Mr. Rodriguez later confirmed to investigators from the State of Connecticut, Department of Public Safety, that Mr. Witherspoon did not threaten him with a weapon.

44.     While Defendant Abdullattf was on the line with Defendant Hamden's Dispatch, Defendant Hamden's Dispatch directed Defendant Eaton and one other officer from Defendant Hamden's Police Department to travel to the Go on Gas station, informed them that there was a robbery with a possible gun used and that Dispatch was

attempting to confirm whether a gun was used through further conversations with Defendant Abdullattf.

45.    At approximately 4:24 A.M., Defendant Hamden's Dispatch broadcast to Dispatch for Defendant New Haven's Municipal Police Department via the Hotline the false report that it received from Defendant Abdullattf, that Mr. Witherspoon used a gun to attempt to rob someone:

> **Defendant Hamden's Dispatch:** Hamden to New Haven on the hotline.
>
> **Defendant New Haven's Dispatch:** This is on, Hamden.
>
> **Defendant Hamden's Dispatch:** Just had a street robbery happen in our town. Was heading in your direction on Dixwell Avenue there's, uh, gun used in a street robbery the license plate was Alpha Kilo 63322 which comes back to a Honda Civic 99, it's a red two door there's supposedly a female inside, it was a black male operating, again, gun used just now heading your way. Dixwell Avenue."

46.    Thereafter, Defendant New Haven's Dispatch rebroadcast the false information that a vehicle was involved in a street robbery using a firearm.

47.    Defendant New Haven's Dispatch further broadcast that the vehicle was a red Honda Civic, with two (2) occupants, a black male and a female, with a license plate number of AK63233.

48.    At approximately 4:27 A.M., Defendant Yale's Dispatch broadcast the false information to all police cruisers regarding a signal 19 (i.e., robbery) involving a red Honda Civic with license plate number of AK63233.

11

15/41

49.     Defendant Yale's Dispatch further indicated that the suspect vehicle was occupied by a black male and a female and that the occupants may be making their way into New Haven.

50.     Defendant Yale's Dispatch further broadcast the false information that 75s (weapons) were used.

51.     Shortly thereafter, Defendant Pollock contacted Defendant Yale's Dispatch and asked Dispatch to repeat one or more parts of the broadcast.

52.     As a consequence of the original broadcast and the repeat broadcast by Defendant Yale's Dispatch, Defendant Pollock understood at least the following:

     a.     that an armed robbery involving a gun had been reported in Hamden;

     b.     that the suspect vehicle was reported as being a red Honda Civic occupied by a male and a female; and

     c.     that the suspect vehicle was in-bound from Hamden to New Haven on Dixwell Avenue.

53.     At approximately 4:29 A.M., Defendant Pollock, was seated in his police cruiser, pulled over against the curb of the northbound travel lane of Dixwell Avenue just north of Dixwell Avenue's intersection with Argyle Street in New Haven.

54.     At or about this same time, Defendant Eaton passed Defendant Pollock going south on Dixwell Avenue, slowed his police cruiser, performed a U-turn, began heading north, and then turned right and began heading eastbound on Argyle street.

16/41

55.     At or about this same time, Mr. Witherspoon was backing the red Honda Civic out of a driveway onto Argyle street and began traveling in the westbound lane towards Dixwell Avenue. Ms. Washington was in the passenger seat.

56.     At or about this same time, Defendant Pollock performed a U-turn on Dixwell Avenue, turned left on Argyle Street, and began traveling east on Argyle Street in the westbound lane, such that Defendant Pollock's police cruiser and the red Honda Civic were slowly approaching each other head on, and blocking the red Honda Civic from traveling further in the lane.

57.     Upon seeing the red Honda Civic, Defendant Pollock realized that Defendant Eaton (a Hamden police officer) was engaged in proactive enforcement activity in New Haven in connection with the report of an armed robbery involving a red Honda Civic.

58.     Defendant Eaton slowly passed the red Honda Civic and stopped his cruiser such that it was positioned diagonally in the eastbound lane a few feet past the driver's side rear of the red Honda Civic, which at that point was stopped as a consequence of the presence of Defendants Eaton and Pollock.

59.     After stopping his cruiser, Defendant Eaton opened the door, got out, unholstered his pistol, and then as a direct and proximate result of his own wrongful conduct and the wrongful conduct of the other defendants as alleged in this complaint, Defendant Eaton ordered Mr. Witherspoon to get out of the red Honda Civic and show his hands.

13

17/41

60.     Defendant Pollock observed Defendant Eaton get out of his cruiser and, therefore, at all relevant times, knew or should have known that Defendant Eaton was engaged in proactive law enforcement activities in the vicinity of the red Honda Civic.

61.     At the time and place when Defendant Eaton unholstered his weapon and wrongfully ordered Mr. Witherspoon out of the red Honda Civic, Defendant Eaton knew or should have known that Ms. Washington was seated in the passenger seat of that vehicle.

62.     Under the circumstances that existed at that time, and as a result of unholstering his pistol and wrongfully ordering Mr. Witherspoon out of the red Honda Civic, Defendant Eaton subjected an identifiable person, Ms. Washington, to imminent harm.

63.     This wrongful order by Defendant Eaton directing Mr. Witherspoon to get out of the red Honda Civic:

   a.     was admitted to by Defendant Eaton and recorded on body camera footage from body worn cameras on other officers who appeared at the scene after the shooting;

   b.     is materially consistent with Defendant Eaton's failure to order Mr. Witherspoon to stay in the car or get back in the car when he saw the driver-side door open and Mr. Witherspoon begin to get out of the car; and

   c.     is materially inconsistent with Defendant Eaton's official sworn written statement to the Connecticut State Police Department of Public Safety's Central District Major Crime Squad "(CDMCS") investigators dated May 8, 2019, where he indicates that he only told Mr. Witherspoon to show his hands and that the driver side door to the red Honda Civic "unexpectedly swung open."

14

18/41

64.   In an effort to comply with Defendant Eaton's wrongful order to get out of the red Honda Civic and show his hands, Mr. Witherspoon opened the car door and began raising both hands in the air as he was exiting the red Honda Civic.

65.   Footage from Defendant Eaton's own body worn camera shows that Mr. Witherspoon:

a.   did not swing the door of the red Honda Civic open in any manner that could be characterized as unexpected despite Defendant Eaton's characterization of Mr. Witherspoon's actions as such in opening the door; and

b.   was putting both hands in the air as ordered and was not engaged in any activity that could be considered unexpected, threatening, or confrontational, much less conduct that amounted to posing an imminent threat of causing death or serious bodily injury to anyone.

66.   As a direct and proximate result of his own wrongful conduct and the wrongful conduct of the other defendants as alleged herein, Defendant Eaton fired his service-issued pistol at Mr. Witherspoon while Mr. Witherspoon was in the process of getting out of the red Honda Civic as ordered by Defendant Eaton.

67.   Mr. Witherspoon immediately retreated into the red Honda Civic, where he remained until removed by police after the shooting described herein had ended.

68.   Although Mr. Witherspoon escaped being struck by bullets fired by Defendant Eaton, Defendant Pollock's cruiser did not escape and was struck by at least one and perhaps two bullets fired by Defendant Eaton.

15

19/41

69.    After Mr. Witherspoon retreated into the red Honda Civic he could no longer be mistaken even by Defendant Eaton as a person who posed an imminent threat of causing death or serious bodily harm to anyone.

70.    Yet, Defendant Eaton, compounded his wrongful acts and omissions by:

a.    moving behind the red Honda Civic and firing bullets into the rear windshield of the red Honda Civic while Ms. Washington occupied the front passenger seat of that vehicle; and

b.    then moving to the passenger side of the red Honda Civic and firing at least an additional eight (8) bullets into the passenger side window and door of the red Honda Civic while Ms. Washington occupied the front passenger seat of that vehicle.

71.    As a direct and proximate result of his own wrongful conduct, and the wrongful conduct of the other defendants as alleged in this complaint, Defendant Pollock chose to fire his pistol "in the direction" of the operator of the red Honda Civic, which also happened to be "in the direction" of Defendant Eaton and Ms. Washington.

72.    Although Defendant Pollock stated that he fired "in the direction" of the operator of the red Honda Civic:

a.    one of Defendant Pollock's bullets pierced the passenger side of the front windshield of the red Honda Civic where Ms. Washington was seated, struck the passenger's side of the C-pillar, which is the support structure between the passenger rear window and the rear windshield, and became lodged in the trunk;

b.    another one of Defendant Pollock's bullets shattered the rear windshield of his own cruiser and lodged itself in the interior roof of that cruiser;

c.    another one of Defendant Pollock's bullets struck the front of a White Mitsubishi Lancer parked against the curb of the westbound lane of travel on Argyle Street.

16

20/41

73.     Moreover, the bullet fired by Defendant Pollock that passed through the passenger's side of the front windshield of the red Honda Civic may have been the bullet that caused the wound on Ms. Washington's forehead.

74.     In sum, the wrongful conduct of the other defendants as alleged in this complaint combined with Defendant Pollock's own wrongful conduct directly and proximately caused Defendant Pollock to fire his service-issue pistol three (3) times in the direction of Ms. Washington.

75.     Additionally, Defendant Pollock's act in discharging his pistol three (3) times was a substantial factor in reinforcing Defendant Eaton's subjective belief that he was being shot at by Mr. Witherspoon, and, therefore, a substantial factor in causing Defendant Eaton to fire one or more bullets towards the passenger seat of the red Honda Civic where Ms. Washington was seated.

76.     At all times when he was firing his pistol, Defendant Eaton was subjecting an identifiable person (Ms. Washington) to imminent harm.

77.     At all times when he was firing his pistol, Defendant Pollock was subjecting an identifiable person (Ms. Washington) to imminent harm.

78.     In total, Defendant Eaton fired thirteen (13) shots from his service-issued pistol, at least eight (8) of which were directed towards the front passenger seat where Ms. Washington was seated.

79.    As a direct and proximate cause of the wrongful conduct of Defendant
Eaton as alleged herein, together with the wrongful conduct of the other defendants as
alleged in this complaint, Ms. Washington was shot four (4) times and sustained the
following injuries and damages:

    a.    fractured left ischial spine;

    b.    perforated rectum;

    c.    fractured right sacrum;

    d.    fractured right iliac wing;

    e.    soft tissue injuries associated with <u>bullets</u> tearing through her skin and
        subcutaneous tissues;

    f.    soft tissue injuries associated with <u>bullet fragments</u> tearing through her
        skin and subcutaneous tissues;

    g.    grazing wound to the upper right portion of her forehead;

    h.    permanent consequences associated with being shot, including not just
        the physical consequences of the damages caused by the bullets, but
        having to live for the remainder of her life with bullet fragments in her
        body, and the memories of being shot, fearing for her life, and being
        victimized by the defendants;

    i.    pain and suffering;

    j.    emotional distress;

    k.    medical bills for the treatment of her injuries;

    l.    property damage due to a total loss of the red Honda Civic.

22/41

80.   Ms. Washington's injuries and damages as alleged above were directly and proximately caused by the wrongful conduct of Defendant Eaton in that he negligently and unreasonably:

    a.   entered the City of New Haven on the basis of a "be on the lookout" ("BOLO") when:

        (i)   there was no immediate need to enter New Haven;

        (ii)   there were no facts or circumstances indicating that the situation was escalating;

        (ii)   there was no confirmation of a weapon, acts of violence, or even that a crime had been committed; and

        (iv)   where the vehicle's license plate and registration were known;

    b.   failed to notify Defendant Hamden that he was entering Defendant New Haven's jurisdiction to look for the suspect vehicle;

    c.   failed to establish communication with Defendant NHPD and/or Defendant YPD upon entering Defendant New Haven's jurisdiction;

    d.   failed to notify Defendant Hamden's Dispatch, Defendant NHPD's Dispatch and/or Defendant YPD's Dispatch, provide his location, and state that he had located and stopped a vehicle that matched the description of the suspect vehicle;

    e.   failed to realize that "on-scene" supervision of this traffic stop rested with either Defendant YPD or Defendant NHPD and that his actions should have been coordinated with one or both of those departments at all times after entering New Haven, and again once he located a vehicle that matched the description of the suspect vehicle;

    f.   knew or should have known that Officer Pollock was at the scene of this traffic stop yet failed to turn over "on-scene" supervision and control to Officer Pollock;

23/41

g.  knew or should have known that Officer Pollock was at the scene of this traffic stop, yet failed to coordinate his efforts with those of Officer Pollock to control the scene and keep it from escalating;

h.  failed to request backup;

i.  chose to get out of his cruiser without backup after stopping the red Honda Civic when there was no reason not to request and wait for backup;

j.  failed to use his public address system to give instructions to the occupants after stopping the red Honda Civic;

k.  ordered Mr. Witherspoon to get out of the red Honda Civic;

l.  fired his pistol towards Mr. Witherspoon without warning and before he had given Mr. Witherspoon time to comply with his order and submit to arrest;

m.  fired his pistol towards Mr. Witherspoon when Mr. Witherspoon posed no imminent threat of harm to Defendant Eaton or anyone else;

n.  fired his pistol towards Mr. Witherspoon when he was not properly aware of his field of fire or backstop (in this case, he would have or should have known that Officer Pollock and his police cruiser were in the line of fire beyond his intended target, notwithstanding Officer Pollock's own negligence in failing to have his headlights and his flashing lights on);

o.  continued to fire when there was no imminent threat of harm to him or anyone else including, without limitation, continuing to fire:

   (i)  after Mr. Witherspoon retreated back into the red Honda Civic;

   (ii)  when he knew or should have known that he was not being shot at by the suspect;

p.  continued to fire into the rear windshield and passenger side of the red Honda Civic even though he knew or should have known that Ms. Washington was in the passenger seat of the red Honda Civic;

20

24|41

q.   retreated down Argyle Street aimlessly discharging even more bullets out of the muzzle of his pistol towards the passenger side of the red Honda Civic where Ms. Washington was seated.

**SECOND COUNT: (42 U.S.C. § 1983 v. Defendant Eaton)**

1.-79.  Paragraphs 1 to 79 of the first count are hereby made paragraphs 1 to 79 of this count.

80.   Ms. Washington's injuries and damages as alleged above were directly and proximately caused by the wrongful conduct of Defendant Eaton, which wrongful conduct amounted to an unreasonable seizure of Ms. Washington in violation of her Fourth Amendment rights under the United States Constitution and 42 U.S.C. § 1983, in that Defendant Eaton:

a.   entered the City of New Haven on the basis of a "be on the lookout" ("BOLO") when:

(i)    there was no immediate need to enter New Haven;

(ii)   there were no facts or circumstances indicating that the situation was escalating;

(iii)  there was no confirmation of a weapon, acts of violence, or even that a crime had been committed; and

(iv)   the vehicle's license plate and registration were known;

b.   failed to notify Defendant Hamden that he was entering Defendant New Haven's jurisdiction to look for the suspect vehicle;

c.   failed to establish communication with Defendant NHPD and/or Defendant YPD upon entering Defendant New Haven's jurisdiction;

d.   failed to notify Defendant Hamden's Dispatch, Defendant NHPD's Dispatch and/or Defendant YPD's Dispatch, provide his location, and state

21

that he had located and stopped a vehicle that matched the description of the suspect vehicle;

e.    failed to realize that "on-scene" supervision of this traffic stop rested with either Defendant YPD or Defendant NHPD and that his actions should have been coordinated with one or both of those departments at all times after entering New Haven, and again once he located a vehicle that matched the description of the suspect vehicle;

f.    knew or should have known that Officer Pollock was at the scene of this traffic stop yet failed to turn over "on-scene" supervision and control to Officer Pollock;

g.    knew or should have known that Officer Pollock was at the scene of this traffic stop, yet failed to coordinate his efforts with those of Officer Pollock to control the scene and keep it from escalating;

h.    failed to request backup;

i.    chose to get out of his cruiser without backup after stopping the red Honda Civic when there was no reason not to request and wait for backup;

j.    failed to use his public address system to give instructions to the occupants after stopping the red Honda Civic;

i.    ordered Mr. Witherspoon to get out of the red Honda Civic;

j.    fired his pistol towards Mr. Witherspoon without warning and before he had given Mr. Witherspoon time to comply with his order and submit to arrest;

k.    fired his pistol towards Mr. Witherspoon when Mr. Witherspoon posed no imminent threat of harm to Defendant Eaton or anyone else;

l.    fired his pistol towards Mr. Witherspoon when he was not properly aware of his field of fire or backstop (in this case, Defendant Eaton would have or should have known that Officer Pollock and his police cruiser were in the line of fire beyond his intended target, notwithstanding Officer Pollock's own negligence in failing to have his headlights and his flashing lights on);

22



m.      continued to fire when there was no imminent threat of harm to him or anyone else including, without limitation:

(i)     after Mr. Witherspoon retreated back into the red Honda Civic;

(ii)    when he knew or should have known that he was not being shot at by the suspect;

n.      continued to fire into the rear windshield and passenger side of the red Honda Civic even though Defendant Eaton knew or should have known that Ms. Washington was in the passenger seat of the red Honda Civic;

o.      retreated down Argyle Street aimlessly discharging even more bullets out of the muzzle of his pistol towards the passenger side of the red Honda Civic where Ms. Washington was seated.

**THIRD COUNT:** **(C.G.S. § 7-465 Indemnity v. Defendant Hamden)**

1.-80.  Paragraphs 1 to 80 of the first count are hereby made paragraphs 1 to 80 of this count.

81.     Paragraph 80 of the second count is hereby made paragraph 81 of this count.

82.     On or about April 24, 2019, written notice of Ms. Washington's intention to commence this action and of the time when and the place where the damages were incurred or sustained was filed with the Clerk of the Town of Hamden, which notice was within six months after Ms. Washington's cause of action accrued.

83.     Copies of this notice were also furnished to Defendant Leng, the Town Attorney, and members of the Police Commission for the Town of Hamden.

84.     Accordingly, Defendant Hamden is statutorily required to pay Ms. Washington all sums that Defendant Eaton is obligated to pay by reason of liability

23

27/41

imposed upon Defendant Eaton for damages awarded to Ms. Washington under the claims that she makes herein. Conn. Gen. Stat. § 7-465(a).

**FOURTH COUNT: (Negligence v. Defendant Pollock)**

     1.-79.  Paragraphs 1 to 79 of the first count are hereby made paragraphs 1 to 79 of this count.

     80..  Ms. Washington's injuries and damages were directly and proximately caused by Defendant Pollock's wrongful conduct in that he negligently and unreasonably:

     a.    failed to make any contact with either Defendant Hamden's Dispatch, Defendant New Haven's Dispatch, Defendant Yale's Dispatch, or Defendant Eaton after seeing Defendant Eaton's vehicle pass his location, despite having enough time to do so;

     b.    failed to scan or monitor Defendant New Haven's Dispatch or Defendant Hamden's Dispatch even though he was actively participating in the BOLO;

     c.    failed to turn on his headlights or flashers even after seeing Defendant Eaton turn around, come back towards Defendant Pollock's cruiser, and then turn down Argyle Street;

     d.    as the senior officer on the scene from the local police force for Defendant New Haven, failed to assume control and supervision at the scene of this traffic stop involving Mr. Witherspoon, Ms. Washington and the red Honda Civic;

     e.    failed to make his presence known to Defendant Eaton at this traffic stop, which increased the likelihood of confusion and prevented coordination at the scene between him and Defendant Eaton, which failure was a substantial factor in causing the crossfire that occurred between Defendant Eaton and Defendant Pollock and the consequent injuries to Ms. Washington;

28/41

f.   failed to recognize the potential for a crossfire at the scene of this traffic stop when the position of Defendant Eaton's vehicle effectively placed the red Honda Civic directly between the two vehicles;

g.   fired his pistol in the direction of the operator of the red Honda Civic when he should not have fired at all because:

   (i)    he did not have a specific, clear target;

   (ii)   knew or should have known that the bullets fired in his direction just as easily could have been fired by Defendant Eaton, not the operator of the red Honda Civic;

   (iii)  knew or should have known that in firing in the direction of the operator of the red Honda Civic he was also firing in the direction of Ms. Washington who was in the passenger seat;

   (iv)   knew or should have known that in firing in the direction of the operator of the red Honda Civic, he was also firing in the direction of Defendant Eaton which, in turn, could have and did create the impression in Defendant Eaton that he was being shot at by the operator of the red Honda Civic, causing Defendant Eaton to fire in the direction of Ms. Washington, or continue to fire in the direction of Ms. Washington.

**FIFTH COUNT: (42 U.S.C. § 1983 v. Defendant Pollock)**

1.-79.   Paragraphs 1 to 79 of the first count are hereby made paragraphs 1 to 79 of this count.

80.   Ms. Washington's injuries and damages as alleged above were directly and proximately caused by the wrongful conduct of Defendant Pollock, which wrongful conduct amounted to an unreasonable seizure of Ms. Washington in violation of her Fourth Amendment rights under the United States Constitution and 42 U.S.C. § 1983, in that Defendant Pollock:

a.    failed to make any contact with either Defendant Hamden's Dispatch, Defendant New Haven's Dispatch, Defendant Yale's Dispatch or Defendant Eaton after seeing Defendant Eaton's vehicle pass his location, despite having enough time to do so;

b.    failed to scan or monitor Defendant New Haven's Dispatch or Defendant Hamden's Dispatch even though he was actively participating in the BOLO;

c.    failed to turn on his headlights or flashers even after seeing Defendant Eaton turn around, come back towards Defendant Pollock's cruiser, and then turn down Argyle Street;

d.    as the senior officer on the scene from the local police force for Defendant New Haven, failed to assume control and supervision at the scene of this traffic stop involving Mr. Witherspoon, Ms. Washington and the red Honda Civic;

e.    failed to make his presence known to Defendant Eaton at this traffic stop, which increased the likelihood of confusion and prevented coordination at the scene between him and Defendant Eaton, which failure was a substantial factor in causing the crossfire that occurred between Defendant Eaton and Defendant Pollock and the consequent injuries to Ms. Washington;

f.    failed to recognize the potential for a crossfire at the scene of this traffic stop when the position of Defendant Eaton's vehicle effectively placed the red Honda Civic directly between the two vehicles;

g.    fired his pistol in the direction of the operator of the red Honda Civic when he should not have fired at all because:

    (i)    he did not have a specific, clear target;

    (ii)    knew or should have known that the bullets fired in his direction just as easily could have been fired by Defendant Eaton, not the operator of the red Honda Civic;

    (iii)    knew or should have known that in firing in the direction of the operator of the red Honda Civic he was also firing in the direction of Ms. Washington who was in the passenger seat;

30/41

(iv)     knew or should have known that in firing in the direction of the operator of the red Honda Civic, he was also firing in the direction of Defendant Eaton which, in turn, could have and did create the impression in Defendant Eaton that he was being shot at by the operator of the red Honda Civic, causing Defendant Eaton to fire in the direction of Ms. Washington, or continue to fire in the direction of Ms. Washington.

**SIXTH COUNT: (Respondeat Superior v. Defendants Yale and YPD)**

1.-80.  Paragraphs 1 to 80 of the fourth count are hereby made paragraphs 1 to 80 of this count.

81.·     At all times relevant to the allegations hereinabove, Defendant Pollock was acting within the scope of his employment with Defendants Yale and YPD, under their direction and control, and in furtherance of their business and interests.

82.      Accordingly, Defendants Yale and YPD are liable to Ms. Washington for the injuries and damages proximately caused by the negligence of Defendant Pollock under the common law doctrine of respondeat superior.

**SEVENTH COUNT: (Respondeat Superior v. Defendants Yale and YPD)**

1.-80.  Paragraphs 1 to 80 of the fifth count are hereby made paragraphs 1 to 80 of this count.

81.      At all times relevant to the allegations hereinabove, Defendant Pollock was acting within the scope of his employment with Defendants Yale and YPD, under their direction and control, and in furtherance of their business and interests.

31/41

82.     Accordingly, Defendants Yale and YPD, as private entities, are liable to Ms. Washington for the injuries and damages proximately caused by Defendant Pollock's violation of Ms. Washington's Fourth Amendment rights under the United States Constitution and 42 U.S.C. § 1983 under the common law doctrine of respondeat superior.

**EIGHTH COUNT:** (C.G.S. § 7-465 Indemnity v. Defendants Yale and YPD)

1.-80.  Paragraphs 1 to 80 of the fourth count are hereby made paragraphs 1 to 80 of this count.

81.     Paragraph 81 of the fifth count is hereby made paragraph 81 of this count.

82.     On or about April 24, 2019, written notice of Ms. Washington's intention to commence this action, and of the time when and the place where the damages were incurred or sustained, was filed with the Defendant Yale within six months after such cause of action has accrued by submitting same to its General Counsel and to Defendant YPD.

83.     Copies of these notices were furnished to Defendant Yale's President.

84.     Accordingly, Defendants Yale and YPD are statutorily required to pay Ms. Washington all sums that Defendant Pollock is obligated to pay by reason of liability imposed upon Defendant Pollock for damages awarded to Ms. Washington under the claims that she makes herein, see Conn. Gen. Stat. § 7-465(a), because Defendant Yale, through Defendant YPD, is engaged in a municipal policing function that is for all

32/41

purposes relating to the claims herein, the same as the policing function of Defendant New Haven.

**NINTH COUNT: (C.G.S. § 7-465 Indemnity v. Defendant New Haven)**

1.-80.   Paragraphs 1 to 80 of the fourth count are hereby made paragraphs 1 to 80 of this count.

81.   Paragraph 81 of the fifth count is hereby made paragraph 81 of this count.

82.   At all times relevant to the incident described herein, Defendant Pollock was acting in his dual capacity as a police officer for Defendant Yale and Defendant New Haven.

83.   On or about April 24, 2019, written notice of Ms. Washington's intention to commence this action, and of the time when and the place where the damages were incurred or sustained, was filed with the City/Town Clerk for Defendant New Haven, which was within six months after her cause of action accrued, and also with Defendant NHPD.

84.   Copies of these notices were also furnished to the then Mayor of Defendant New Haven, the City Counsel for Defendant New Haven, and members of the Police Commission for Defendant New Haven.

85.   Accordingly, Defendant New Haven is statutorily required to pay Ms. Washington all sums that Defendant Pollock is obligated to pay by reason of liability imposed upon Defendant Pollock for damages awarded to Ms. Washington under the claims that she makes herein. Conn. Gen. Stat. § 7-465(a).

29

33|41

**TENTH COUNT**: (False report v. Defendant Abdullattf)

1.-79.  Paragraphs 1 to 79 of the first count are hereby made paragraphs 1 to 79 of this count.

80.    Ms. Washington's injuries and damages were directly and proximately caused by Defendant Abdullattf in that he falsely reported to Defendant Hamden's 911 Dispatch that Mr. Witherspoon attempted to rob Mr. Rodriguez at gunpoint.

81.    This false report reasonably and foreseeably created a situation where responding officers (in this case Defendants Eaton and Pollock) expected that Mr. Witherspoon was in possession of a firearm and therefore could pose an imminent threat of harm to the officers or others.

82.    Defendant Abdullattf's false accusation that Mr. Witherspoon attempted to rob Mr. Rodriguez at gunpoint was made by Defendant Abdullattf either intentionally or recklessly in that:

a.    he knew that this accusation was not true; or

b.    he made it in conscious disregard for the truth because:

(i)    his accusation was not in accordance with the facts;

(ii)   he did not have the confidence that he stated or implied in the truth of the accusation that he made; and

(iii)  he knew or should have known that he did not have the basis in fact that he stated or implied in making this accusation, yet he made his false accusation to Defendant Hamden's 911 Dispatch anyway.

**ELEVENTH COUNT**: (Respondeat Superior v. the LLC-Defendant)

30

34/41

1.-82.   Paragraphs 1 to 82 of the tenth count are hereby made paragraphs 1 to 82 of this count.

83.   At all times relevant to the allegations hereinabove, Defendant Abdullattf was acting within the scope of his employment with the LLC-Defendant, under the LLC-Defendant's direction and control, and in furtherance of the business and interests of the LLC-Defendant.

84.   Accordingly, the LLC-Defendant is liable to Ms. Washington for the injuries and damages proximately caused by false statements made by Defendant Abdullattf under the common law doctrine of respondeat superior.

**TWELFTH COUNT: (*Monell* claim v. Defendants Leng, Sullivan, Hamden, and HPD)**

1.-80.   Paragraphs 1 to 80 of the second count are hereby made paragraphs 1 to 80 of this count.

81.   Paragraph 80 of the fifth count is hereby made paragraph 81of this count.

82.   Defendants Leng, Sullivan, Hamden, and HPD had a duty under the Cross-Policing Agreement and Operational Guidelines to implement policies, procedures, practices, and customs that furthered the goals stated in those documents.

83.   Defendants Leng, Sullivan, Hamden, and HPD breached this duty by:

a.   allowing a policy, procedure, practice, and custom to exist where officers from Defendant HPD would act unilaterally when engaged in proactive law enforcement activities in New Haven;

b.    failing to establish policies, procedures, practices and customs to ensure the proper coordination of activities and the proper supervision of their officers by officers from Defendant YPD or Defendant NHPD, when Defendant HPD officers were engaged in proactive law enforcement activities in New Haven;

c.    failing to implement a proper training program to ensure their officers coordinated with and were supervised by officers from Defendant YPD or Defendant NHPD, when Defendant HPD officers were engaged in proactive law enforcement activities in New Haven;

d.    failing to create and adopt create policies, procedures, practices, and customs to define the circumstances when it was appropriate to enter New Haven for non-emergency proactive law enforcement activities;

e.    alternatively, if policies, procedures, practices, and customs exist that define when entering New Haven for non-emergency law enforcement activities was appropriate, failing to ensure that they were followed consistently;

f.    failing to establish a proper communications system and protocols to ensure that officers from different jurisdictions could easily and efficiently communicate with each other when engaged in proactive law enforcement activities together;

g.    alternatively, if such a communications system exists, failing to ensure that it was used in situations involving cross-jurisdictional policing activities.

84.    The aforementioned breaches of this duty by Defendants Leng, Sullivan, Hamden, and HPD, were of such a nature as to amount to deliberate indifference to Ms. Washington's right under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

85.    The aforementioned breaches of this duty by Defendants Leng, Sullivan, Hamden, and HPD were also a direct and proximate cause of the injuries sustained by Ms. Washington.

36/41

**THIRTEENTH COUNT:** (*Monell* claim v. Defendants Higgins, Yale and YPD)

1.-80.    Paragraphs 1 to 80 of the second count are hereby made paragraphs 1 to 80 of this count.

81.    Paragraph 80 of the fifth count is hereby made paragraph 81of this count.

82.    Defendants Higgins, Yale, and YPD had a duty under the Cross-Policing Agreement and Operational Guidelines to implement policies, procedures, practices, and customs that furthered the goals stated in those documents.

83.    Defendants Higgins, Yale, and YPD breached this duty by:

a.    allowing a policy, procedure, practice, and custom to develop and exist where officers from Defendant HPD would act unilaterally when engaged in proactive law enforcement activities in New Haven;

b.    failing to establish policies, procedures, practices, and customs to ensure the proper coordination and supervision of Defendant HPD's officers by officers from Defendant YPD or Defendant NHPD, when Defendant HPD's officers were engaged in proactive law enforcement activities in New Haven;

c.    failing to implement a proper training program to ensure their officers coordinated with and supervised officers from Defendant HPD, when officers from Defendant HPD were engaged in proactive law enforcement activities in New Haven;

d.    failing to create and adopt policies, procedures, practices, and customs to define when entering New Haven for non-emergency law enforcement activities was appropriate;

e.    alternatively, if policies, procedures, practices, and customs exist that define when entering New Haven for non-emergency law enforcement activities was appropriate, failing to ensure that they were followed consistently;

37/41

    f.    failing to establish a proper communications system and protocols to ensure that officers from different jurisdictions could easily and efficiently communicate with each other when engaged in proactive law enforcement activities together;

    g.    alternatively, if such a communications system exists, failing to ensure that it was consistently used in situations involving police engaged in proactive law enforcement activities in another police department's jurisdiction.

84.    The aforementioned breaches of this duty by Defendants Higgins, Yale, and YPD were of such a nature as to amount to deliberate indifference to Ms. Washington's right under the Fourth Amendment to the United States Constitution to not be subjected to unreasonable seizures and 42 U.S.C. § 1983.

85.    The aforementioned breaches of this duty by Defendants Higgins, Yale, and YPD was a direct and proximate cause of the injuries sustained by Ms. Washington.

**FOURTEENTH COUNT: (*Monell* claim v. Defendants Elicker, Reyes, New Haven and NHPD)**

1.-80.  Paragraphs 1 to 80 of the second count are hereby made paragraphs 1 to 80 of this count.

81.    Paragraph 80 of the fifth count is hereby made paragraph 81of this count.

82.    Defendants Elicker, Reyes, New Haven, and NHPD had a duty under the Cross-Policing Agreement and Operational Guidelines to implement policies, procedures, practices, and customs that furthered the goals stated in those documents.

83.    Defendants Elicker, Reyes, New Haven, and NHPD breached this duty by:

38/41

a.  allowing a policy, procedure, practice, and custom to develop and exist where officers from Defendant HPD would act unilaterally when engaged in proactive law enforcement activities in New Haven;

b.  failing to establish policies, procedures, practices, and customs to ensure the proper coordination and supervision of Defendant HPD's officers by officers from Defendant YPD or Defendant NHPD, when Defendant HPD's officers were engaged in proactive law enforcement activities in New Haven;

c.  failing to implement a proper training program to ensure their officers coordinated with and supervised officers from Defendant HPD, when officers from Defendant HPD were engaged in proactive law enforcement activities in New Haven;

d.  failing to adopt policies, procedures, practices, and customs, to define when entering New Haven for non-emergency law enforcement activities was appropriate;

e.  alternatively, if policies, procedures, practices, and customs exist that define when entering New Haven for non-emergency law enforcement activities was appropriate, failing to ensure that they were followed consistently;

f.  failing to establish a proper communications system and protocols to ensure that officers from different jurisdictions could easily and efficiently communicate with each other when engaged in proactive law enforcement activities together;

g.  alternatively, if such a communications system exists, failing to ensure that it was consistently used in situations involving police engaged in proactive law enforcement activities in another police department's jurisdiction.

84.  The aforementioned breaches of this duty by Defendants Elicker, Reyes, New Haven, and NHPD were of such a nature as to amount to deliberate indifference to Ms. Washington's right under the Fourth Amendment to the United States Constitution to not be subjected to unreasonable seizures and 42 U.S.C. § 1983.

35

39|41

85.     The aforementioned breaches of this duty by Defendants Elicker, Reyes,

New Haven, and NHPD was a direct and proximate cause of the injuries sustained by

Ms. Washington.

40/41

WHEREFORE, the foregoing reasons, the undersigned seeks:

a.    Full, fair and just money damages;

b.    Costs;

c.    Post-judgment interest;

e.    Reasonable attorneys' fees pursuant to counts 2, 5, 12, 13, and 14.

f.    Such other further relief as the Court deems fair, just and equitable.

THE PLAINTIFF,
STEPHAINE WASHINGTON

BY:    _____
John-Henry M. Steele (#404743)
DEY SMITH STEELE, LLC (#412130)
9 Depot Street, 2nd Floor
Milford, CT 06460
Tel.: (203) 882-3351
Fax: (203) 882-3359
Email: jhs@deysmith.com

37

41/41

RETURN DATE: AUGUST 18, 2020   :   SUPERIOR COURT

STEPHANIE WASHINGTON   :   JUDICIAL DISTRICT

V.   :   OF NEW HAVEN

DEVIN EATON, TERRANCE   :   AT NEW HAVEN
POLLOCK, AZIZ ABDULLATTF,   :
CURT B. LENG, JOHN SULLIVAN,   :
TOWN OF HAMDEN, TOWN OF   :
HAMDEN POLICE DEPARTMENT,   :
RONNELL HIGGINS, YALE   :
UNIVERSITY, YALE UNIVERSITY   :
POLICE DEPARTMENT, JUSTIN   :
ELICKER, OTONIEL REYES, CITY   :
OF NEW HAVEN, NEW HAVEN   :
POLICE DEPARTMENT, and T&S   :
UNITED, LLC   :   JULY 13, 2020

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, is in excess of Fifteen Thousand Dollars ($15,000.00).

THE PLAINTIFF,
STEPHAINE WASHINGTON

BY: _____
John-Henry M. Steele (#404743)
DEY SMITH STEELE, LLC (#412130)
9 Depot Street, 2nd Floor
Milford, CT 06460
Tel.: (203) 882-3351
Fax: (203) 882-3359
Email: jhs@deysmith.com

A TRUE COPY
ATTEST

38

TIMOTHY S. WALL, STATE MARSHAL
NEW HAVEN COUNTY CONNECTICUT

A TRUE COPY
ATTEST

TIMOTHY S. WALL, STATE MARSHAL
NEW HAVEN COUNTY CONNECTICUT

Received & filed on
JUL 1 5 2020
Hamden Town Clerk &
Registrar of Vital Statistics