UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE WASHINGTON | : | CIV. NO.3:20-cv-01111 (VLB) |
|     Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| DEVIN EATON, TERRANCE | : | |
| POLLOCK, AZIZ ABDULLATTF, | : | |
| CURT B. LENG, JOHN SULLIVAN, | : | |
| TOWN OF HAMDEN, TOWN OF | : | |
| HAMDEN POLICE DEPARTMENT, | : | |
| RONNELL HIGGINS, YALE | : | |
| UNIVERSITY, JUSTIN ELICKER, | : | |
| OTONIEL REYES, CITY OF NEW | : | |
| HAVEN, NEW HAVEN POLICE | : | |
| DEPARTMENT, AND T&S | : | |
| UNITED, LLC | : | |
|     Defendants. | : | SEPTEMBER 4, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

The defendants, Town of Hamden, Town of Hamden Police Department, Chief John Sullivan, and Mayor Curt B. Leng, respectfully submit this Memorandum of Law in support of their Motion to Dismiss Count 12 of the plaintiff's Amended Complaint, dated August 6, 2020 [Compl.; Doc. 15], pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure.

**I.     PROCEDURAL HISTORY/PLAINTIFF'S COMPLAINT**

On August 6, 2020, the plaintiff filed this lawsuit against 14 named defendants, including the Town of Hamden ("the Town"), the Town of Hamden Police Department ("the HPD"), Hamden Police Chief John Sullivan ("Sullivan"), and Hamden Mayor Curt B. Leng ("Leng").  The plaintiff alleges, *inter alia*, that these four defendants breached duties imposed upon them by the terms of an interagency

agreement existing between New Haven and the Town and, as a result of these breaches, she suffered injuries constituting violations of her constitutional rights pursuant to 42 U.S.C. § 1983.  This motion to dismiss only addresses the claims alleged against these defendants in Count 12 of the plaintiff's Amended Complaint.

The factual allegations in the plaintiff's Amended Complaint relevant to the claims against these defendants are as follows:  The City of New Haven and the defendant Town entered into an interagency agreement ("the Cross-Policing Agreement") by which officers of each department, with notice given to the participating municipality, may engage in proactive law enforcement activities outside their home jurisdiction in a cooperative effort with and within the jurisdiction of the participating municipality. Compl., ¶¶ 21, 28, 29.  The terms of this Agreement incorporate by reference the terms of the Non-Emergency Interagency Agreement Between Hamden and New Haven Operational Guidelines ("the Operational Guidelines").  Id., ¶ 22.  Both the Cross-Policing Agreement and the Operational Guidelines were authorized by state statute and entered into voluntarily.  Id., ¶ 25.  Upon ratification of the Cross-Policing Agreement and the Operational Guidelines by both New Haven and the Town, the terms became binding upon both municipalities.[1]  Id., ¶¶ 24–25.  Accordingly, pursuant to the Cross-Policing Agreement, on or about the date of the subject incident, each Hamden police officer had the power to

---

[1] At the time of the subject incident, the terms of the Cross-Policing Agreement and Operational Guidelines were also applicable to the Yale University Police Department ("the YPD") and to the individual YPD officers by virtue of section 3 of Public Act 83-466, which provides for YPD officers to be appointed to such position by the New Have Board of Police Commissioners and, therefore, have all of the same enforcement powers conferred upon New Haven police officers.  Compl., ¶¶ 15, 26.

take any action in New Haven that he or she lawfully could have taken in Hamden, subject to the applicable terms.[2]  Id., ¶¶ 21–28.

On April 16, 2019, at or before 4:17 A.M., the plaintiff and her companion, Paul Witherspoon ("Witherspoon"), were travelling together in the plaintiff's red Honda Civic to the Gas on Go station located at 144 Arch Street in Hamden.  Id., ¶ 30.  Although the plaintiff was the owner of the vehicle, the plaintiff was riding in the passenger seat while Witherspoon drove.  Id.  Upon arriving at the Gas on Go station, Witherspoon parked in front of a gas pump, exited the vehicle, and walked up to the establishment's late-night service window to make a purchase.  Id., ¶¶ 31, 32.  The plaintiff remained in the vehicle.  Id., ¶ 32.

---

[2] Within her Amended Complaint, the plaintiff references the following provisions from the Operational Guidelines:
> "2. All participating agencies will ensure that officers are not actively engaged in proactive law enforcement activity outside of their home jurisdiction-unless engaged in a cooperative effort with a participating municipality and within the jurisdiction of the participating municipality. . . .
> "6. Officers, when considering invoking inter-agency authority, should ensure their objective is to accomplish a public safety initiative, and such action avoids, to the extent possible, unintended or undesirable consequences or will likely result in embarrassment to the municipalities involved.  Considerations may include, but are not limited to:
> >     a. Are you uniformed or easily identified as a Police Officer?
> >     b. Are you operating a police vehicle?
> >     c. Do you have the appropriate equipment to intervene?
> >     d. Do you have communications with the agency?
> >     e. Is it necessary to act immediately?
>    "Additionally, when witnessing an infraction, officers will consider the following prior to taking enforcement action:
> >     1.  Are you driving a non-government (private) vehicle?
> >     2.  Are you accompanied by non-law enforcement citizen(s)?
> >     3.  Does ignoring the infraction put the public at immediate risk?  For example, the infraction does not appear to be escalating, such as an infraction that may be a DUI, etc.
> "7. Upon taking action as authorized by this Agreement, any out-of-town officer shall notify such local department as to their location, nature of the incident, and any assistance necessary as soon as practical and safe.  The officer involved shall notify their home agency of the aforementioned information . . . .  'On-scene' incident supervision will rest with the local agency."  Compl., ¶ 29.

While Witherspoon was at the window, a man named Jordany Rodriguez ("Rodriguez"), a newspaper delivery man, approached the service window to deliver a paper to the clerk behind the counter. Id., ¶ 33, 39, 40. At that time, Rodriguez and Witherspoon engaged in a discussion that was inaudible to the plaintiff. Id., ¶ 34. Then, Witherspoon and Rodriguez walked toward Rodriguez's car, continuing their conversation. Id., ¶¶ 35, 36. As their discussion concluded, Witherspoon tapped on the back of Rodriguez's car and Rodriguez drove away. Id., ¶ 37.

Thereafter, "as a direct and proximate consequence of supposedly witnessing the interaction between [Witherspoon] and [Rodriguez]," the clerk working at the late-night service window called 911 to report to the HPD dispatch operator that an attempted robbery had just occurred at the Gas on Go station. Id., ¶¶ 38, 39. During this call, the clerk reported to the dispatch operator that a man with dread locked hair and a gun had tried to rob a patron and then drove away in a red vehicle with a female passenger. Id., ¶ 39. He provided the dispatch operator with the vehicle's license plate number and the direction in which the vehicle was travelling. Id. Neither surveillance footage captured at the Gas on Go station during the incident, nor an official statement made by Rodriguez after the fact, could confirm the presence of a weapon. Id., ¶¶ 42, 43.

As a result of this 911 call, the HPD dispatched Officer Devin Eaton ("Defendant Eaton") and another HPD officer to the Gas on Go station, informing them that an armed robbery had just occurred. Id., ¶ 44. In addition, at 4:24 A.M., HPD dispatch broadcasted the information about the robbery to the New Haven Police Department. Id., ¶ 45. New Haven dispatch, thereafter, rebroadcast to its officers that same message along with the description of the plaintiff's vehicle. Id., ¶ 46, 47. This information was then broadcast to all Yale Police Department cruisers, including that of Yale Police Officer

Terrance Pollock ("Defendant Pollock"). Id., ¶¶ 48, 49. Defendant Pollock received this broadcast at 4:29 A.M. while seated in his cruiser on Dixwell Avenue near the intersection of Dixwell and Argyle Street in New Haven. Id., ¶¶ 51, 53.

Defendant Eaton was driving his police vehicle down Dixwell Avenue when he passed Defendant Pollock in his cruiser. Id., ¶ 54. Defendant Pollock watched as Defendant Eaton performed a U-turn and proceed to travel towards, and eventually turn down, Argyle Street. Id., ¶ 54. At this same time, Witherspoon was backing the plaintiff's vehicle out of a driveway located on Argyle Street and, after doing so, began travelling down Argyle Street towards Dixwell Avenue with the plaintiff still in the passenger seat. Id., ¶ 55. Also at this time, Defendant Pollock performed a U-turn on Dixwell Avenue and followed Defendant Eaton onto Argyle Street, at which point Defendant Pollock's vehicle and the plaintiff's vehicle were driving toward each other in a manner that prevented Witherspoon from driving the plaintiff's vehicle further down the road. Id., ¶ 56. Defendant Eaton, meanwhile, slowly drove past the plaintiff's vehicle and, when the plaintiff's vehicle came to a complete stop upon seeing both police vehicles, parked his car diagonally behind the rear of the driver's side of the plaintiff's parked vehicle. Id., ¶¶ 57, 58.

Upon stopping, Defendant Eaton opened his door, got out of his vehicle, unholstered his pistol, and then, "as a direct and proximate result of his own wrongful conduct and the wrongful conduct of the other defendants as alleged in this complaint, Defendant Eaton ordered Mr. Witherspoon to get out of the vehicle and show his hands," allegedly subjecting an identifiable person, the plaintiff, to imminent harm. Id., ¶¶ 59, 61–62.

In attempting to comply with this request, Witherspoon began to get out of the car and raise his hands. Id., ¶ 64. Defendant Eaton thereafter fired his service-issued pistol at Witherspoon, who had still been in the process of exiting the vehicle, "thereby further subjecting an identifiable person, the plaintiff, to imminent harm." Id., ¶ 66. Witherspoon immediately retreated into the car, at which point Defendant Eaton continued to move behind the car and fire bullets into the rear windshield, the passenger side window, and the passenger side door near where the plaintiff was sitting. Id., ¶¶ 67, 70. In response to the audible gun shots, Defendant Pollock fired his own pistol in the direction of the plaintiff's vehicle. Id., ¶ 77. The plaintiff alleges that, at all times while firing their pistols, Defendants Eaton and Pollock were subjecting an identifiable victim, namely the plaintiff, to harm, and that as a result thereof, the plaintiff was shot four times and sustained an array of physical, emotional and financial injuries. Id., ¶¶ 76–77, 79.

The plaintiff's complaint contains 14 Counts against the various defendants in this matter.[3] In Count 12, the plaintiff alleges that, pursuant to § 1983, the Town, the HPD, Sullivan, and Leng breached a duty "to implement policies, procedures, practices, and customs that furthered the goals stated within the Cross-Policing Agreement and Operational Guidelines." Id., ¶ 82. The plaintiff further alleges that the breach of this duty was of such a nature as to amount to deliberate indifference to her rights under § 1983, and that it constituted a direct and proximate cause of her injuries. Id., ¶¶ 84–85.

---

[3] In Count 3, the plaintiff makes a claim against the Town of Hamden for indemnification of Defendant Eaton. Though the Town does not challenge Count 3 directly in this motion to dismiss, the Town maintains that Count 3 is not yet ripe for adjudication, as no judgment has been entered against Defendant Eaton awarding damages to the plaintiff.

## II.  LEGAL ARGUMENT

### A.  Legal Standard

To survive a 12 (b) (6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citation and internal quotation marks omitted).  In performing a 12 (b) (6) analysis, this Court must take the plaintiff's "factual allegations to be true and [draw] all reasonable inferences in [her] favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).  The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

"Although a court must accept as true all of the allegations contained in a complaint, this tenet is inapplicable to legal conclusions. . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Sikhs for Justice, Inc. v. Gandhi, 614 Fed. Appx. 29, 30 (2d Cir. 2015) (citation and internal quotation marks omitted).

### B.  Plaintiffs' *Monell* Claim Must Be Dismissed As To These Defendants for Failure to State a Claim upon which Relief may be Granted

The plaintiff's *Monell* claim in Count 12 fails to state a claim against the Town, the HPD, Sullivan, and/or Leng upon which relief can be granted and, thus, should be dismissed as to these defendants.  The plaintiff specifically seeks to hold these defendants liable under 42 U.S.C. § 1983 for civil rights violations she claims were caused by the defendants' respective breaches of "a duty under the Cross-Policing Agreement and Operational Guidelines to implement policies, procedures, practices, and customs that furthered the goals stated in those documents." Compl., Count 12, ¶ 82.  More

specifically, the plaintiff claims that these defendants breached this duty by "(a) allowing a policy, procedure, practice, and custom to exist where officers from Defendant HPD would act unilaterally when engaged in proactive law enforcement activities in New Haven; (b) failing to establish policies, procedures, practices and customs to ensure the proper coordination of activities and the proper supervision of their officers by officers from YPD or Defendant NHPD, when Defendant HPD officers were engaged in proactive law enforcement activities in New Haven; (c) failing to implement a proper training program to ensure their officers coordinated with and were supervised by officers from YPD or Defendant NHPD, when Defendant HPD officers were engaged in proactive law enforcement activities in New Haven; (d) failing to create and adopt policies, procedures, practices, and customs to define the circumstances when it was appropriate to enter New Haven for non-emergency proactive law enforcement activities; (e) alternatively, if policies procedures, practices, and customs exist that define when entering New Haven for non-emergency law enforcement activities was appropriate, failing to ensure that they were followed consistently; (f) failing to establish a proper communications system and protocols to ensure that officers from different jurisdictions could easily and efficiently communicate with each other when  engaged in proactive law enforcement activities together; (g) alternatively, if such a communications system exists, failing to ensure that it was used in situations involving cross-jurisdictional policing activities." Id., ¶ 83.  This claim is legally insufficient to establish a viable *Monell* claim.

   To hold the defendants liable under *Monell*, the plaintiff must prove that a particular municipal "policy" or "custom" caused the deprivation of her rights of which she complains.  Board of Comm'rs v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658,

694, 98 S. Ct. 2018 (1978)); see also Giacco v. City of New York, 502 F. Supp. 2d 380, 389 (S. D. N. Y. 2007) ("To state a claim against a municipality, the plaintiff must allege both that there was a *particular policy*, practice or custom and that the *particular policy*, practice or custom was the legal cause of the plaintiff's constitutional injury." (emphasis added)).  "The 'official policy' requirement [is] intended to distinguish acts of the municipality from the acts of employees in order to limit municipal liability to conduct for which the municipality is actually responsible."  Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292 (1986) (plurality opinion).

In Lewis v. City of West Haven, this Court explained that:

> A municipal policy may be pronounced or tacit and reflected in either action or inaction.  In the latter respect, a city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution. . . .  Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell are satisfied.

No. 3:11CV1451 VLB, 2012 WL 4445077, at *5 (D. Conn. Sept. 25, 2012) (internal citation omitted).

In Brown, the Supreme Court expressly held that:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

520 U.S. at 404 (emphasis added).

In other words, "[t]he fact that a municipal policy might lead to police misconduct is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the moving force behind a constitutional violation." Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S. D. N. Y. Mar. 26, 2015).

> **i.    Plaintiff has Failed to State a Viable *Monell* Claim Against the Town because Plaintiff has Failed to Identify a Specific Policy or Custom that Directly Caused the Plaintiff's Alleged Deprivation of Rights.**

First, with regard to the Town, the plaintiff has pleaded no facts that can establish that Officer Eaton, in engaging with Witherspoon and discharging his weapon in the manner alleged in the Amended Complaint, was following a "policy" or "custom" of the Town of Hamden in so doing. In fact, aside from a general assertion that the mere existence of the Cross-Policing Agreement *itself* precipitated the violation of the plaintiff's rights in this case, the plaintiff has failed to state *with particularity* any policy or custom of the Town that Defendant Eaton had been following sufficient to trigger liability of the Town pursuant to *Monell*. The plaintiff effectively alleges, in conclusory fashion, that the defendants either:  (a) have allowed a policy to exist that led to the subject incident; or (b) failed to establish a policy or procedure that contemplates an event like the subject incident; or (c) failed to ensure that such a policy, *if it does exist*, was followed consistently by its officers. See Compl., ¶ 83. Nowhere in Count 12 does the plaintiff identify, as is required by our law, an official policy or custom established by the Town of Hamden, the following of which by Defendant Eaton *directly* caused her alleged deprivation of rights such as to implicate the Town pursuant to *Monell*. See Brown, 520 U.S. at 404.

Moreover, in situations like this, where the only facts relied upon by the plaintiff are those out of which her claims arise, such allegations alone, even if proven, are generally not sufficient to impose

10

liability under *Monell*. Jones v. Town of East Haven, 493 F. Supp. 2d 302, 330 (D. Conn. 2007); see also Villante v. Dept. of Corrections of City of New York, et al., 786 F.2d 516, 519 (2d Cir. 1986) ("an isolated act of excessive force by a single non-policymaking municipal employee, standing alone, is insufficient. . . ."). Here, the plaintiff has not alleged facts regarding any other incidents, prior to that at issue or at all, in which Hamden police officers have violated the constitutional rights of others in a manner that would put the Town on notice of a pattern of violations that might support a *Monell* claim against the Town. See Lewis, 2012 WL 4445077, at *5.

Accordingly, the Town respectfully requests that this Court dismiss the claims alleged against it in Count 12 of the plaintiff's Amended Complaint.

> **ii.     Plaintiff has Failed to State a Viable Claim Against Defendants Sullivan and Leng Pursuant to § 1983 because Plaintiff has Not Alleged Personal Involvement in the Subject Incident Sufficient to Trigger Liability of These Defendants.**

The plaintiff cannot hold Defendants Sullivan and Leng, as the Hamden Police Chief and the Mayor of Hamden, respectively, liable pursuant to § 1983 simply by grouping them with their respective municipal entities as she has done Count 12 of her Amended Complaint. Instead, the plaintiff must allege facts sufficient to establish *personal involvement* by defendants Sullivan and Leng in the alleged violation of her rights. See Hayut v. State University of New York, 352 F.3d 733, 756 (2d Cir. 2003). The absence of a supervisory defendant's personal involvement is generally fatal to a claim of liability under § 1983. See Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065–66 (2d Cir. 1989).

Assuming the existence of an underlying constitutional violation, "personal involvement" sufficient to establish supervisory liability for that violation under § 1983 may be shown in four ways:

(1) direct participation in the wrongdoing; (2) failure to remedy ongoing wrongdoing after notification of a violation; (3) institution or continuance of an unconstitutional policy or custom; and, (4) gross negligence in the management of subordinates responsible for the constitutional deprivation.  Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986).  The plaintiff must "allege a tangible connection between the acts of the defendants and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d. Cir. 1986).  The mere fact that a defendant is a high ranking official is insufficient to demonstrate his liability under § 1983.  See Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).

      Here, the plaintiff has alleged no facts to establish that either Sullivan or Leng were personally present during, or involved in, the April 16, 2019 incident from which her claims arise. Nor has she alleged any facts—relying instead on conclusory allegations about generalized training failures and theoretical policies—through which she can demonstrate that either Sullivan or Leng were on notice of unconstitutional behavior of the type she attributes to Officer Eaton prior to April 16, 2019. Additionally, the plaintiff has not alleged that either Sullivan or Leng instituted an unconstitutional policy; in fact, she acknowledges that the Cross-Policing Agreement and the Operational Guidelines were authorized by state statute.[4]  See Compl., ¶ 25.  Finally, she has not alleged any facts sufficient to establish "gross negligence" with respect to the training or supervision of Officer Eaton—indeed, the plaintiff has alleged no facts regarding the conduct of Officer Eaton at any time other than the incident in question.  Thus, Count 12 cannot be characterized as stating a plausible claim for supervisory liability against Defendants Sullivan or Leng pursuant to § 1983, and should be dismissed.

---

[4] The plaintiff does not challenge the constitutionality of the relevant state statute in this action.

### iii. Plaintiff has Failed to State a Viable Claim against the Hamden Police Department Because the Police Department is Not an Entity Capable of Being Sued.

Finally, Count 12 fails to state a claim upon which relief can be granted to the extent that it names the Hamden Police Department as a defendant. Our courts have repeatedly held that Police Departments, as sub-units of the municipal government, are not entities capable of being sued separately from the municipal entity they serve. See Thomas v. Brasher-Cunningham, No. 3:19-CV-1981 (VAB), 2020 WL 4284564, at *11 (D. Conn. July 27, 2020) ("[M]unicipal police departments are not independent legal entities and are not subject to suit under Section 1983, except under circumstances inapplicable here"); Villano v. Woodgreen Shelton, LLC, No. 3:19-CV-00097 (KAD), 2019 WL 4889013, at *2 (D. Conn. Oct. 3, 2019) ("A municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. Because a municipal police department is not an independent legal entity, it is not subject to suit. . . ."). "In determining whether a municipal subdivision constitutes a separate body politic, courts have looked to whether a specific statute enables the entity to sue or be sued, and have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic." Watrous v. Town of Preston, 902 F. Supp. 2d 243, 256 (D. Conn. 2012) (internal quotation marks omitted). As another court in this District recently observed, "Connecticut statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued. Rather, it is the municipality itself which possesses the capacity to sue and be sued." Santiago v. Hamden Conn. Police Dep't, No. 3:19-cv-1659 (KAD), 2019 WL 6497003, at *4 (D. Conn. Dec. 3, 2019) (internal

quotation marks omitted) (quoting Rose v. City of Waterbury, No. 3:12-cv-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013)).

Here, the plaintiff has included the Hamden Police Department as one of the 4 defendants against whom she has directed Count 12 of her Amended Complaint.  Indisputably, our case law does not provide for a municipal police department to be individually sued as an entity separate and apart from its governing municipality.  Accordingly, the Hamden Police Department respectfully requests that this Court dismiss the plaintiff's claims against it in Count 12 of her Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, Town of Hamden, Town of Hamden Police Department, Chief John Sullivan, and Mayor Curt B. Leng respectfully move this Court to dismiss Count 12 of the plaintiff's Amended Complaint pursuant to Rule 12 (b) (6), as it fails to state any claim upon which relief may be granted.

>   DEFENDANTS, TOWN OF HAMDEN,
>   HAMDEN POLICE DEPARTMENT, CURT B.
>   LENG, JOHN SULLIVAN
>
>   BY/ss/ James N. Tallberg
>     James N. Tallberg
>     Federal Bar No.: ct17849
>     Karsten & Tallberg, LLC
>     500 Enterprise Dr., Suite 4B
>     Rocky Hill, CT 06067
>     T: (860)233-5600
>     F: (860)233-5800
>     jtallberg@kt-lawfirm.com

## **CERTIFICATION**

I hereby certify that on September 4, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/ss/ James N. Tallberg
James N. Tallberg
