UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE WASHINGTON | ) | CIVIL ACTION NO.: |
|    *-Plaintiff-* | ) | |
| | ) | |
| V. | ) | 3:20-cv-01111 (VLB) |
| | ) | |
| DEVIN EATON, TERRANCE | ) | |
| POLLOCK, AZIZ ABDULLATTF, | ) | |
| CURT B. LENG, JOHN SULLIVAN, | ) | |
| TOWN OF HAMDEN, TOWN OF | ) | |
| HAMDEN POLICE DEPARTMENT, | ) | |
| RONNELL HIGGINS, YALE | ) | |
| UNIVERSITY, JUSTIN ELICKER, | ) | |
| OTONIEL REYES, CITY OF NEW | ) | |
| HAVEN, NEW HAVEN POLICE | ) | |
| DEPARTMENT, and T&S | ) | |
| UNITED, LLC | ) | |
|    *-Defendants-* | ) | SEPTEMBER 7, 2020 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

      The Defendants Aziz Abdulattf and T&S United, LLC hereby submit this Memorandum of Law in support of their Motion to dismiss the Plaintiff's Complaint as against them.  For the reasons set forth herein, the Tenth and Eleventh Count of the Complaint should be dismissed for failure to set forth a plausible claim and for failure to set forth a claim upon which relief may be granted.

      This action presents a novel issue; namely, whether a crime victim who reports a crime to 9-1-1 may be sued by a bystander who is allegedly injured by police who misapply excessive force to the bystander while attempting to effect the arrest of the alleged perpetrator of the reported

crime.  For the reasons set forth herein, we submit the response should be negative as a matter of law.

## FACTS AND PROCEDURAL HISTORY

This action was originally commenced by writ, summons and complaint of returnable to the Superior Court for the State of Connecticut bearing a return date of August 18, 2020. The action was removed to this Court on or about August 5, 2020 and an Amended Complaint was filed on August 6, 2020 (DOC #15). The Amended Complaint (hereinafter "Complaint") is the currently operative pleading in this matter.

The plaintiff, Stephanie Washington, a purported bystander, claims damages for injuries she claims to have received after police officers hit her with bullets fired at Paul Witherspoon, while the officers were attempting to arrest Mr. Witherspoon for criminal conduct reported by Mr. Aziz Abdullattf. There is no suggestion that the moving defendants are police officers. There is no suggestion these defendants had any supervisory role with respect to the police departments, or that they gave any orders to the policemen, or that they fired any bullets.  In fact, there is no suggestion that they made any contact whatsoever with Stephanie Washington.  It is abundantly clear that these defendants were not even present at the shooting incident. Nevertheless, Ms. Washington claims that these defendants are responsible for the police officers' conduct.

The only allegations in Ms. Washington's complaint against these defendants relate to Mr. Abdullattf's 9-1-1 call reporting Mr. Witherspoon's

criminal conduct at the service station at which he worked located at 144 Arch Street, Hamden, CT.  The plaintiff's Complaint (charitably) describes the events at the service station as follows:  On April 16, 2019, at around 4:17 A.M., the plaintiff entered the Arch St., Station with Paul Witherspoon in a 1999 red Honda Civic. Ms. Washington was in the passenger seat. Mr. Witherspoon drove. Complaint, at 30.

There were a series of interactions involving Mr. Witherspoon, Mr. Abdullattf, a newspaper delivery man, Jordany Rodriguez and an unidentified person.  At the conclusion of the Witherspoon/Rodriguez interaction Mr. Rodriguez fled with Mr. Witherspoon in pursuit.  Complaint, at 33-37.  Thankfully, Mr. Rodriguez was able to get into his vehicle and drive away. Complaint, at 37.  Thereafter, Mr. Witherspoon began to harass another person.

As a result, Mr. Abdullattf called 9-1-1. The complaint purports to quote excerpts from the 9-1-1 transcript as follows:

> Defendant Abdullatif: Uh, I have my delivery for the newspaper. Uh,  somebody who delivered my newspaper and I have, like, a regular  customer driver a red car (UI) license plate AK63322 long dreads  parking here, long dreads. He pulled a gun at the guy who delivered  the paper here in Hamden its clear he was asking for money outside,  outside a gas station.
>
> Defendant Hamden's Dispatch: Ok, so did he take his money?
>
> Defendant Abdullattf:  No. The guy who jumped in the car run right  away. . .
>
> Defendant Abdullattf:  . . . I need some help. He's a dangerous. He's  harassing the second customer, too.
>
> Defendant Hamden's Dispatch: . . . [i]s he a white male, black

3

**male?**

**Defendant Abdullattf: Black, African American.  He goes, he goes to  the, he goes to the Arch to Dixwell.**

**. . .**

**Defendant Hamden's Dispatch:  He's in the car now?**

**Defendant Abdullattf: He's in the car with the female,**

**yes.**

**. . .**

**Defendant Hamden's Dispatch:  . . . [h]e take the Arch Street to Dixwell, yes.**

**. . .**

**Defendant Abdullattf: [sic] OK. We have help on the way."**

Complaint, at 39.

The plaintiff further alleges that after he 9-1-1 call, police responded and attempted to locate and apprehend Mr. Witherspoon.  According to the Complaint, two officers – Eaton and Pollock – came upon the Honda and while attempting to apprehend Mr. Witherspoon, bullets were fired.  Pollock fired three bullets all of which missed Witherspoon.  Eaton allegedly fired 13 bullets all of which completely missed Witherspoon.  However, one allegedly struck Pollock's police cruiser, one allegedly struck Pollock's leg and four allegedly struck the plaintiff, Ms. Washington.

There is no allegation in the Complaint that Mr. Abdullattf did anything other than make the alleged 9-1-1 call.

<u>THE PURPORTED CAUSE OF ACTION</u>

Based solely upon the 9-1-1 call quoted in the Complaint, the plaintiff

4

sets out two causes of action; the Tenth Count described as a "False Report" claim and the Eleventh Count alleging respondeat superior against T & S United, LLC for the alleged "False Report" set out in the prior Count.

The Tenth Count incorporates the prior facts and further alleges:

80. Ms. Washington's injuries and damages were directly and proximately caused by Defendant Abdullattf in that he falsely reported to Defendant Hamden's 911 Dispatch that Mr. Witherspoon attempted to rob Mr. Rodriguez at gunpoint.

81. This false report reasonably and foreseeably created a situation where responding officers (in this case Defendants Eaton and Pollock) expected that Mr. Witherspoon was in possession of a firearm and therefore could pose an imminent threat of harm to the officers or others.

82. Defendant Abdullattf's false accusation that Mr. Witherspoon attempted to rob Mr. Rodriguez at gunpoint was made by Defendant Abdullattf either intentionally or recklessly in that:

a.   he knew that this accusation was not true; or

b.   he made it in conscious disregard for the truth because:

(i)    his accusation was not in accordance with the facts;

(ii)   he did not have the confidence that he stated or

> implied in the truth of the accusation that he made; and
>
> (iii) he knew or should have known that he did not have the basis in fact that he stated or implied in making this accusation, yet he made his false accusation to Defendant Hamden's 911 Dispatch anyway.

## LAW AND ARGUMENT

**STANDARD OF REVIEW** - A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests whether a pleading alleges a legally viable claim, and should be granted if "the allegations, taken as true, show the plaintiff is not entitled to relief." Jones v. Bock, 549 U.S. 199, 215 (2007). The Court need not, however, blindly accept as true all allegations contained in a complaint. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); In re Vasu v. Tremont Advisors, Inc., 129 F. Supp. 2d 113, 116 (D. Conn. 2001) (bald and unsupported assertions and conclusions of law will not defeat a motion to dismiss). "Generally, '[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).  Where a claim consists of several required elements, a party must allege facts sufficient under Iqbal to satisfy each element.  See Kopperl v. Bain, No. 3:09-cv-1754 CSH, 2010 WL 3490980, at *3 (D. Conn. Aug. 30, 2010) (copy attached at Tab A).  As Iqbal noted, determining whether a complaint has crossed over the plausibility threshold is a context-specific task that requires the reviewing court to drawn its judicial experience and common sense.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

"Although a court must accept as true all of the allegations contained in a complaint, this tenet is inapplicable to legal conclusions. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Sikhs for Justice, Inc. v. Gandhi, 614 Fed. Appx. 29, 30 (2d Cir. 2015) (citation and internal quotation marks omitted).

**The Complaint should be dismissed because Mr. Abdullattf's call is privileged as a petition to the government for relief.**

In Connecticut, calls to the police, without any additional detail are not actionable. The Noerr-Pennington doctrine, as established by the Federal Courts, protects an individual from liability for exercising their freedom of speech, and specifically within the context of this case,

7

petitioning the government.  See, e.g. <u>Ottensmeyer v. Chesapeake &</u>

<u>Potomac Telephone Co.</u>, 756 F.2d 986 (4th Cir. 1985).

Connecticut has addressed the federal Noerr-Pennington Doctrine

and examined where it may apply. Most recently in <u>Procurement, LLC v.</u>

<u>Ahuja</u>, 197 Conn. App. 696 (2020), the Appellate Court reaffirmed its

holding in <u>Zeller v. Consolini</u>, 59 Conn. App 545 (2000).  In doing so, it

recited the background of the Noerr-Pennington doctrine generally and

specifically how it was applied in Connecticut jurisprudence.  <u>Id.</u>, at 705 et

seq.  The Court recognized that the doctrine had evolved from antitrust

origins to apply to a myriad of situations in which it shields individuals

from liability for petitioning a governmental entity for redress.  Most

particularly, the Court noted that although the Noerr-Pennington defense is

most often asserted against antitrust claims, it is equally applicable to

many types of claims which seek to assign liability on the basis of the

defendant's exercise of its first amendment rights.  <u>Id.</u>, At 706.  See  also

<u>Zeller v. Consolini</u>, 59 Conn. App. at 551.

Although the Noerr-Pennington doctrine provides broad coverage to

petitioning individuals or groups, its protection is not limitless. "In <u>Eastern</u>

<u>Railroad Presidents Conference v. Noerr Motor Freight, Inc</u>, 365 U.S. at 144,

81 S.Ct. 523, the United States Supreme Court, albeit in dictum, established

a "sham exception" to the general rule.  Over the years, federal courts

developed a two-part test to define the sham exception.  First the action

must be objectively baseless in the sense that no reasonable litigant could

reasonably expect success on the merits.  Second, the baseless action must conceal an attempt to interfere directly with the business relationships through use of governmental process as opposed to the outcome of the process.  See e.g. <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,</u> 508 U.S. 49, 60-62 (1993).

The Connecticut Superior Court explicitly acknowledged that the Noerr-Pennington Doctrine covered phone calls to the police. <u>Graff v. O'Connell</u>, 2003 Conn. Super. LEXIS 2686 (Aruigemma, J.)(2003). The Plaintiff had sued for, among other things, infliction of emotional distress by calling the police. <u>Id</u>. In a motion for summary judgement, the defendants relied upon the Noerr-Pennington Doctrine. <u>Id</u>. Consistent with the Appellate Court's treatment of the doctrine in <u>Zeller</u>, the Court found that the defendant's actions of calling the police were entitled to immunity. <u>Id</u>.

These cases reflect not only the constitutional protection accorded to any action by which the public petitions the government for redress of grievances whether under the United States Constitution or the Connecticut Constitution, but also from the public policy served by ensuring the free flow of information to the police.  Obviously, the police would be severely handicapped in protecting the public if people feared that information offered to the police would give rise to lawsuits against them.  These lawsuits would create chilling effect on information given to

the police.  See e.g. <u>Ottensmeyer v. Chesapeake & Potomac Tel. Co.</u>, 756 F.2d 986, 993-94 (4th Cir. 1985).

The defendants respectfully submit this Court should follow the Connecticut and federal authorities cited hereinabove and reaffirm that complaints to the police are protected by the First Amendment of the United States Constitution and the Connecticut Constitution, Article First, sections 4 and 14.  Accordingly, Count Ten and Count Eleven of the plaintiff's complaint should be dismissed.

<u>Connecticut does not recognize a cause of action for "false report" - but even if it did, the plaintiff does not have standing to assert the claim.</u>

In the Complaint, the plaintiff sets forth a purported cause of action of "False Report."  Despite extensive research, the undersigned has not found a single case acknowledging the existence of such a cause of action. The closest analog would be a claim for defamation.

In Connecticut, to establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to the third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. <u>Craig v. Stafford Construction, Inc</u>., 271 Conn. 78, 84 (2004).

Here, there is no allegation that the defendants made any statement whatsoever concerning the plaintiff – any arguable statement concerned Mr. Witherspoon.  Obviously therefore, there can be no claim that the

10

defendants "identified the plaintiff" as required.  For this reason alone, the claim must fail.

Further, it is fundamental that when claiming defamation, certainty is required in the allegations as to the defamation and as to the person defamed; a complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom. A complaint is insufficient to withstand dismissal for failure to state a cause of action where, other than the bare allegation that the defendant's actions caused injury to plaintiff's reputation, the complaint set forth no facts of any kind indicating what defamatory statements, if any, were made, when they were made, or to whom they might have been made. Welker v. Gniadek, 2010 Conn. Super. LEXIS 2710, at *13 (Conn Super. 2010).  Again, there is no allegation that the defendants did anything at all with respect to Ms. Washington.  In short, Ms. Washington's claim fails in every respect to meet a prima facie case for defamation.

That said, any claim for the alleged incorrect report would run to Mr. Witherspoon and not to Ms. Washington.  It is clear that one cannot claim damages for defamation of another.  Indeed, in one case before the Connecticut Appellate Court, a plaintiff who was the sole member of a limited liability company alleged that the defendant in that case made defamatory remarks with regard to the plaintiff's business, and argued that he had standing as an individual to assert causes of action o because he was the entities' sole member. ***Ma'Ayergi & Associates, LLC v. Pro Search,***

_Inc.,_ **115 Conn.App. 662, 666 (Conn App 2009). The Appellate Court did not agree and refused to adopt the plaintiff's declaration that the plaintiff "was his company." <u>Id.</u>  We respectfully submit that if an individual who is the sole member of his LLC does not have standing to assert a claim based upon defamatory statements made against the LLC, a companion of a criminal actor does not have standing to assert claims based upon the alleged defamatory statement concerning her companion.  Therefore, even if a claim of "False Report" exists in the State of Connecticut, Ms. Washington does not have standing to assert claims based upon statements made concerning her companion, Mr. Witherspoon. Accordingly, Count Ten and Count Eleven should be dismissed for lack of standing.**

**<u>These defendants owed Ms. Washington no duty.</u>**

**One recent Connecticut appellate case set out the analysis with respect to duty as follows:**

> **Duty is a legal conclusion about relationships between individuals, made after the fact.  The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. Although it has been said that no universal test for duty ever has been formulated, our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the**

defendant. The ultimate test of the existence of the duty
to use care is found in the foreseeability that harm may
result if it is not exercised. The test for the existence of a
legal duty entails (1) a determination of whether an
ordinary person in the defendant's position, knowing
what the defendant knew or should have known, would
anticipate that harm of the general nature of that suffered
was likely to result, and (2) a determination, on the basis
of a public policy analysis, of whether the defendant's
responsibility for its negligent conduct should extend to
the particular consequences or particular plaintiff in the
case.

<u>Gough v. Saint Peter's Episcopal Church</u>, 143 Conn. App. 719, 729-30
(Conn. App. 2013).  That case followed case which was remarkably similar
to the case at bar.  In <u>Lodge v. Arett Sales Corp.</u>, 246 Conn. 563 (Conn.
1998), the plaintiff asserted claims against the Wells Fargo Company for
sending a false alarm to the Waterbury fire department.  Several firefighters
were injured or killed driving to the false alarm when their driver lost
control because the fire truck malfunctioned.  The Court noted that virtually
all harms, in hindsight, are literally foreseeable.  <u>Id.,</u> at 575.  However, the
Court held that only harms that are reasonably foreseeable consequences
are actionable.  <u>Id.,</u> at 576-77.  Using that analysis, the Court held that brake
failure of a negligently maintained fire engine is beyond the scope of the

reasonably foreseeable risks created by the transmission of a false alarm and that legal responsibility for the resulting accident should not extend to Wells Fargo.  Id., at 577.  We submit the result should be exactly the same for a bystander claiming she was injured by police officers who improperly used excessive force to apprehend another person.

It is a simple fact that thousands of police calls are made on a daily basis.  The Court may take judicial notice that most arrests are made (even in cases of violent crime) without the use of excessive force.  But even in cases where excessive force is alleged, it would be the rare case indeed that the force was applied so ham-handedly that a bystander was injured rather than the alleged criminal.

In the present Complaint outlines a number of causative steps, in the absence of any of which the plaintiff would not have been injured.  The police officers located the Witherspoon vehicle.  The officers failed to observe (or acknowledge) Mr. Witherspoon exiting the vehicle with both hands raised.  The officers began shooting - purportedly for no reason.  The officers continued to shoot - again purportedly for no reason - while circling the vehicle.  The officers continued to shoot - again purportedly for no reason - an additional 8 bullets into the passenger side window.  Furthermore, the police officers' aim was so terrible that they missed Mr. Witherspoon with every single one of their shots (although Eaton did manage to hit Pollock).

We respectfully submit that any one of these causative steps breaks the chain of reasonable foreseeability.  Taken together, the chain is not only broken but it is entirely obliterated.  Accordingly, the defendants respectfully submit that under the facts and circumstances of this case, viewed retrospectively, they had no duty to Ms. Washington and that Count Ten and Count Eleven should be dismissed.

**Even if these defendants owed Ms. Washington any duty, the case must nevertheless be dismissed because the actions of Eaton and Pollock constitute superseding intervening causes as a matter of law.**

Under Connecticut law, a superseding intervening cause is an act of a third person or another force which by its intervention prevents the actor from being liable for harm to another which his antecedent fault was a substantial factor in bringing about.  Barry v. Quality Steel Products, 263 Conn. 424, 434 (Conn. 2003).  This doctrine recognized that if the actions of the third so entirely supersedes the operation of the defendant's action that it alone produces the injury, it may be deemed the sole proximate cause of the injury.  Id, at 434-35.  Although the Barry court explicitly abrogated the doctrine in cases in which Conn. Gen. Stat. §52-572h applied, it expressly limited the determination to those specific circumstances holding: "Our conclusion does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." Barry v. Quality Steel Products, 263 Conn. 424, 439 n.16 (Conn. 2003).  That holding was reinforced in Sapko v. State, 305 Conn. 360, 378 (2012) in which the Court made clear

15

that the abrogation was only intended to eliminate jury confusion because of the necessary instructions under <u>Conn. Gen. Stat.</u> §52-572h.  So, where, as here, the allegation is something other than negligence, superseding intervening cause still applies.

As noted hereinabove, there are a number of causative events between the 9-1-1 report and the plaintiff's injuries, any one of which would constitute a superseding intervening cause.  This is particularly true of Officer Eaton's acts which resulted in a criminal case against him.  In that way, this case is similar to <u>Doe v. Manheimer</u>, 212 Conn. 748, 761 (1989), in which the Court concluded that a criminal attack on a plaintiff was the superseding cause of plaintiff's injuries notwithstanding plaintiff's claim that overgrowth on the defendant's property was substantial factor in both occurrence and duration of attack.

We respectfully submit the criminal, or at least quasi-criminal actions of Eaton and Pollock constitute superceding intervening causes as a matter of law and accordingly Count Ten and Count Eleven should be dismissed.

<u>CONCLUSION</u>

Assuming the facts to be as alleged in the Complaint are true, Ms. Washington is certainly the victim of an unfortunate series of events.  She had the misfortune to be present in the passenger seat of a car driven by Mr. Witherspoon when he attempted to rob Mr. Abdullattf and Mr.

16

Rodriguez.  She was still in the car when officers Eaton and Pollock inexplicably poured bullet after bullet into the car for no reason.

If the allegations prove true, officers Eaton and Pollock applied excessive force while attempting to arrest Mr. Witherspoon.  If the allegations prove true, it is also a glaring indictment of the officers' inept marksmanship.  One can only wonder how the police officers managed to miss Mr. Witherspoon entirely while repeatedly hitting Ms. Washington.

However unfortunate the events may be, they do not give rise to an action against Mr. Abdullattf.  He merely acted in a manner that must be protected as a matter of public policy.  Victims must be able to report crime to the police.  Even if they make an error, those reports must be protected.  As a result, police reports are protected under the state and federal constitutions and as a matter of public policy.  We submit the Court should enforce those protections to dismiss Count Ten and Count Eleven of the Complaint.

Further, the series of events, from beginning to end, set forth an almost textbook example of a "not reasonably foreseeable" chain.  We respectfully submit that whether the Court determines there was a lack of duty to Ms. Washington; or, whether the Court determines Ms. Washington lacked standing to question the 9-1-1 report; or whether the Court determines that officers Eaton and Pollock were the superseding intervening cause of Ms. Washington's injury as a matter of law, Count Ten and Count Eleven should be dismissed.

Accordingly, for all these reasons, the defendants Aziz Abdullattf and T & S United LLC submit the Motion to Dismiss should be granted and the plaintiff's Complaint should be dismissed as against them.  More particularly, Count Ten and Count Eleven should be dismissed with prejudice.

The Defendants,
Aziz Abdullattf and T&S United, LLC

By: _____/s/_____
        John J. Morgan (ct13312)
        Barr & Morgan
        84 West Park Place, Third Floor
        Stamford, CT 06901
        Tel: (203) 356-1595
        Fax: (203) 504-8926
        jmorgan@pmpalawyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2020 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

By:_____/s/_____
         John J. Morgan (ct13312)
         Barr & Morgan
         84 West Park Place, Third Floor
         Stamford, CT 06901
         Tel: (203) 356-1595
         Fax: (203) 504-8926
         jmorgan@pmpalawyer.com