**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **STEPHANIE WASHINGTON** | : | |
| | : | **CASE NO.** |
| **Plaintiff** | : | |
| **v.** | : | **3:20-cv-01111 (VLB)** |
| | : | |
| | : | |
| **DEVIN EATON, ET AL.** | : | |
| | : | **SEPTEMBER 17, 2020** |
| **Defendants** | : | |

<u>**MEMORANDUM OF LAW OF DEFENDANTS JUSTIN ELICKER, OTONIEL REYES, CITY OF NEW  CITY OF NEW HAVEN, AND THE NEW HAVEN POLICE DEPARTMENT IN SUPPORT OF THEIR MOTION TO DISMISS THE NINTH COUNT AND FOURTEENTH COUNT OF PLAINTIFF'S AMENDED COMPLAINT**</u>

**I.    <u>INTRODUCTION</u>**

On August 6, 2020, Plaintiff Stephani Washington filed her "Amended Complaint as a Matter of Course," which is the operative Complaint in this lawsuit.   The Complaint names fourteen defendants and contains fourteen counts.  Four of the named defendants are Justin Elicker,  the current Mayor of the City of New Haven, Otoniel Reyes, the current Chief of the New Haven Department of Police Service, who was the Acting Chief at the time of the events described in the Complaint, the City of New Haven, and the New Haven Police Department.  (See ¶¶ 16 through 19 of the Amended Complaint.)  It should be noted that the correct designation for Defendant New Haven Police Department is the New Haven Department of Police Service.   Defendants Elicker and Reyes are being sued in their official capacities.  (See footnotes 9 and 10 of page 5 of the Amended Complaint.)

The Ninth Count of the Amended Complaint is directed against Defendant City of New Haven and is an indemnity claim brought pursuant Conn. Gen. Stat., § 7-465.  The Fourteenth Count of the Amended Complaint is directed against Defendants Elicker, Reyes, City of New Haven and New Haven Police Department, and alleges a Monell claim brought pursuant to 42 U.S.C. § 1983.  These two counts are the only ones directed against Defendants Elicker, Reyes, City of New Haven and New Haven Police Department.

These four defendants, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, are now moving to dismiss the Ninth Count and the Fourteenth Count of the Amended Complaint for failure to state claims upon which relief can be granted.

II.    <u>RELEVANT FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT</u>

The factual allegations in the plaintiff's Amended Complaint (hereinafter "Compl.") relevant to the claims against these defendants are as follows: Defendant Terrance Pollock was at the time of the incident described in the Amended Complaint was acting under color of state law as a police officer employed by Defendant Yale University and assigned to Yale's Police Department.  <u>Compl., First Count</u>, ¶ 4.  Defendant Yale's police officers, including Defendant Pollock, have acted in a dual capacity as law enforcement agents for Defendant Yale and Defendant City of New Haven.  <u>Id.</u>, ¶ 5; <u>see also Compl., Ninth Count</u>, ¶ 82.  Defendant Pollock, at the time of the incident, was under the direction and control of Defendant Yale, Defendant New Haven, and Defendant

2

New Haven Police Department, and was acting under color of state law in furtherance of the law enforcement business and interests of not only Defendant Yale, but Defendant New Haven and Defendant New Haven Police Department. Id., ¶ 6.  Yale Police Department officers are appointed to their police officer positions with Defendant Yale University by Defendant New Haven's Board of Police Commissioners pursuant to section 3 of Public Act 83-466 and have all enforcement powers conferred upon police officers for Defendant New Haven. Id., ¶ 15.  Defendants City of New Haven and Town of Hamden entered into an interagency agreement ("the Cross-Policing Agreement") by which officers of each department, with notice given to the participating municipality, may engage in proactive law enforcement activities outside their home jurisdiction in a cooperative effort with and within the jurisdiction of the participating municipality.  Id.,¶¶ 21, 28, 29.  The terms of this Agreement incorporate by reference the terms of the Non-Emergency Interagency Agreement Between Hamden and New Haven Operational Guidelines ("the Operational Guidelines"). Id., ¶ 22.  Both the Cross-Policing Agreement and the Operational Guidelines were authorized by state statute and entered into voluntarily.  Id., ¶ 25.  Upon ratification of the Cross-Policing Agreement and the Operational Guidelines by both New Haven and the Town, the terms became binding upon both municipalities.[1]  Id., ¶¶ 24–25.  Accordingly, pursuant to the Cross-Policing

---

[1] At the time of the subject incident, the terms of the Cross-Policing Agreement and Operational Guidelines were also applicable to the Yale University Police Department ("the YPD") and to the individual YPD officers by virtue of section 3

Agreement, on or about the date of the subject incident, each Hamden police officer had the power to take any action in New Haven that he or she lawfully could have taken in Hamden, subject to the applicable terms.[2] Id., ¶¶ 21–28.

On April 16, 2019, at or before 4:17 A.M., the plaintiff and her companion, Paul Witherspoon ("Witherspoon"), were travelling together in the plaintiff's red

---

of Public Act 83-466, which provides for YPD officers to be appointed to such position by the New Haven Board of Police Commissioners and, therefore, have all of the same enforcement powers conferred upon New Haven police officers. Compl., First Count, ¶¶ 15, 26.

[2] Within her Amended Complaint, the plaintiff references the following provisions from the Operational Guidelines:

"2.   All participating agencies will ensure that officers are not actively engaged in proactive law enforcement activity outside of their home jurisdiction-unless engaged in a cooperative effort with a participating municipality and within the jurisdiction of the participating municipality. . . .
"6.   Officers, when considering invoking inter-agency authority, should ensure their objective is to accomplish a public safety initiative, and such action avoids, to the extent possible, unintended or undesirable consequences or will likely result in embarrassment to the municipalities involved.  Considerations may include, but are not limited to:
a.  Are you uniformed or easily identified as a Police Officer?
b.  Are you operating a police vehicle?
c.  Do you have the appropriate equipment to intervene?
d.  Do you have communications with the agency?
e.  Is it necessary to act immediately?
"Additionally, when witnessing an infraction, officers will consider the following prior to taking enforcement action:
1.  Are you driving a non-government (private) vehicle?
2.  Are you accompanied by non-law enforcement citizen(s)?
3.  Does ignoring the infraction put the public at immediate risk?  For example, the infraction does not appear to be escalating, such as an infraction that may be a DUI, etc.
"7.  Upon taking action as authorized by this Agreement, any out-of-town officer shall notify such local department as to their location, nature of the incident, and any assistance necessary as soon as practical and safe.  The officer involved shall notify their home agency of the aforementioned

Honda Civic to the Gas on Go station located at 144 Arch Street in Hamden.  Id., ¶ 30.  Although the plaintiff was the owner of the vehicle, the plaintiff was riding in the passenger seat while Witherspoon drove.  Id.  Upon arriving at the Gas on Go station, Witherspoon parked in front of a gas pump, exited the vehicle, and walked up to the establishment's late-night service window to make a purchase.  Id., ¶¶ 31, 32.  The plaintiff remained in the vehicle.  Id., ¶ 32.

While Witherspoon was at the window, a man named Jordany Rodriguez ("Rodriguez"), a newspaper delivery man, approached the service window to deliver a paper to the clerk behind the counter.  Id., ¶ 33, 39, 40.  At that time, Rodriguez and Witherspoon engaged in a discussion that was inaudible to the plaintiff.  Id., ¶ 34.  Then, Witherspoon and Rodriguez walked toward Rodriguez's car, continuing their conversation.  Id., ¶¶ 35, 36.  As their discussion concluded, Witherspoon tapped on the back of Rodriguez's car and Rodriguez drove away.  Id., ¶ 37.

Thereafter, "as a direct and proximate consequence of supposedly witnessing the interaction between [Witherspoon] and [Rodriguez]," the clerk working at the late-night service window called 911 to report to the HPD dispatch operator that an attempted robbery had just occurred at the Gas on Go station.  Id., ¶¶ 38, 39.  During this call, the clerk reported to the dispatch operator that a man with dread locked hair and a gun had tried to rob a patron and then drove away in a red vehicle with a female passenger.  Id., ¶ 39.  He provided the

information . . . .  'On-scene' incident supervision will rest with the local

5

dispatch operator with the vehicle's license plate number and the direction in which the vehicle was travelling.  Id.  Neither surveillance footage captured at the Gas on Go station during the incident, nor an official statement made by Rodriguez after the fact, could confirm the presence of a weapon.  Id., ¶¶ 42, 43.

As a result of this 911 call, the HPD dispatched Officer Devin Eaton ("Defendant Eaton") and another HPD officer to the Gas on Go station, informing them that an armed robbery had just occurred.  Id., ¶ 44.  In addition, at 4:24 A.M., HPD dispatch broadcasted the information about the robbery to the New Haven Police Department.  Id., ¶ 45.  New Haven dispatch, thereafter, rebroadcast to its officers that same message along with the description of the plaintiff's vehicle. Id., ¶ 46, 47.  This information was then broadcast to all Yale Police Department cruisers, including that of Yale Police Officer Terrance Pollock ("Defendant Pollock").  Id., ¶¶ 48, 49.  Defendant Pollock received this broadcast at 4:29 A.M. while seated in his cruiser on Dixwell Avenue near the intersection of Dixwell and Argyle Street in New Haven.  Id., ¶¶ 51, 53.

Defendant Eaton was driving his police vehicle down Dixwell Avenue when he passed Defendant Pollock in his cruiser.  Id., ¶ 54.  Defendant Pollock watched as Defendant Eaton performed a U-turn and proceed to travel towards, and eventually turn down, Argyle Street.  Id., ¶ 54.  At this same time, Witherspoon was backing the plaintiff's vehicle out of a driveway located on Argyle Street and, after doing so, began travelling down Argyle Street towards Dixwell Avenue with

agency."  Compl., ¶ 29.

the plaintiff still in the passenger seat.  Id., ¶ 55.  Also at this time, Defendant Pollock performed a U-turn on Dixwell Avenue and followed Defendant Eaton onto Argyle Street, at which point Defendant Pollock's vehicle and the plaintiff's vehicle were driving toward each other in a manner that prevented Witherspoon from driving the plaintiff's vehicle further down the road.  Id., ¶ 56.  Defendant Eaton, meanwhile, slowly drove past the plaintiff's vehicle and, when the plaintiff's vehicle came to a complete stop upon seeing both police vehicles, parked his car diagonally behind the rear of the driver's side of the plaintiff's parked vehicle.  Id., ¶¶ 57, 58.

Upon stopping, Defendant Eaton opened his door, got out of his vehicle, unholstered his pistol, and then, "as a direct and proximate result of his own wrongful conduct and the wrongful conduct of the other defendants as alleged in this complaint, Defendant Eaton ordered Mr. Witherspoon to get out of the vehicle and show his hands," allegedly subjecting an identifiable person, the plaintiff, to imminent harm.  Id., ¶¶ 59, 61–62.

In attempting to comply with this request, Witherspoon began to get out of the car and raise his hands.  Id., ¶ 64.  Defendant Eaton thereafter fired his service-issued pistol at Witherspoon, who had still been in the process of exiting the vehicle, "thereby further subjecting an identifiable person, the plaintiff, to imminent harm."  Id., ¶ 66.  Witherspoon immediately retreated into the car, at which point Defendant Eaton continued to move behind the car and fire bullets into the rear windshield, the passenger side window, and the passenger side door

near where the plaintiff was sitting.  Id., ¶¶ 67, 70.  In response to the audible gun shots, Defendant Pollock fired his own pistol in the direction of the plaintiff's vehicle.  Id., ¶ 77.  The plaintiff alleges that, at all times while firing their pistols, Defendants Eaton and Pollock were subjecting an identifiable victim, namely the plaintiff, to harm, and that as a result thereof, the plaintiff was shot four times and sustained an array of physical, emotional and financial injuries.  Id., ¶¶ 76–77, 79.

Plaintiff Washington's injuries and damages were directly and proximately caused by the wrongful conduct of Defendant Eaton in that he negligently and unreasonably:  a.  entered the City of New Haven on the basis of a "be on the lookout' ("BOLO") when:  . . .; b.  failed to notify Defendant Hamden that he was entering Defendant New Haven's jurisdiction to look for the suspect vehicle; c. failed to establish communication with Defendant NHPD and/or YPD upon entering Defendant New Haven's jurisdiction; d.  failed to notify Defendant Hamden's Dispatch, Defendant Dispatch and/or YPD's Dispatch provide his location, and state that he had located and stopped a vehicle that matched the description of the suspect vehicle; e.  failed to realize that "on scene" supervision of this traffic stop rested with either YPD or Defendant NHPD and that his actions should have been coordinated with one or both of those departments at all times after entering New Haven, and again once he located a vehicle that matched the description of the suspect vehicle; . . . .  Id., ¶ 80; see also Compl., Second Count, ¶ 80.

8

Plaintiff Washington's injuries and damages were directly and proximately caused by Defendant Pollock's wrongful conduct in that he negligently and unreasonably:  a.  failed to make any contact with either Defendant Hamden's Dispatch. Defendant New Haven's Dispatch, Defendant Yale's Dispatch, or Defendant Eaton after seeing Defendant Eaton's pass his location, despite having enough time to do so; b.  failed to scan or monitor Defendant New Haven's Dispatch or Defendant Hamden's even though he was actively participating in the BOLO; . . .; d.  as the senior officer on the scene form the local police force for Defendant New Haven, failed to assume control and supervision at the scene of the traffic stop; . . . .  <u>Compl., Fourth Count</u>, ¶ 80; see also <u>Compl., Fifth Count</u>, ¶ 80.  At all times relevant to the incident alleged in the Amended Complaint. Defendant Pollock was acting within the scope of his employment with Defendant Yale, under its direction and control, and in furtherance of its business and interests,  <u>Compl., Sixth Count</u>, ¶ 81; <u>Compl., Seventh Count</u>, ¶ 81.  At all times relevant to the alleged incident, Defendant Pollock was acting in his dual capacity as a police officer for Defendant Yale and Defendant New Haven. <u>Compl., Ninth Count</u>, ¶ 82.

III.   <u>MOTION TO DISMISS STANDARD</u>

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).  When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert denied, 554 U.S. 930, 128 S. Ct. 2964 (2008); see also Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Citation omitted.) Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant- harmed-me accusation." (Internal quotation marks and citation omitted.) Id. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

For a plaintiff's complaint to state a claim, assuming that all the allegations in the complaint are true, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]." Bell Atl.Corp., supra, at 555. "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. A complaint must give the defendant "fair notice of what

the ... claim is and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007).

"In its review of a motion to dismiss for failure to state a claim, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.'"   (Citation omitted.) <u>Traylor v. Hammond</u>, 94 F. Supp. 3d 203, 210 (D. Conn. 2015).

## IV.   <u>LAW AND ARGUMENT</u>

### A.

### <u>Plaintiff, in the Ninth Count, has failed to plead a viable indemnity claim, pursuant to Conn. Gen. Stat., § 7-465, against Defendant City of New Haven.</u>

"Section 7-465 allows an action for indemnification against a municipality in conjunction with a common-law action against a *municipal employee*." (Emphasis added.) <u>Gaudino v. East Hartford</u>, 87 Conn. App. 353, 356, 865 A.2d 470 (2005).   This section also provides indemnity for "damages awarded for infringement of any person's civil rights."   Section 7-465(a) provides in relevant part:   "Any town, city, or borough . . . shall pay on behalf of any *employee* of such municipality . . . all sums which such *employee* becomes obligated to pay by reason of the liability imposed upon such *employee* by law for damages awarded . . . if the *employee*, at the time of the occurrence, accident, physical injury complained of, was acting in the performance of his duties and within the scope of his employment . . ." (Emphasis added.) ).   "'A plaintiff bringing suit under General Statutes § 7-465 first must allege in a separate count and prove the

11

*employee's* duty to the individual injured and the breach thereof.  Only then may the plaintiff go on to allege and prove the town's liability for indemnification.'" (Emphasis in original, citation omitted.) Wu v. Fairfield, 204 Conn. 435, 438, 528 A.2d 364  (1987).

As § 7-465 abrogates common-law municipal immunity, it must be strictly construed.  "[W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction . . . In determining whether or not a statute abrogates or modifies a common-law rule the construction must be strict, and the operation of the statute in derogation of the common law is to be limited to matters clearly brought within its scope."  (internal quotation marks omitted.) Spears v. Garcia, 263 Conn. 22, 28, 818 A.2d 37 (2003).

As discussed above, an essential element of a claim being brought against a municipality pursuant to Conn. Gen. Stat., § 7-465 is that an "employee" of  the municipality must also be a defendant in the lawsuit.  Under Connecticut law, "'[o]ne is an employee of another when he renders service for him and what he agrees to do or is directed to do is subject to the will of that other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained.'"  (Citations omitted.) Bieluczyk v. Crown Petroleum Corp., 134 Conn. 461, 465-66, 58 A.2d 380 (1948).  The right to dismiss is of particular significance in the employer-employee

12

relationship.  <u>Id.</u>, at 467.  "'The 'right to control' test determines the [relationship between a worker and a putative employer] by asking whether the putative employer has 'the right to control the means and methods used by the worker in the performance of his or her job.'"  (Citations omitted.) <u>Doe v. Yale University</u>, 252 Conn. 641, 680-81, 748 A.2d 834 (2000).

Other than making the conclusory allegations, without any other supporting allegations, that Defendant Pollock was under the direction and control of Defendant New Haven and Defendant New Haven Police Department, and was acting under color of state law in the furtherance of the law enforcement business of these defendants (<u>Compl., First Count</u>, ¶ 6), it is never specifically alleged in the Amended Complaint that Defendant Pollock was an employee of Defendant New Haven or its police department.  Nor is it alleged that Defendant Pollock was acting in the scope of his employment with Defendant New Haven at the time of the incident set forth in the Amended Complaint.  On the contrary, it is alleged that Defendant Pollock was acting  in the course of his employment with Defendant Yale, under its direction and control.   <u>Compl., Sixth Count</u>, ¶ 81 and <u>Compl., Seventh Count</u>, ¶ 81.

What is specifically alleged by Plaintiff is that Defendant Pollock was acting in a "dual capacity" as a police officer for Defendant Yale and Defendant New Haven<u>.  Compl., First Count</u>, ¶ 5 and  <u>Compl., Ninth Count</u>, ¶ 82.  In support of this allegation Plaintiff cites to section 3 of Special Act No. 83-466, by which Yale University police officers are appointed by Board of Police Commissioners of

Defendant New Haven and have all the enforcement powers of New Haven police officers.  Compl., First Count, ¶ 15.  However, the plaintiff has failed to provide the entire text of section 3 of Public Act No. 83-466, which reads as follows:

> "Sec. 3.  The city of New Haven, acting through its board of police commissioners, may appoint persons designated by Yale University to *act as Yale University police officers*.  Such officers having duly qualified under section 7-294d of the general statutes, shall have all powers conferred upon municipal police officers for the city of New Haven.  *They shall be deemed for all purposes to be agents and employees of Yale University*, subject to such conditions as may be mutually agreed upon by the city of New Haven, acting through the board of police commissioners, and Yale University."   (Emphasis added.)

It is patently clear  from this Special Act that Yale University police officers, while they may be appointed as police officers by the Board of Police Commissioners of the City of New Haven, act as Yale University police officers, and are "agents and employees" of Yale University and not of the City of New Haven. Additionally, in State v. Housing Authority of City of Bridgeport, 157 Conn. 428, 254 A.2d 876 (1969), it was determined by the Connecticut Supreme Court that Special Policeman. even though they were appointed by the Bridgeport Police Department, were employees of the Housing Authority of the City of Bridgeport.

Conn. Gen. Stat., § 7-465 must be strictly construed because it abrogates the immunity enjoyed by Defendant New Haven at common law.  In order to plead a cause of action based on this statute, it is necessary for a municipal employee named as a defendant in the lawsuit.  Plaintiff has failed to sufficiently plead that Defendant Terrance Pollock is an employee of Defendant New Haven or its police department.  As a consequence, Plaintiff has failed to state a claim in the Ninth Count of the Amended Complaint upon which relief can be granted.

**B.**

**The claim against Defendant New Haven Police Department contained in Fourteenth Count should be dismissed because this Defendant is not an entity that is capable of being sued.**

Whether or not Defendant New Haven Police Department has the capacity to be sued is governed "by the law of the state where the court is located, . . . ." **Fed. R. Civ. P.** 17(b)(3), which in this matter would be Connecticut.  "In order to confer jurisdiction on the court the party must have an actual legal existence, that is he or it must be a person in law or a legal entity with legal capacity to be sued." **Disabella v. Town of West Hartford**, 2005 Conn. Super. LEXIS 3123, *5 (November 14, 2005), 2005 WL 3370454; citing **Isaac v. Mount Sinai Hospital**, 3 Conn. App. 598, 600, 490 A.2d 1024 (1985).  "If a party does not have such actual legal existence, it can neither sue or be sued." **Luysterborghs v. Pension & Retirement Board**, 50 Conn. Sup. 351, 354, 927 A.2d 385 (2007).

A municipality has the power to sue or be sued. **Conn. Gen. Stat.,** § 7-148(c)(1)(A). A municipality "means any town, city or borough, consolidated town and city or consolidated town and borough." **Conn. Gen. Stat.,** § 7-148(a).  The Charter of the City of New Haven (hereinafter the "Charter") is the organic law of this municipality.  Article II, Section 2 of the Charter provides in pertinent part that the City of New Haven "shall be a person in law capable of suing and being sued."

Connecticut General Statutes, § 7-148(c)(4)(A), states, in pertinent part, that a municipality, such as Defendant City of New Haven, has the power to "[p]rovide for police protection, regulate and prescribe the duties of the persons providing police protection with respect to criminal matters within the limits of the municipality . . . and do all other things necessary or desirable for the policing of the municipality."  Special Law 1899, page 388 et seq., entitled "An Act Revising the Charter of the City of New Haven," authorized a department of police service for the City of New Haven.  Sp. L. 1899, p. 403, §§ 46 and 47.  Pursuant to Article VI, Section 10, subsection A in the Charter, this department is under the charge of the chief of police, who is appointed by the Mayor, and who's appointment, in accordance with Article VI, Section 3(1), is subject to approval by the Board of Alders.  The Department of Police Service, under the charter, is an integral part of the executive branch of the City of New Haven.

Each municipality may have any municipal officers, departments, boards, commissions and agencies which are specifically allowed by the general statutes or which are necessary to carry out any municipal powers, duties of responsibilities under the general statutes."  Conn. Gen. Stat., § 7-193(b).  The Department of Police Service of the City of New Haven does not have separate legal status.  Notably, the Charter does not authorize the Department of Police Service to act as a separate and distinct entity, nor grant it any separate corporate powers.  As stated in Perretta v. New Britain, 185 Conn. 88, 440 A.2d 823 (1981):

16

> "It is well established that a city's charter is the fountainhead of
> municipal powers.  The charter serves as an enabling act, both
> creating power and prescribing the form in which it must be
> exercised.  It follows that agents of a city, including its commissions,
> have no source of authority beyond the charter.  Their powers are
> measured and limited by the express language in which authority is
> given or by the implication necessary to enable them to perform
> some duty cast upon them by express language."  (Citations and
> internal quotation marks omitted.)  At 185 Conn. 92-93.

Because the Charter does not grant authority to the Department of Police Service to sue or be sued, nor grant any separate powers that would necessitate such authority, it cannot be presumed to exist.   See Old Colony Gardens, Inc. v. Stamford, 147 Conn. 60, 62, 156 A.2d 515 (1959) (recognizing that absent an express grant of power, the only way an entity can exercise unenumerated powers is if the powers are necessary to carry out an enumerated power).

> "Although our appellate courts have not expressly addressed the issue in
> this context, the Superior Court has recently held that certain municipal
> departments are not legal entities separate from their municipalities, and
> therefore they may not be a party in a lawsuit." Luysterborghs v. Pension &
> Retirement Board, supra, at 355.  "The Connecticut General Statutes contain no
> provision establishing municipal departments, including police departments, as
> legal entities separate and apart from the municipality they serve, or providing

17

that they have the capacity to sue or be sued."  (Citations omitted.) <u>Disabella v. Town of West Hartford</u>, supra, at *6.  "Rather, pursuant to Connecticut enabling legislation, it is the municipality itself which possesses the capacity to sue or be sued." (Citation omitted.) <u>Id.</u>  "'Unless departments within municipal government constitute distinct 'bodies politic' under state law, the proper defendant is the municipality itself, not an administrative subdivision.'"  (Citation omitted.) <u>Id.</u>; see also <u>Watrous v. Town of Preston</u>, 902 F.Supp.2d 243, 255-6 (D. Conn. 2012) ("Unless municipal departments constitute separate 'bodies politic' under state law, the proper defendant is the municipality, not the municipality's administrative subdivision." (Citations omitted)).

"While the municipality is authorized to sue and be sued the judges of the Superior Court have held that police departments are not legal entities subject to suit separate and apart from the municipality they serve."  (Citations omitted.) <u>Tierinni v. Town of E. Hartford</u>, 2016 Conn. Super. LEXIS 490, **4-5 (March 9, 2016, Noble, J.).  "In so holding, the courts have found the absence of a specific statute enabling the department to sue or be sued to be dispositive." (Citations omitted.)  <u>Id.</u>, at *5.  "Accordingly, those Connecticut courts addressing this issue have held that municipal police departments *do not* constitute an independent legal entity amenable to suit." (Emphasis in original.) <u>Disabella v. Town of West Hartford</u>, supra, at *6.  Therefore, claims against municipal police departments fail as a matter of law.  <u>Id.</u>, at *7.  See also <u>Eloi v. Gagnon</u>, 2007 Conn. Super. LEXIS 3307 (December 3, 2007), (state law motion to dismiss of

18

Defendant Manchester Police Department granted on the basis that said police department not a legal entity capable of being sued).

With respect to the "Monell" claim, brought pursuant to 42 U.S.C. § 1983, by the plaintiff against Defendant New Haven Police Department in the Fourteenth Count  of the Amended Complaint, the same result would occur.  A municipal police department "is not a municipality nor a 'person' within the meaning of section 1983." <u>Nicholson v. Lenczewski</u>, 356 F. Supp. 2d 157, 164 (D. Conn. 2005).  "A municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function." <u>Id.</u>  "Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983." <u>Id.</u>

Defendant New Haven Police Department does not have a separate legal status, statutory or otherwise, and, therefore, the "Monell" claim brought against it in the Fourteenth Count must be dismissed for failure to state a claim upon which relief can be granted because it is not an entity capable of being sued.

C

<u>**The Fourteenth Count of Plaintiff's Amended Complaint, directed against Defendants Elicker, Reyes, City of New Haven and New Haven Police Department should be dismissed for failing to state a claim upon which relief can be granted under "Monell."**</u>

Plaintiff has brought in the Fourteenth Count of the Amend Complaint what is described as a "Monell" claim against Defendants Elicker, Reyes, City of New Haven and New Haven Police Department.  At the outset it should be noted that Defendants Elicker and Reyes are being sued in their "official capacities.

19

(Footnotes 9 and 10 on page 5 of the Amended Complaint.)  "Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself."  (Citations omitted,)  <u>Seri v. Town of Newtown</u>, 573 F. Supp. 2d 661, 671 (D. Conn. 2008).  In order to assert a viable § 1983 claim against a municipal employee being sued in his official capacity, the plaintiff must also have a viable § 1983 ("Monell") claim against the municipality.  <u>Id</u>.

Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  <u>Sykes v. James</u>, 13 F.3rd 515, 519 (2d Cir. 1993).  "In order to prevail on a section 1983 claim, the plaintiff must show that the defendant's conduct deprived him of a federal right."  Id.  The plaintiff has failed to do this with respect to its claims against the City of New Haven.

Defendant City of New Haven, as a municipality, is not liable under 42 U.S.C. § 1983 for the constitutional torts of its employees on a respondent superior theory.  <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978).  Additionally, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  (Citation omitted).  <u>Poe v. Leonard</u>, 282 F.3d 123, 140 (2d Cir. 2002).  A supervisor's liability cannot be vicarious.  <u>Atwood v. Town of Ellington</u>, 468 F.Supp.2d 340, 353 (D. Conn. 2007).

Municipal liability on claims brought pursuant to 42 U.S.C. § 1983 are limited to constitutional violations caused by an official policy or custom or a

final policymaker acting within his or her area of policymaking.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123, 108 S.Ct. 915 (1988).  This limitation serves "to distinguish acts of the municipality from acts of employees of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible."  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479, 106 S.Ct. 1292 (1986).

In order to state a section 1983 action against a municipality, the plaintiff is required to assert that the alleged unconstitutional act "implements or executes a policy, statement, ordinance, regulation or decision officially adapted and promulgated by the body's officers [or is] visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."  <u>Monell v. New York City Department of Social Services</u>, supra, 690-91.  Additionally, a plaintiff must show "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation."  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S.Ct. 11997, 103 L.Ed. 2d 412 (1989).  "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993).  "Some degree of specificity is required in the pleading of a custom or policy on the part of a municipality."  <u>Thurman v. City of Torrington</u>, 595 F. Supp. 1521, 1530 (D. Conn. 1984).  Where it is alleged that a municipal policy or custom caused a constitutional injury,

"rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for actions of its employees."  Bd. Of County Commissioners v. Brown, 520 U.S. 397, 405, 117 S. Ct. 1382 (1997).

To hold "'a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" (Citation omitted.) Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007).  The plaintiff has failed to plead that an official policy or custom existed that would have caused her to be subjected to a denial of a constitutional right.

The policy or custom requirement under Monell is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the  conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."  Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). "[W]here senior personnel have knowledge of a pattern of constitutionally offense acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or a tacit authorization of the offensive acts." Turpin v. Mailet, 619 F. 2d 196, 201 (2d Cir. 1980). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  (Citation omitted.) Connick v. Thompson, 563 U.S. 51, 61 (2011).  To demonstrate deliberate

22

indifference in order to establish a viable failure to train claim under § 1983 it would ordinarily be necessary to show a "pattern of similar constitutional violations by untrained employees."  (Citation omitted.) <u>Connick v. Thompson</u>, supra, at 62.

Plaintiff, in the Amended Complaint, has failed to allege a pattern of unconstitutional behavior with respect to Defendants Elicker, Reyes, City of New Haven or New haven Police Department.  It should be noted that that nowhere in the Amended Complaint is it alleged that a Hamden police officer was entering the jurisdiction of  New Haven as a result of the alleged robbery that had taken place in Hamden.  There are no specific factual  allegations as to what these defendants did or failed to do in connection with the conclusory allegations made in Paragraph 85 of Count Fourteen.  There are no allegations contained in this count as to what they allegedly knew or did not know, or whether they had any knowledge of any previous incidents involving Hamden police operating in New Haven.  Plaintiff has failed to allege what policies needed to be implemented or were not followed, or what training was deficient or was needed.  Count Fourteen consists of nothing more than unadorned conclusory observations.

There are insufficient allegations being made in Count Fourteen that would support a "Monell" claim against these defendants, and, as presently pled, there is a failure to state a cause of action upon which relief can be granted.

## V.  CONCLUSION

The Motion to Dismiss the Ninth and Fourteenth Counts of the Amended Count should be granted.

THE DEFENDANTS,
JUSTIN ELICKER, OTONIEL REYES,
CITY OF NEW HAVEN, AND NEW
HAVEN POLICE DEPARTMENT


BY:  /s/   *Michael A. Wolak, III*

Michael A. Wolak, III
Fed. Bar #ct12681
Assistant Corporation Counsel
City of New Haven
Office of Corporation Counsel
165 Church Street
New Haven, CT 06510
Tel. #:  203-946-7970
Cell #:  203-376-4364
Fax #:  203-946-7942
Email: mwolak@newhavenct.gov
Their Attorney


## CERTIFICATION

I hereby certify that on September 17, 2020, the Memorandum of Law in Support of the Motion to Dismiss the Ninth and Fourteenth Counts of Plaintiff's Amended Complaint by Defendants Justin Elicker, Otoniel Reyes, City of New Haven and New Haven Police Department was filed electronically and served by mail, if necessary, on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


/s/   *Michael A. Wolak, III*

Michael A. Wolak, III