### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE WASHINGTON | ) | CIVIL ACTION NO.: |
|    *-Plaintiff-* | ) | |
| | ) | |
| V. | ) | 3:20-cv-01111 (VLB) |
| | ) | |
| DEVIN EATON, TERRANCE | ) | |
| POLLOCK, AZIZ ABDULLATTF, | ) | |
| CURT B. LENG, JOHN SULLIVAN, | ) | |
| TOWN OF HAMDEN, TOWN OF | ) | |
| HAMDEN POLICE DEPARTMENT, | ) | |
| RONNELL HIGGINS, YALE | ) | |
| UNIVERSITY, JUSTIN ELICKER, | ) | |
| OTONIEL REYES, CITY OF NEW | ) | |
| HAVEN, NEW HAVEN POLICE | ) | |
| DEPARTMENT, and T&S | ) | |
| UNITED, LLC | ) | |
|    *-Defendants-* | ) | SEPTEMBER 22, 2020 |

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS (DKT. # 34)

Plaintiff respectfully files this memorandum in opposition to the motion to dismiss (doc. #34) filed by the defendants, Town of Hamden, Town of Hamden Police Department, Chief John Sullivan, and Mayor, Curt B. Leng. For the reasons set forth below, their motion should be denied.

### I.    STANDARD OF REVIEW

"The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. (Internal quotations and citation omitted). <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779

2832bef66aa447a0

(2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. <u>Hishon v. King</u>, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient " to raise a right to relief above the speculative level." <u>Bell A. Corp. v. Twombly</u>, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" when ruling on a motion to dismiss. <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

## II.    BACKGROUND

Stephanie Washington ("Ms. Washington") alleges that she was shot four (4) times on April 16, 2019 by police from the Town of Hamden and Yale University, as a direct and proximate consequence of the combined wrongful conduct of all of the defendants. Amended Complaint as a Matter of Course

("Amended Complaint"), First Count, ¶¶ 30-79.[1] More specifically, she alleges that she was shot while seated in the passenger seat of her car, which her companion, Paul Witherspoon, was driving, after they had been subjected to a traffic stop by defendants Eaton and Pollock. Amended Complaint, ¶¶ 55-61 & 80.f.-g.

Regarding her <u>Monell</u>[2] claim against these defendants, Ms. Washington alleges that the official policies spring from a Cross-Policing Agreement and Operational Guidelines, which are incorporated by reference into the Cross-Policing Agreement, between the City of New Haven and the Town of Hamden. Amended Complaint, First Count, ¶¶ 21-25. The Cross-Policing Agreement and Operational Guidelines grant police officers from the Town of Hamden the authority to engage in any action in the City of New Haven that the officer could engage in within the Town of Hamden with respect to non-emergency police enforcement activities, subject to the terms of the Cross-Policing Agreement and Operational Guidelines. Amended Complaint, First Count, ¶ 28.

The complaint further alleges that pursuant to the terms of the Cross-Policing Agreement and the Operational Guidelines, the defendants had a duty to implement policies, procedures, practices, and customs that furthered the goals stated in the agreements. Amended Complaint, Twelfth Count, ¶ 82. One such

---

[1] Document #15, filed August 6, 2020.
[2] Monell v. Department of Soc. Serv., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

goal was to ensure that police officers from the Town of Hamden worked cooperatively with police officers for the City of Hew Haven when engaged in non-emergency police enforcement activities in the City of New Haven, instead of acting unilaterally. Amended Complaint, First Count, ¶ 29. The traffic stop of the vehicle that Stephanie Washington was in where she was shot by police did not involve an emergency situation (at least as a consequence of the conduct of either occupant in the vehicle being stopped). Amended Complaint, First Count, ¶ 80.a.(i)-(iv). Rather, Ms. Washington alleges that her being shot was directly and proximately caused by these defendants breaching their duty to implement policies, procedures, practices, and customs that furthered the goal of ensuring that the police officers from the Town of Hamden worked cooperatively with police officers from the City of New Haven, instead of acting unilaterally. Amended Complaint, Twelfth Count, ¶¶ 82-85.

### III.    ARGUMENT

#### A.    Plaintiff has alleged causation under *Monell* causation against these defendants.

A plaintiff may overcome a motion for judgment on the pleadings by asserting facts that, if proved, "establish municipal liability by showing that a municipal policy or custom existed as a result of the municipality's deliberate indifference to the violation of constitutional rights, either by inadequate training or supervision." Russo v. City of Hartford, 341 F.Supp.2d 85, 107 (D. Conn. 2004).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." Cash v. County of Erie, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks and citations omitted). "[F]ailures to act – such as failures to train or supervise subordinates – may also evince municipal policy where municipal decisionmakers continue to adhere to an approach that they know or should know has failed to prevent constitutional violations." Davis v. City of New York, 75 Fed. Appx. 827, 829 (2d Cir. 2003) (internal quotations and citation omitted). "Where a § 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of *Monell* are satisfied." City of Canton v. Harris, 489 U.S. 378, 396 (1989) (O'Connor, concurring). "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (internal quotation marks and citation omitted).

When asserting a Monell claim, a plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the moving force behind the injury

alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997).

With respect to causation, claims brought under 42 U.S.C. § 1983 "'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" <u>Malley v. Briggs</u>, 475 U.S. 335, 344, n.7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (quoting <u>Monroe v. Pape</u>, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)). Traditional tort concepts of direct and proximate causation inform the causation inquiry on a § 1983 claim. <u>Powers v. Hamilton County Public Defender Com'n</u>, 501 F.3d 592, 608 (6th Cir. 2007).

The Second Circuit has framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the injuries complained of were a result of the defendant's conduct. Even if an intervening third party is the immediate trigger for the plaintiff's injury, the municipality may still be proximately liable, provided that the third party's actions were foreseeable. <u>Kerman v. City of New York</u>, 374 F.3d 93, 126-27 (2d Cir.2004) (holding that even where it was a hospital's doctors who decided to admit the plaintiff for psychiatric observation, the police officer who took the plaintiff to the hospital was nonetheless subject to liability under § 1983 because it was foreseeable that the plaintiff would be detained at the hospital as a result of the

officer's taking him there); <u>Warner v. Orange County Dept. of Probation</u>, 115 F.3d 1068, 1072-74 (2d Cir.1996) (holding that in recommending that the plaintiff be sentenced to an alcohol-treatment program that incorporated religious elements, a probation department could be held liable under § 1983 for violating the plaintiff's First Amendment rights, even though a judge made the sentencing decision). In short, defendants who are sued under § 1983, are '"'responsible for the natural consequences of [their] actions,'" <u>Warner</u>, 115 F.3d at 1071 (2d Cir. 1997) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 344 n. 7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)) (other internal quotation marks omitted). Thus, "an actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." <u>Warner</u>, 115 F.3d at 1071 (internal quotation marks omitted).

In this case, Ms. Washington alleges she was shot because these defendants (the Town of Hamden and the policymakers, defendant Leng in his official capacity as Mayor of the Town of Hamden, and defendant Sullivan, in his official capacity as the Chief of Police for the Town of Hamden):

a.   allowed a policy, procedure, practice, and custom to exist where officers from Defendant HPD would act unilaterally when engaged in proactive law enforcement activities in New Haven;

b.   failed to establish policies, procedures, practices and customs to ensure the proper coordination of activities and the proper supervision of their officers by officers from YPD or Defendant NHPD, when Defendant HPD officers were engaged in proactive law enforcement activities in New Haven;

7

c.      failed to implement a proper training program to ensure their officers
        coordinated with and were supervised by officers from YPD or
        Defendant NHPD, when Defendant HPD officers were engaged in
        proactive law enforcement activities in New Haven;

d.      failed to create and adopt policies, procedures, practices, and
        customs to define the circumstances when it was appropriate to
        enter New Haven for non-emergency proactive law enforcement
        activities;

e.      alternatively, if policies, procedures, practices, and customs exist
        that define when entering New Haven for non-emergency law
        enforcement activities was appropriate, failing to ensure that they
        were followed consistently;

f.      failed to establish a proper communications system and protocols to
        ensure that officers from different jurisdictions could easily and
        efficiently communicate with each other when engaged in proactive
        law enforcement activities together;

g.      alternatively, if such a communications system exists, failing to
        ensure that it was used in situations involving cross-jurisdictional
        policing activities.

With respect to the allegations against defendant Eaton, which can be

attributed to these policies, Ms. Washington alleges that defendant Eaton:

a.      entered the City of New Haven on the basis of a "be on the lookout"
        ("BOLO") when:

        (i)     there was no immediate need to enter New Haven;

        (ii)    there were no facts or circumstances indicating that the
                situation was escalating;

        (iii)   there was no confirmation of a weapon, acts of violence, or
                even that a crime had been committed; and

        (iv)    the vehicle's license plate and registration were known;

8

b.      failed to notify Defendant Hamden that he was entering Defendant
        New Haven's jurisdiction to look for the suspect vehicle;

c.      failed to establish communication with Defendant NHPD and/or YPD
        upon entering Defendant New Haven's jurisdiction;

d.      failed to notify Defendant Hamden's Dispatch, Defendant NHPD's
        Dispatch and/or YPD's Dispatch, provide his location, and state that
        he had located and stopped a vehicle that matched the description of
        the suspect vehicle;

e.      failed to realize that "on-scene" supervision of this traffic stop rested
        with either YPD or Defendant NHPD and that his actions should have
        been coordinated with one or both of those departments at all times
        after entering New Haven, and again once he located a vehicle that
        matched the description of the suspect vehicle;

f.      knew or should have known that Officer Pollock was at the scene of
        this traffic stop yet failed to turn over "on-scene" supervision and
        control to Officer Pollock;

g.      knew or should have known that Officer Pollock was at the scene of
        this traffic stop, yet failed to coordinate his efforts with those of
        Officer Pollock to control the scene and keep it from escalating;

Amended Complaint, First Count, ¶ 80.a.-g.

        Assuming these allegations are true, Ms. Washington has alleged a direct

causal link between the defendants' policy of allowing their officers to engage in

unilateral proactive law enforcement activities in New Haven and Ms. Washington

being shot. Had defendant Eaton's activities been coordinated through the Police

Department for the City of New Haven and Yale University, it is entirely plausible

that coordinating with police from the City of New Haven and/or Yale University

would have prevented this traffic stop from devolving into police use of deadly

9

force and an innocent person being shot. Indeed, had these defendants created and enforced policies and procedures identifying when it was appropriate to enter the City of New Haven to engage in non-emergency cross-policing enforcement activities, or, alternatively, enforced any policies that they have (Amended Complaint, Twelfth Count, ¶¶ 83,d. & e.) defendant Eaton would not have entered the City of New Haven on April 16, 2019 in the first place. Amended Complaint, First Count, ¶ 80.a. Stated differently, but for the defendants' policy of permitting their police officers to travel into the City of New Haven and act unilaterally, including in situations such as the one here where their police officers should not have traveled to New Haven in the first place, Stephanie Washington would not have been shot.

The foreseeability requirement here is satisfied by the fact that Mr. Witherspoon was reported, albeit falsely, as possibly armed with a gun. Amended Complaint, First Count, ¶ 44. Aside from it being logically apparent to any reasonable person that police are more likely to employ deadly force in situations where suspects are reportedly armed with guns, there is also academic research that supports this logic, particularly in situations, such as we have in this case, where the suspect (Ms. Washington's companion, Mr. Witherspoon) is falsely reported by dispatch as being armed. Taylor, Paul L., "Dispatch Priming and the Police Decision to Use Deadly Force," 23 <u>Police Quarterly</u> 311-332 (Dec. 30, 2019) ("[T]his study examined the effects of dispatch priming on an officer's decision to

use deadly force. The findings suggest that officers rely heavily on dispatched information in making the decision to pull the trigger when confronted with an ambiguously armed subject in a simulated environment. When the dispatched information was erroneous, it contributed to a significant increase in shooting errors.")[3]

Therefore, in both sum and substance, Ms. Washington alleges that her injuries were directly and proximately caused by defendant Eaton following official policies that existed or were permitted to exist, by:

    (i)    crossing into the City of New Haven on non-emergency matters to engage in police enforcement activity when there was no valid reason to do so;

    (ii)    not communicating his presence to the police departments for Yale University or the City of New Haven after crossing into New Haven to engage in police enforcement activity there;

    (iii)    not coordinating his activities, identifying his location, the nature of the incident, or any assistance necessary, with members of either or both police departments for Yale University and the City of New Haven before initiating the traffic stop; and

    (iv)    not turning over supervisory authority for initiating and performing the traffic stop at issue in this case to officers from either Yale University or the City of New Haven.

---

[3] The article may be found by copying and pasting the following link into a web browser: https://journals.sagepub.com/doi/10.1177/1098611119896653.

Had defendant Eaton's conduct not been consistent with these policies, it is entirely plausible that the plaintiff would not have been shot because:

(i)     Defendant Eaton would not have been in the City of New Haven;

(ii)    Even if defendant Eaton was properly in the City of New Haven, which is denied, he would not have acted unilaterally but for the policy of these defendants of allowing their officers to act unilaterally. Instead, defendant Eaton would have:

(iii)   coordinated the initiation and execution of the traffic stop with defendant Pollock or some other officer from New Haven or Yale University, and

(iv)    turned over supervision and control of the traffic stop to defendant Pollock or some other officer from New Haven or Yale University instead of initiating it on his own.

Therefore, the plaintiff has plausibly alleged that these defendants created policies that were the moving force in causing the plaintiff's injuries. "A single police officer may grossly, outrageously, and recklessly misbehave in the course of a single incident. Such misbehavior may in a given case be fairly attributable to various municipal policies or customs, either those that authorized the police officer so to act or those that did not authorize but nonetheless were the 'moving force, Polk County v. Dodson, 454 U.S. 312, 326 (1981), or cause of the violation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 830-31 (1985). Accordingly, the motion to dismiss on this basis should be denied.

B.      <u>Defendants Leng and Sullivan were sued in their official not their individual capacities</u>.

**12**

Defendants Leng and Sullivan argue that Ms. Washington's claims against them should be dismissed because Ms. Washington fails to allege a plausible claim for supervisory liability. In proffering this argument, defendants misconstrue the allegations against them. See <u>McGrath v. Scott</u>, 250 F. Supp.2d 1218, 1222-3 (D.Ariz. 2003) ("[M]unicipal and supervisory liability present distinct and separate questions that are treated and analyzed as such. . . . Supervisory liability concerns whether supervisory officials' own action or inaction subjected the Plaintiff to the deprivation of her federally protected rights. Generally, liability exists for supervisory officials if they personally participated in the wrongful conduct or breached a duty imposed by law. . .In contrast, municipal liability depends upon enforcement by individuals of a municipal policy, practice, or decision of a policymaker that causes the violation of the Plaintiffs federally protected rights. . . . Typically, claims asserted against supervisory officials in both their individual and official capacities provide bases for imposing both supervisory liability (the individual claim) and municipality liability (the official capacity claim) if the supervisor constitutes a policymaker.") (Citations omitted).

Ms. Washington sued defendants Lang and Sullivan in their official capacities not their individual capacities. Amended Complaint, First Count, ¶¶ 8 & 9, n. 3 & 4. As such, her claims are brought against the Office of the Mayor and the Office of the Chief of Police for the policies the individuals in these offices created and did not create over time but should have under the Cross Policing

Agreement and the Operational Guidelines, dating back to the inception of these documents in 2011. See Amended Complaint, First Count, ¶¶ 21-29 and Twelfth Count, ¶¶ 82 & 83.

To reiterate, the plaintiff's allegations here do not attempt to assign supervisory liability against Leng and Sullivan individually. Rather, the plaintiff's claims are against these individuals in their official capacities because of the policies which they and/or their predecessors-in-interest created under the auspices of the Cross-Policing Agreement and the Operational Guidelines. This explains why the claims against Leng and Sullivan were brought as part of the plaintiff's *Monell* claim. Therefore, defendants' motion to dismiss on this basis is misguided and should be denied.

     C.    <u>The existence of the Town of Hamden Police Department as a separate entity is plausible under Connecticut law</u>.

Defendants' sole argument here is that there is a hard-and-fast rule that police departments in Connecticut cannot as a matter of law be separate legal entities capable of suing or being sued. There is, however, no such hard-and-fast rule.

Connecticut General Statutes § 7-193(b) states in relevant part: "… Any municipality may, by charter or by ordinances or resolutions adopted pursuant to such charter, alter the method of … organization of any or all … departments, boards, commissions or agencies, including combining or separating the duties

**14**

of each, unless specifically prohibited from making such alteration by the Constitution or the general statutes." There does not appear to be any prohibition in the Constitution or general statutes that prevents municipalities from organizing police departments as separate legal entities. Because defendants' sole argument here is "that Police Departments … are not entities capable of being sued separately from the municipal entity they serve" as a matter of law, and because that statement is contrary to the express terms of General Statutes § 7-193(b), defendant's motion as to this issue must be denied.

Moreover, accepting plaintiff's allegations as true, the more plausible conclusion here is that the Hamden Police Department is a separate legal entity capable of suing and being sued. Boards of police commissioners, though existing under the broader corporate structure of the municipalities that they serve, are separate entities who can sue or be sued. See, e.g. Clisham v. Board of Police Commissioners, 223 Conn. 354 (1992)[4]; Sanzone v. Board of Police Commissioners, 219 Conn. 179 (1991)[5]; Board of Police Commissioners v. White, 171 Conn. 553 (1976)[6]; see also United Public Service Employees Union, COPS Local 062 v. Town of Hamden, et al., Dkt. # NNH-CV19-5047513-S, a civil action currently pending on the docket of both the Superior Court and the Appellate

---

[4] A case involving the Board of Police Commissioners for the Borough of Naugatuck.
[5] A case involving the Board of Police Commissioners for the City of Bridgeport.
[6] A case involving the Board of Police Commissioners for the City of New Haven.

Court, where one of the named defendants is on the Town of Hamden's Board of Police Commissioners.[7]

By statute, the management and supervision of police departments fall under the auspices of these separate boards, including the "sole power of appointment, promotion and removal of officers and members of such police department[.]" Conn. Gen. Stat. § 7-276. Similarly, there are several cases currently pending on the Superior Court's docket where a municipal police department is the named plaintiff.[8] Employing a "party name" search on the Superior Court's website using the term "police department" in the field entitled "Party Last Name" produces a number of other cases where police departments are also named as defendants or have appeared as third parties. Consequently, defendant's claim that there is a universal rule that municipal police departments

---

[7] Please see, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=NNHCV195047513S. In this case the plaintiff sought and received an order enjoining the Board of Police Commissioners for the Town of Hamden from proceeding with disciplinary hearings against the defendant here, Devin Eaton, for shooting the plaintiff, Stephanie Washington. The Town of Hamden filed an appeal acknowledging that the Board of Police Commissioners for the Town of Hamden was a separate party to the action. See docket entry # 106.00, filed 12/24/2019 at p. 2.

[8] Please see, Police Department, Town of Stratford v. Board of Firearms Permit Examiners, dkt. # HHB-CV19-6052640-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHBCV196052640S; Police Department of the Town of Darien v. Freedom of Information Commission, dkt. # HHB-CV18-6042717-S, http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHBCV186042717S; and

16

in Connecticut can never be separate legal entities capable of suing or being sued is contrary to: (1) the express terms of General Statutes § 7-197(b); (2) reality as demonstrated by cases currently pending on the Superior Court's docket; and (3) by the fact that the department at issue here is organized under the managerial purview of the Town of Hamden's Board of Police Commissioners, an entity recognized as being a separate entity by the Town of Hamden in litigation currently pending before the superior and appellate courts for the State of Connecticut.

Accordingly, the existence of the Hamden Police Department as an entity with a separate legal identity from the Town of Hamden is entirely plausible. Therefore, the motion to dismiss on this basis should be denied.

*IV.*     *CONCLUSION*

For the foregoing reasons, the plaintiff respectfully submits that the motion

to dismiss (doc. #34) should be denied.

THE PLAINTIFF,

BY:   /s/ John-Henry M. Steele (ct10187)
John-Henry M. Steele, Esq.
DEY SMITH STEELE, LLC
9 Depot Street, 2nd Floor
Milford, CT 06460
Tel.: (203) 882-3351
Fax: (203) 882-3359
E-mail: jhs@deysmith.com

CERTIFICATION

I hereby certify that on Tuesday, September 22, 2020, a copy of the
foregoing was filed electronically and served by U.S. Mail, postage prepaid, on
anyone unable to access, use or accept electronic filing. Notice of this filing will
be sent by email to all parties by operation of the Court's electronic filing system
or by mail to anyone unable to accept electronic filing as indicated on the Notice
of Electronic Filing. Parties may access this filing through the Court's CM/ECF
System.

/s/ John-Henry M. Steele (ct10187)