UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE WASHINGTON | : | CIV. NO.3:20-cv-01111 (VLB) |
|     Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| DEVIN EATON, TERRANCE POLLOCK, AZIZ ABDULLATTF, CURT B. LENG, JOHN SULLIVAN, TOWN OF HAMDEN, TOWN OF HAMDEN POLICE DEPARTMENT, RONNELL HIGGINS, YALE UNIVERSITY, JUSTIN ELICKER, OTONIEL REYES, CITY OF NEW HAVEN, NEW HAVEN POLICE DEPARTMENT, AND T&S UNITED, LLC | : | |
|     Defendants. | : | OCTOBER 6, 2020 |

**DEFENDANTS' REPLY IN SUPPORT OF
PARTIAL MOTION TO DISMISS**

The defendants, Town of Hamden, Hamden Police Department, Chief John Sullivan, and Mayor Curt B. Leng, respectfully submit this reply in support of their Partial Motion to Dismiss plaintiff's Amended Complaint [Doc. 34], dated September 4, 2020.

**I.    PROCEDURAL HISTORY/PLAINTIFF'S COMPLAINT**

The relevant procedural posture is set forth in the defendants' Memorandum of Law in support of their Partial Motion to Dismiss filed on September 4, 2020. On September 22, 2020, plaintiff filed an Opposition to the defendants' Partial Motion to Dismiss.

Plaintiff's Opposition merely deflects attention from the fundamental flaws that render Count Twelve of her Amended Complaint implausible and subject to dismissal. With regard to her **Monell** claim against the Town, plaintiff reiterates her allegations from her Amended Complaint which, as defendants have explained, are insufficient to establish liability of the Town pursuant to **Monell**. With regard to her **Monell** claim against defendants Sullivan and Leng, plaintiff clarifies that these defendants are being sued in their official capacities, not individually. Nonetheless, plaintiff's complaint fails to state a viable claim against both defendants. Finally, plaintiff attempts to obfuscate her way around the fact that, in this jurisdiction, police departments have been overwhelmingly determined not to be distinct bodies-politic capable of being sued independently from the municipality that governs them. As is set forth in more detail below and in the defendants' memorandum of law in support of their Partial Motion to Dismiss, the facts alleged in Count Twelve of plaintiff's Amended Complaint simply do not and cannot support a reasonable conclusion that the Town, the Hamden Police Department, Chief Sullivan, and/or Mayor Leng actually infringed upon plaintiffs' constitutional rights.

II. **LEGAL ARGUMENT**

    A. **Plaintiff Has Failed To Identify A Basis For The Survival Of Her Monell Claim Against The Town**

The crux of plaintiff's argument is that the Town's implementation of the Cross-Policing Agreement with the City of New Haven imposed a duty upon the Town "to

2

implement policies, procedures, practices, and customs that furthered the goals stated in the agreements." Amended Complaint ("Compl."), Count Twelve ¶ 82. She further explains her argument to be that the defendants did not implement policies, procedures, practices, and customs that furthered the goals of the agreements, and therefore, that this "breach of duty" facilitated her being shot at by Officer Eaton.

First, in order to prove the existence of a "policy or custom" under Monell, plaintiff must sufficiently plead one of the following: (1) the existence of a formal policy, officially promulgated or adopted by a municipality; (2) that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision which caused the alleged violation of Plaintiffs' constitutional rights; (3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to constitute "custom or usage," and proof that this practice was so manifest or widespread as to imply the constructive acquiescence of policymaking officials; or, if liability is based on a claim of failure to train or supervise, that (4) the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come in contact. See Gym Door Repairs, Inc. v. New York City Dep't of Educ., No. 12 CIV. 7387, 2014 WL 5569970, at *6 (S. D. N. Y. Nov. 3, 2014).

In her Amended Complaint, and again in her Opposition, plaintiff states in catch-all fashion that the defendants (1) allowed for the Cross-Policing Agreement to exist; (2) failed to establish policies, procedures, practices and customs to ensure the proper

**coordination of activities and the proper supervision of their officers by officers from YPD or Defendant NHPD, when Defendant HPD officers were engaged in proactive law enforcement; (3) failed to implement a training program for such a scenario; (4) either did or did not create and adopt policies, procedures, practices, and customs to define the circumstances when it was appropriate to enter New Haven for non-emergency proactive law enforcement activities, but if they did create those policies, the defendants failed to ensure they were followed consistently; and (5) either did or did not establish a proper communications system for use between officers of different jurisdictions when engaged in cross-jurisdictional policing activities, but if they did establish these systems, they failed to ensure the systems were used.  Compl., Count Twelve ¶ 82–83.  Plaintiff claims that these allegations, if assumed to be true, allege "a direct causal link between the defendants' policy of allowing their officers to engage in unilateral proactive law enforcement activities in New Haven and Ms. Washington being shot." This is not the case.**

**Plaintiff's proffering of the Cross-Policing Agreement itself as the policy that caused her injuries through its enforcement, in conjunction with the "policies, procedures, practices and customs" she believes should have been created, is unavailing.  Cross-Policing Agreements are statutorily authorized by General Statutes §**

7-277a.  Accordingly, to the extent that plaintiff attempts to characterize the Cross-Policing Agreement as an "unlawful policy," without more, she cannot succeed.[1]

Plaintiff adds that her injuries were a direct and proximate result of the Cross-Policing Agreement's enactment and implementation.  She attempts to show "but-for" causation by predicting a sequence of occurrences that hypothetically could have happened had Officer Eaton acted in accordance with the guiding policies and procedures that plaintiff believes should have been created.  See Plaintiff's Opposition ("Pl.'s Opp."), at 12.  To state a viable claim against the Town, plaintiff must allege both that "there was a particular policy, practice or custom and that the particular policy, practice or custom was the legal cause of the plaintiff's constitutional injury." Giacco v. City of New York, 502 F. Supp. 2d 380, 389 (S. D. N. Y. 2007) (emphasis added).  Further,

---

[1] General Statutes § 7-277a provides, in pertinent part:  "The chief executive officer of any municipality, or such chief executive officer's designee may, whenever he or she determines it to be necessary in order to protect the safety or well-being of the municipality, request the chief executive officer of any other municipality to furnish such police assistance as is necessary to meet such situation and the chief executive officer, or chief of police or board of police commissioners or other duly constituted authority with the approval of the chief executive officer of the municipality receiving such request may, notwithstanding any other provision or requirement of state or local law, assign and make available for duty in such other municipality, under the direction and command of an officer designated for the purpose, such part of the police forces under his or her control as he or she deems consistent with the safety and well-being of the municipality.  Any policeman so provided, while acting in response to such request, shall have the same powers, duties, privileges and immunities as are conferred on the policemen of the municipality requesting assistance. . . .  Any municipality, upon the approval of the chief executive officer and, where required by charter or ordinance, the governing body of such municipality, may enter into an agreement with any other municipality or municipalities, with respect to requesting and supplying such assistance and reimbursing or receiving reimbursement for the same."

"[t]he fact that a municipal policy might lead to police misconduct is hardly sufficient to satisfy Monell's requirement that the particular policy be the moving force behind a constitutional violation."  Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S. D. N. Y. Mar. 26, 2015).  Plaintiff has not established that the particular policy at issue, the Cross-Policing Agreement, was the legal cause of her constitutional injury.  Specifically, plaintiff's argument relies on a series of hypothetical interactions that may or may not have occurred if the certain additional policies and guidelines she claims the defendants "failed to implement" were indeed implemented.  In fact, plaintiff herself admits that her speculated chain of events was merely "plausible."  See Pl.'s Opp., at 12.  The Monell standard, as well as proximate causation, requires more than hypothetical speculation and plausibility.  Accordingly, plaintiff has not established that her constitutional injuries were directly and legally caused by the existence and use of the Cross-Policing Agreement.

Further, it appears from the law cited in the plaintiff's Opposition that she additionally couches the survival of her Monell claim on the alleged breach of the duty to create specific procedures, practices, or customs, discussed supra, thus implying that this breach of duty constitutes an actionable "policy of inaction."  See Cash v. Country of Erie, 654 F.3d 324, 334 (2d Cir. 2011) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction.  In the latter respect, a city's policy of inaction in light of notice that its program will cause constitutional

6

violations is the functional equivalent of a decision by the city itself to violate the Constitution.")  Plaintiff's contention fails to remediate the deficiency in her pleading.

"Inaction" in the context of Monell liability must be shown to be a deliberate choice not to act.  "[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983." Cash v. Cty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011) (emphasis added).  As the Supreme Court has cautioned, "deliberate indifference" is "a stringent standard of fault," Connick v. Thompson, 131 S. Ct. at 1360 (quoting Board of Cty. Comm'rs v. Brown, 520 U.S. at 410, 117 S. Ct. 1382), and necessarily depends on a careful assessment of the facts at issue in a particular case. The operative inquiry, therefore, is whether those facts demonstrate that the policymaker's inaction was the result of "conscious choice" and not "mere negligence." Cash v. Cty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011).  See also Connick, 131 563 U.S. at 72 (holding that the District Court should have granted judgment as a matter of law on a § 1983 failure to train claim where plaintiff did not prove a pattern of similar violations as is required to establish a "policy of inaction").

The standard for common law negligence requires a plaintiff to prove that they were owed a duty, that the duty was breached, and that the breach of such duty was the proximate cause of the injuries sustained.  See Insurance Co. of North America v. City of New Haven, 574 F. Supp. 373 (D. Conn. 1983).  Plaintiff's allegation that the

defendants breached a duty to implement policies, and that the breach of that duty was the direct and proximate cause her injuries, sounds more like a negligence claim than a Monell claim.  See Compl., Count Twelve ¶ 82–85; Pl.'s Opp. At 3–4.  If it is determined that the alleged failure of the Town to implement certain policies and procedures in light of the Cross-Policing Agreement constituted mere negligence, this failure cannot serve as a basis for finding Monell liability, as the failure to do so was not a "conscious choice."  See Cash, 654 F.3d at 334.

Finally, as discussed in defendants' Memorandum of Law in support of their Partial Motion to Dismiss, the only facts relied upon by plaintiff to establish the allegedly unlawful nature of the Cross-Policing Agreement are those out of which her own claims arise.  Such allegations alone, even if proven, are generally not sufficient to impose liability under Monell.  Jones v. Town of East Haven, 493 F. Supp. 2d 302, 330 (D. Conn. 2007); see also Villante v. Dept. of Corrections of City of New York, et al., 786 F.2d 516, 519 (2d Cir. 1986) ("an isolated act of excessive force by a single non-policymaking municipal employee, standing alone, is insufficient. . . .").  Here, plaintiff has not alleged facts regarding any other incidents, prior to that at issue or at all, in which Hamden police officers have violated the constitutional rights of others in a manner that would put the Town on notice of a pattern of violations that might support a Monell claim against the Town.

Accordingly, plaintiff's attempt to establish <u>Monell</u> liability against the Town is insufficient as it lacks the necessary factual predicate, and her <u>Monell</u> claim as alleged in Count Twelve should be dismissed as against the Town.

### B. Plaintiff Has Failed To Identify A Basis For The Survival Of Her <u>Monell</u> Claim Against Defendants Sullivan and Leng

In her Opposition to defendants' Partial Motion to Dismiss her <u>Monell</u> claim as against defendants Sullivan and Leng, plaintiff proclaims that defendants have mischaracterized her allegations as suing these defendants in their individual capacity when she intends to sue them in their official capacity.[2]  Nonetheless, even if plaintiff is suing defendants Sullivan and Leng in their official capacity as Chief and Mayor, respectively, she still has not plead a legally viable claim.

First, the claims against defendants Sullivan and Leng, in their official capacities, should be dismissed, because "a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself."  <u>Coon v. Town of Springfield, Vt.</u>, 404 F.3d 683, 687 (2d Cir. 2005); <u>citing</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471–73 (1985).  For this reason alone, plaintiffs cannot proceed on their claim against defendants Sullivan and Leng in their official capacities, and they should be dismissed as party defendants.

---

[2] Defendants argued in their Partial Motion to Dismiss that Chief Sullivan and Mayor Leng had no personal involvement in the subject incident and, accordingly, could not be held liable pursuant to <u>Monell</u> on a failure to supervise theory, which defendants' maintain is still true for the reasons set forth therewithin.

Even if the Court decides not to dismiss plaintiff's <u>Monell</u> claim against defendants Sullivan and Leng on this basis, the Court should still dismiss Count Twelve as it pertains to these defendants because plaintiff has failed to state a viable <u>Monell</u> claim. In her Opposition, plaintiff argues that "the Office of the Mayor and the Office of the Chief of Police . . . created and did not create over time but should have under the Cross-Policing Agreement and the Operational Guidelines," certain policies, which plaintiff claims led to the violation of her rights. Because plaintiff has stated in her Opposition that she is not pursuing her <u>Monell</u> claim on a failure to supervise theory, plaintiff instead seems to try to establish a <u>Monell</u> claim by showing "that an official or officials responsible for establishing final policy with respect to the subject matter in question took action or made a specific decision which caused the alleged violation of Plaintiffs' constitutional rights." See <u>Gym Door Repairs, Inc.</u>, 2014 WL 5569970, at *6. Plaintiff cannot establish a viable <u>Monell</u> claim under this theory.

If plaintiff seeks to show that "officials responsible for establishing final policy with respect to the subject matter in question <u>took action or made a specific decision</u> which caused the alleged violation of plaintiff's constitutional rights," <u>id.</u>, plaintiff cannot succeed. To establish that defendants Sullivan and Leng, as the officials responsible for "establishing final policy" with respect to the terms of the Cross-Policing Agreement, "took action or made a specific decision" that led to the alleged violation of her rights, plaintiff must do more than muse about the goals and purposes of the Agreement, or opine that there should have been more robust policies governing

its implementation—an opinion with which the defendants disagree.  In other words, in order to establish the liability of defendants Sullivan and Leng, plaintiff must point to a specific, <u>deliberate</u> action taken by either of these defendants which thereafter proximately caused her injuries.  And, as discussed, to the extent that plaintiff claims the "specific decision" to have been their implementation of the Cross-Policing Agreement itself, that Agreement is statutorily authorized by General Statues § 7-277a and, absent a pattern of violations stemming from this Agreement of which defendants Sullivan and Leng had notice, it cannot constitute the "unlawful policy" for purposes of a <u>Monell</u> claim.

In sum, plaintiff's <u>Monell</u> claim based on the Cross-Policing Agreement is insufficient to impute liability to the Town and, in particular, to either Mayor Leng or Chief Sullivan.  Further, as discussed above, because § 1983 claims brought against municipal officials in their official capacity constitute an action against the municipality itself, Mayor Leng and Chief Sullivan should be dismissed as party defendants.

**C.    Plaintiff Has Failed To Overcome This District's Overwhelming Consensus That Police Departments Are Not Distinct Political Bodies Capable Of Being Sued Directly**

Finally, plaintiff contests defendants' argument, which itself is based on numerous opinions from this district, that police departments cannot as a matter of law sue or be sued separately from their governing municipality.  Plaintiff specifically argues that there is "no hard and fast rule" saying as such, and further, that because there is no express prohibition in the Constitution or the General Statutes preventing

municipalities from organizing police departments as separate legal entities, the "more plausible" conclusion here is that the Hamden Police Department is a separate legal entity.  Plaintiff argues, in effect, that because police departments are not legislatively <u>prohibited</u> from being sued, they must therefore be vulnerable to suit.  This is, plainly, incorrect.

For clarity, the defendants reiterate the law governing their position with respect to the insufficiency of plaintiff's claim.  Courts in this District have held that "sub-entities within a municipal government cannot sue or be sued unless they constitute distinct 'bodies-politic' under state law." <u>Callahan v. City of New Haven Department of Human Resource</u>, No. 3:18-cv-00488 (JAM), 2019 WL 1052181, at *1 (D. Conn. Mar. 5, 2019) (internal quotation marks omitted) (quoting <u>Farmington-Girard, LLC v. Planning & Zoning Comm'n</u>, No. 3:17-cv-1915 (MPS), 2019 WL 935500 (D. Conn. Feb. 26, 2019).  "In determining whether a municipal subdivision constitutes a separate "body politic," courts have looked to whether a specific statute enables the entity to sue or be sued, and have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic." <u>Watrous v. Town of Preston</u>, 902 F. Supp. 2d 243, 256 (D. Conn. Sept. 29, 2012) (internal quotation marks omitted).  "Connecticut statutes contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued.  Rather, it is the municipality itself which possesses the capacity to sue and

be sued." Santiago v. Hamden Conn. Police Dep't, No. 3:19-cv-1659 (KAD), 2019 WL 6497003, at *4 (D. Conn. Dec. 3, 2019) (internal quotation marks omitted) (quoting Rose v. City of Waterbury, No. 3:12-cv-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013)). Accordingly, our courts have continued steadfastly to hold that police departments do not constitute separate bodies-politic and, as such, are not entities capable of being sued separately from the municipal entity they serve. See Thomas v. Brasher-Cunningham, No. 3:19-cv-1981 (VAB), 2020 WL 4284564, at *11–12 (D. Conn. July 27, 2020); Villano v. Woodgreen Shelton, LLC, No. 3:19-CV-00097 (KAD), 2019 WL 4889013, at *2 (D. Conn. Oct. 3, 2019).

First, it must be pointed out that, in support of her contention, plaintiff has cited to a number of state cases in which Boards of Police Commissioners are named parties. See Clisham v. Board of Police Com'rs, 223 Conn. 354 (1992) (borough police chief appeals from removal decision by board of police commissioners); Board of Police Com'rs v. White, 171 Conn. 553 (1976) (city and board of police commissioners seek to enjoin arbitration proceedings related to dismissal of two police officers).[3]

---

[3] Plaintiff also cites to Sanzone v. Board of Police Com'rs of City of Bridgeport, 219 Conn. 179 (1991), and United Public Service Employees Union, COPS Local 062 v. Town of Hamden, Dkt. # NNH-CV19-5047513-S. In Sanzone, the court was asked to interpret "the meaning and scope of a proviso contained within General Statutes § 52–557n" in a case where plaintiffs sued the City of Bridgeport, its Board of Police Commissioners, the members of the Board, the Superintendent of Police, and a Police Sergeant. Plaintiffs did not directly sue the Bridgeport Police Department and, accordingly, this import of Sanzone is inapposite.

In United Public Service Employees Union, COPS Local 062, plaintiff sought and received an order enjoining the Hamden Board of Police Commissioners from

Municipalities are authorized by General Statutes § 7-274 to "establish a board of police commissioners to be elected . . . or to be appointed" by the appropriate governing body within the town.  Pursuant to the statute, municipalities are empowered to create such Boards of Police Commissioners for purposes of "organizing and maintaining a police department in such town."  In the two cases cited above from plaintiff's Opposition, the involvement of the Boards of Police Commissioners was in their statutorily authorized capacities as the bodies responsible for "appointment, promotion and removal of . . . officers and members" of their police departments.  See General Statutes § 7-276.  Importantly, police departments and Boards of Police Commissioners are not the same, and plaintiff's use of incongruent cases in her Opposition does nothing to revive her unviable claim against the Hamden Police Department.

In addition, plaintiff proceeds to defend her inclusion of the Hamden Police Department as a named defendant by describing the search mechanism on the judicial branch website and relaying that, after using such mechanism to search "police department" in the "last name" search field, she was, indeed, able to find a few entries where police departments were named defendants or have appeared as third parties.

---

proceeding with disciplinary hearings against defendant Devon Eaton, the officer involved in the underlying facts of the present case.  Plaintiff argues in her Opposition that "[t]he Town of Hamden filed an appeal acknowledging that the Board of Police Commissioners for the Town of Hamden was a separate party to the action."  Again, defendants' argument only concerns the Hamden Police Department, and not the Hamden Board of Police Commissioners.

**Defendants would make clear here that while there certainly are instances in which police departments <u>have</u> been sued, the overwhelming majority of courts <u>faced with motions to dismiss</u> on these grounds have concluded that, on the basis of our state statutes and case law, claims brought directly against police departments as named defendants should be dismissed.  See <u>Thomas</u>, 2020 WL 4284564, at *11–12; <u>Santiago</u>, 2019 WL 6497003, at *4; <u>Villano</u>, 2019 WL 4889013, at *2 (D. Conn. Oct. 3, 2019).**

## II. <u>CONCLUSION</u>

For all the foregoing reasons, and those set forth in their Partial Motion to Dismiss and supporting Memorandum of Law, the defendants, Town of Hamden, Hamden Police Department, Mayor Curt Leng, and Chief John Sullivan, respectfully request that their Partial Motion to Dismiss plaintiff's Amended Complaint be granted.

>           **DEFENDANTS, TOWN OF HAMDEN,
>           HAMDEN POLICE DEPARTMENT, JOHN
>           SULLIVAN, CURT B. LENG**
>
> **BY<u>/ss/ James N. Tallberg</u>**
>           James N. Tallberg
>           Federal Bar No.: ct17849
>           Karsten & Tallberg, LLC
>           500 Enterprise Dr., Suite 4B
>           Rocky Hill, CT 06067
>           T: (860)233-5600
>           F: (860)233-5800
>           <u>jtallberg@kt-lawfirm.com</u>

## **CERTIFICATION**

**I hereby certify that on October 6, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.**

                                                **/ss/ James N. Tallberg**
                                                **James N. Tallberg**