# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **STEPHANIE WASHINGTON** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **V.** | ) | **3:20-cv-01111** |
| | ) | |
| **DEVIN EATON, TERRANCE POLLOCK,** | ) | |
| **AZIZ ABDULLATTF,  CURT B. LENG,** | ) | |
| **JOHN SULLIVAN, TOWN OF HAMDEN,** | ) | |
| **TOWN OF  HAMDEN POLICE** | ) | |
| **DEPARTMENT, RONNELL HIGGINS,** | ) | |
| **YALE UNIVERSITY, JUSTIN ELICKER** | ) | |
| **OTONIEL REYES, CITY OF NEW HAVEN,** | ) | |
| **NEW HAVEN POLICE  DEPARTMENT,** | ) | |
| **and T&S  UNITED, LLC** | ) | **OCTOBER 26, 2020** |

### PLAINTIFF'S OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AZIZ ABDULLATF AND DEFENDANT T&S UNITED, LLC's MOTION TO DISMISS

The Defendants Aziz Abdullatf and T&S United, LLC move to dismiss (DKT. #37) Counts Ten and Eleven of the Plaintiff, Stephanie Washington's, Amended Complaint dated August 6, 2020. The Plaintiff objects to the aforementioned Motion to Dismiss. The Amended Complaint, specifically and for the purposes of this Objection, Counts Ten and Eleven, should be allowed as the allegations therein were raised in a timely fashion and are supported by the facts of this case and supported by law. The Plaintiff's claims most certainly state a claim upon which relief may be granted. The Court should deny the Motion to Dismiss.

1

I.    Introduction

The Defendant, Aziz Abdullatf ("Defendant Abdullatf"), at the time of the incident was an individual acting within the scope of his employment while employed by T&S United, LLC (the "LLC-Defendant"). (Amended Complaint, First Count, ¶7) The LLC-Defendant at the time of the incident was and is a limited liability company doing business as Go on Gas, a 24-hour gas station/convenience store located at 144 Arch Street in Hamden, Connecticut. (See Am. Compl., First Count, ¶20) The entire series of events that unfolded at the LLC-Defendant's premises were caught on the LLC-Defendant's surveillance camera. On April 16, 2019, Stephanie Washington accompanied Paul Witherspoon to the LLC-Defendant. (See Am. Compl., First Count, ¶30) Paul Witherspoon and a man named Jordany Rodriguez engaged in some sort of discussion at the late night service window at LLC-Defendant's premises. (See Am. Compl., First Count, ¶34) This conversation between Witherspoon and Rodriguez occurred in front of Defendant Abdullatf. Defendant Abdullatf then initiates a 911 call with the Hamden Police Department. (See Am. Compl., First Count, ¶38). The pertinent portions are as follows:

Defendant Abdullatf: Uh, I have my delivery for the newspaper. Uh, somebody who delivered my newspaper and I have, like, a regular customer driver a red car (UI) license plate AK63322 long dreads parking

2

here, long dreads. He pulled a gun at the guy who delivered the paper here in Hamden its clear he was asking for money outside, outside a gas station.

**Defendant Hamden's Dispatch:** Ok, so did he take his money?

**Defendant Abdullattf:**  No. The guy who jumped in the car run right away.

. . .

**Defendant Abdullattf:**  . . . I need some help. He's a dangerous. He's harassing the second customer, too.

**Defendant Hamden's Dispatch:**  . . . [i]s he a white male, black male?

**Defendant Abdullattf:** Black, African American.  He goes, he goes to the, he goes to the Arch to Dixwell.

. . .

**Defendant Hamden's Dispatch:**  He's in the car now?

**Defendant Abdullattf:** He's in the car with the female, yes.

. . .

**Defendant Hamden's Dispatch:**  . . . [h]e take the Arch Street to Dixwell, yes.

. . .

**Defendant Abdullattf: OK. We have help on the way."** (Amended Complaint, First Count, ¶39)

Defendant Abdullattf at a later date conveys to the law enforcement investigators that he never saw Paul Witherspoon with a firearm and the Connecticut state police found no evidence of a firearm in the vehicle with Paul Witherspoon and Stephanie Washington. Nevertheless, the police responded to the 911 call which then lead to the Hamden Police Officer and Yale Police officer discharging their firearms at Stephanie Washington which resulted in Ms. Washington's serious injuries.

## II.    Legal Standard

To survive a motion to dismiss, a Plaintiff need only show "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint subject to an attack by Rule 12(b)(6) "does not need detailed factual allegations," but rather "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). When a court evaluates a motion to dismiss, the court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts to raise a reasonable expectation that discovery will reveal evidence. See Chaparro v. Carnival Corp.,

693 F.3d 1333, 1337 (11th Cir. 2012). The issue on a motion to dismiss "is not whether the Plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D.Conn.1990) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974)).

III.    Argument

A. Plaintiff sets forth sufficient facts and law to establish a cause of action for damages that were directly and proximately caused by a false report provided to law enforcement by Defendant Aziz Abdullatf.

a. False Report

Defendant Aziz Abdullatf and Defendant T&S United, LLC claim that the 911 call made by Defendant Aziz Abdullatf is privileged as a petition to the Government for relief. The Connecticut Supreme Court has held that statements made to the police having to do with a criminal investigation may be entitled to a qualified privilege. Mara v. Otto, 127 Conn.App. 404, 409, 13 A.3d 1134 (2011). The Connecticut Supreme Court has also previously held that defamatory statements made to State Troopers about another person have also been entitled to a qualified privilege. Gallo v. Barile, 284 Conn. 459, 935 A.2d 103 (2007).[1] Nevertheless, if a statement is malicious and defamatory then the privilege will

---

[1] See also Hohmann v. GTECH Corp., 910 F.Supp.2d 400, 405 (D.Conn. 2012).

5

not extend to that type of statement.  Sloane v. Bhatia, UWYCV146023186S (Conn. Super. Ct. April 28, 2016); See also Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 545, 733 A.2d 197 (1999); Bleich v. Ortiz, 196 Conn. 498, 504, 493 A.2d 236 (1985).  In Hopkins v. O'Connor, 282 Conn. 821, 846, 925 A.2d (2007), the Connecticut Supreme Court stated that "[a] negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth." See also Abdelsayed v. Narumanchi, 39 Conn.App. 778, 781, 668 A.2d 378 (1995), cert. denied, 237 Conn. 915, 676 A.2d 397, cert. denied, 519 U.S. 868, 117 S.Ct. 180, 136 L.Ed.2d 120 (1996).

In the case at bar, Defendant Aziz Abdullatf initiated a 911 call in order to report a robbery with a deadly weapon, an event that never occurred. (See Am. Compl., First Count, ¶38 and ¶42, Tenth Count, ¶82) When Defendant Aziz Abdullatf stated that Paul Witherspoon "pulled a gun at the guy who delivered the paper here in Hamden its clear he was asking for money outside, outside a gas station" he made that statement with actual knowledge that it was false or with reckless disregard that it was false. (See Am. Compl., First Count, ¶39, Tenth Count ¶82) Given that this statement was either purposefully false or recklessly false, pursuant to Hopkins v. O'Connor, 282 Conn. 821 at 846, this statement was made as a purposeful avoidance of the truth. This false and/or reckless nature of the statement is corroborated by the video surveillance camera obtained from Defendant T&S United, LLC as well as a statement against Defendant Aziz

Abdullatf's own interest when he indicated to law enforcement officials that he, in fact, never saw a gun. (See Am. Compl., First Count, ¶¶42-43)

In <u>Sloane v. Bhatia</u>,[2] UWYCV146023186S, that action stemmed from a police report that the Defendant made to a municipal police department that alleged the Plaintiff mistreated the Defendant's children. There, the Superior Court in the Judicial District of Waterbury evaluated the merits of a summary judgment motion that the defendant filed pursuant to the Plaintiff's amended complaint. <u>Id.</u> In that case, the municipal police department investigated the Plaintiff based on that report. <u>Id.</u> There, the Defendant had indicated that she saw bruising on her child's arm when she filed the police report. <u>Id.</u> Thereafter, in the Defendant's deposition testimony, the Defendant stated that she had never seen any bruising on the child. <u>Id.</u> The court in <u>Sloane</u> indicated that the veracity of the police report is an issue for the trier of fact. <u>Id.</u> The Court in <u>Sloane</u> further indicated that you may not claim privilege if you make a reckless report to the police. <u>Id.</u>

In the case at bar, as in <u>Sloane</u>, this action essentially stems from a false report made to the Hamden Police Department. The Hamden Police Department acted upon the information provided in the false report which resulted in serious injuries to Stephanie Washington. Again, the issue for this motion to dismiss is not whether the Plaintiff will prevail but rather whether Ms. Washington is entitled to offer evidence to support her claims. Based on <u>Sloane</u> and the aforementioned

---

[2] Attached hereto as Exhibit 1.

cases Ms. Washington is entitled to offer evidence to support her claims especially given that her claims are corroborated by different pieces of evidence. Even so, the veracity of Defendant Aziz Abdullatf's report is an issue for the jury to decide. Defendant Aziz Abdullatf and Defendant T&S United, LLC indicated that despite extensive research, they have not found any evidence of actions based on false reporting and thus it is not recognized in Connecticut. The above referenced cases run contrary to that argument. Thus, the motion to dismiss should be denied.

### b. Privilege

Defendant Aziz Abdullatf and Defendant T&S United, LLC analyze antitrust laws and federal antitrust cases pursuant to the Noerr-Pennington Doctrine. "The Noerr and Pennington cases decided by the United States Supreme Court invoked the First Amendment to protect from antitrust liability the act of collectively petitioning legislatures and agencies for favorable regulations." Steven Bieszczat, FIRST AMENDEMENT PROTECTION FOR UNFAIR LABOR PRACTICES?: REEXAMINING THE NOERR-PENNINGTON DOCTRINE, 2017 U. Ill. L. Rev. 1579 (2017).

Furthermore, the Noerr-Pennington Doctrine has been extended to summoning the police.[3] Defendant Aziz Abdullatf and Defendant T&S United, LLC

---

[3] A successful Noerr-Pennington defense will allow employers to summon the police to arrest lawfully present demonstrators even though doing so would otherwise be an unfair labor practice under the NLRA. Bieszczat, *supra* note 18, at

cite Graff v. O'Connell, 2003 Conn. Super. LEXIS 2686 (Aruigemma, J.)(2003), in

arguing that the Noerr-Pennington doctrine covers phone calls to police. That

case involved a neighbor making numerous reports to municipal officials and one

report to the State Police regarding incidents of another neighbor's barking dogs.

Id. The neighbor who owned the dogs admits that the dogs do bark as the

complaints suggest. Id. There the court indicated that the "Noerr-Pennington

immunity has been extended to complaints made to agencies with regulatory

authority for the activity in question." Id. However, the vast majority of agencies

cited in Graff v. O'Connell are not police agencies.[4] 2003 Conn. Super. LEXIS 2686

(Aruigemma, J.)(2003). The court in Graff held that the Defendant was entitled to

immunity based on their reports to public officials (i.e., the  building inspector,

---

1582-1583; see also 29 U.S.C. §§157-58 (2012); Venetian Casino Resort, L.L.C. v.
NLRB, 793 F.3d 85, 87 (D.C. Cir. 2015).

[4] Havoco of America, Ltd. v. Hollobow, 702 F.2d 643 (7th Cir. 1983) (complaints
and accusations reported to the Securities and Exchange Commission were
privileged); Eaton v. Newport Bd. of Educ., 975 F.2d 292, 77 Ed.Law Rep. 681 (6th
Cir. 1992) (lobbying for discharge of school principal was protected by the First
Amendment); Westfield Partners, Ltd. v. Hogan, 740 F.Supp. 523, 525-26 (N.D.Ill.
Jun 19, 1990) (petitioning local zoning board to have thoroughfare vacated as a
road is protected by the First amendment); Zavaletta v. American Bar
Association, 721 F.Supp. 96, 98 (E.D.Va. 1989) (communications to other
governmental bodies about views on the accreditation of law schools was
protected by the First Amendment right to petition); Forro Precision, Inc. v.
International Business Machines Corp., 673 F.2d 1045, 1059 (9th Cir. 1982) (the
Noerr-Pennington doctrine applied to citizen communications with police);
Ottensmeyer v. Chesapeake & Potomac Telephone Company, 756 F.2d 986 (4th
Cir. 1985) (the Noerr-Pennington doctrine applied to shield telephone company
from liability for its complaints to police).

zoning enforcement officer, animal control officer, and the like). Id. The court in Graff further held that the defendants conduct in filing a complaint to the police about barking dogs on the property was not even mildly extreme or outrageous and therefore the claim failed pursuant to the doctrine of intentional infliction of emotional distress rather than failing pursuant to the Noerr-Pennington Doctrine. Id.

Moreover, the Graff court cites a "sham exception" to the Noerr Pennington Doctrine pursuant to Zeller v. Consolini, 59 Conn.App. 545, 758 A.2d 376 (2000) that Defendant Aziz Abdullatf and Defendant T&S United, LLC also recognize in their Motion to Dismiss.[5] Id. In Forro Precision, Inc. v. International Business Machines Corp., 673 F.2d 1045, 1049 (9th Cir. 1982), a dispute arose between Plaintiff and Defendant where Plaintiff alleged that Defendant had interfered with its business and monopolized in violation of the

---

[5] "In Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-62, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), the court outlined a two part test to define sham litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Id., 60. Second, "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use [of] the governmental process as opposed to the outcome of that process as an anticompetitive weapon . . ." (Citations omitted; internal quotation marks omitted.) Id., 60-61. Essentially, then, a sham involves a defendant whose activities are not genuinely aimed at procuring favorable governmental action in any form. Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1082 (5th Cir. 1988), cert denied, 490 U.S. 1047, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989)."

Sherman Act, the Defendant counterclaimed that Plaintiff misappropriated the Defendant's trade secrets. Defendant contended that "its solicitation of police aid and its assistance in the search of Forro's premises are privileged under California law." Id. at 1053. Plaintiff argued that even if police communications are generally immunized, the Defendant's conduct falls within the sham exception of the Noerr-Pennington Doctrine. Id. at 1060. There the court opined that "if . . . IBM had provided the police with deliberately false information, solely for the purpose of harassing Forro or of achieving other ends unrelated to law enforcement, its conduct would unquestionably fall within the sham exception." Id. This principle falls squarely within the facts of the case at bar. Defendant Aziz Abdullatf, as previously discussed, deliberately or recklessly provided false information for achieving an end unrelated to law enforcement when he reported an armed robbery. (See Am. Compl., Third Count, ¶82) Therefore, the report made by Defendant Aziz Abdullatf to law enforcement falls within the sham exception and is not privileged. Thus, the motion to dismiss should be denied.

c.  Superseding Intervening Cause and Foreseeability

In Snell v. Norwalk Yellow Cab, Inc., 332 Conn. 720, 212 A.3d 646, (Conn. 2019), the Connecticut Supreme court has determined that the courts have no longer recognized superseding cause in tort jurisprudence except in cases that involve an intervening intentional tort, act of nature, or criminal event that was unforeseeable to the Defendant. Citing Barry v. Quality Steel Products, Inc., 263

Conn. 424, 820 A.2d 258 (2003). The court in <u>Snell</u> also provides the test for proximate cause which is "whether the defendant's conduct was a substantial factor in producing the plaintiff's injury . . . . This substantial factor test reflects the inquiry fundamental to all proximate cause questions, namely, whether the harm [that] occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." <u>Id.</u> at 660; quoting <u>Ruiz v. Victory Properties, LLC</u>, 315 Conn. 320, 329, 107 A.3d 381 (2015). The court in <u>Snell</u> at 660 further provides that "[p]roximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force." "Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff." <u>Id.</u> at 661.

The Connecticut Supreme Court also provides that because Connecticut statutes allow for apportionment among negligent defendants "the simpler and less confusing approach to cases . . . [in which] the jury must determine which . . . causes contributed to the [plaintiff's] injury, is to couch the analysis in proximate cause rather than allowing defendants to raise a defense of superseding cause" given that the doctrine of superseding cause is incorporated into the test of proximate cause." <u>Id.</u> at 662; citing <u>Barry</u> at 436-39. Further, the Connecticut Supreme Court has applied §442 B of the Restatement (Second) of Torts where a defendant has claimed that their negligence was superseded by

12

intentionally harmful acts of a third party. <u>Snell</u> at 666. A plaintiff in limited cases would be able to prevail in her case if "she were able to establish that the intentionally harmful act was within the scope of the risk created by the defendant's negligence. <u>Id</u>.[6]

In the case at bar, if not for the false report of a robbery by Defendant Aziz Abdullatf, the police would not have been called to the scene. If not for the false report of a gun by Defendant Aziz Abdullatf, the police would not have had the predilection to respond to the call with excessive force. It is certainly foreseeable that when Defendant Aziz Abdullatf falsely reported an armed robbery that police officers would use their service weapons to stop the alleged perpetrator. It is also foreseeable that if police officers may use their service weapons that someone would be shot and possibly injured. It is logically apparent to any reasonable person that police are more likely to employ deadly force in situations where suspects are reportedly armed with guns. Furthermore, there is also academic research that supports this logic, particularly in situations, such as we have in this case, where the suspect (i.e., Paul Witherspoon) is falsely reported by dispatch as being armed. Taylor, Paul L., "Dispatch Priming and the Police Decision to Use Deadly Force," 23 <u>Police Quarterly</u> 311-332 (Dec. 30, 2019)

---

[6] See also <u>Stewart v. Federated Dept. Stores, Inc.</u>, 234 Conn. at 608, 662 A.2d 753 ("the plaintiff must show, by a fair preponderance of the evidence, that harm intentionally caused by a third person is within the scope of the risk created by the defendant's negligent conduct").

("[T]his study examined the effects of dispatch priming on an officer's decision to use deadly force. The findings suggest that officers rely heavily on dispatched information in making the decision to pull the trigger when confronted with an ambiguously armed subject in a simulated environment. When the dispatched information was erroneous, it contributed to a significant increase in shooting errors.")[7]

This reasonable connection between a Defendant's act and a Plaintiff's harm is certainly established here as required in Connecticut. Snell at 661. In Snell, Defendant left his taxicab, with keys in the ignition, in a high crime neighborhood which was eventually stolen by two individuals. Id. at 648. The driver of the stolen cab eventually falls asleep at the wheel, crashes into multiple objects, and then eventually hits the Plaintiff with the vehicle. Id. at 649. Though the case was remanded for a new trial for issues with the application of the jury instructions, the jury in the lower court found that Defendant's actions were the proximate cause of the injuries. Id. at 673. Nevertheless, here, as in Snell, there is a reasonable connection between the harm sustained and the actions of the defendant.

Moreover, Defendant Aziz Abdullatf and Defendant T&S United, LLC argue that this situation is so unforeseeable especially because it as an unusual and

---

[7] The article may be found by copying and pasting the following link into a web browser: https://journals.sagepub.com/doi/10.1177/1098611119896653.

unique set of facts. The Defendants in the case at bar proceed to count the number of shots fired, the location of the officer, the fact that an officer shot another officer among other items in order to try and point out how unusual and unforeseeable this scenario is. Sufficient for foreseeability is whether Defendant Aziz Abdullatf could have foreseen officers firing upon the vehicle, a vehicle where the Defendant Aziz Abdullatf knew Plaintiff was located,  that was reported to the police that it was just involved in an armed robbery. The answer to that is most certainly yes, it is foreseeable. Even further, "[a]s long as the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizzare or unforeseeable." Pisel v. Stamford Hospital, 180 Conn. 314, 333, 430 A.2d 1 (1980). The general nature as that which occurred to Stephanie Washington especially given the false report provided to the police from Defendant Aziz Abdullatf is foreseeable. Even further, "as long as the defendant's conduct was a substantial factor in producing the harm, the fact that the defendant neither foresaw nor could have foreseen the extent of the harm, or the manner in which it occurred, does not prevent him from being liable." § 435 (1) of the Restatement (Second) of Torts. This is particularly compelling in the case at bar. Plaintiff has clearly shown that the Defendant's conduct was a substantial factor in producing the Plaintiff's harm as discussed above so even if the court agreed with the Defendant that the Defendant may have not foreseen the extent of Ms. Washington's injuries or the manner in which

the injuries occurred, as the Defendant particularly describes in their motion, the Defendant here will not escape liability. Thus, the motion to dismiss should be denied.

B. Plaintiff sets forth sufficient facts and law to establish a cause of action for damages against Defendant T&S United, LLC.

a. Respondeat Superior

Here, the Defendants, in the their Motion to Dismiss Counts Ten and Eleven of the amended Complaint, conclude that the Plaintiff has failed to set forth a claim upon which relief can be granted with respect to Defendant Aziz Abdullatf and therefore no claim upon which relief can be granted against Defendant T&S United, LLC for respondeat superior.

The Plaintiff has certainly provided a claim upon which relief can be granted against Defendant Aziz Abdullatf based on the aforementioned facts and legal principles. Therefore, given that the Defendants have not objected to and do not argue that the Plaintiff has failed to provide enough facts to state a claim to relief that is plausible on its face with respect to the doctrine of respondeat superior, Defendants will be deemed to have admitted that the Plaintiff has stated enough plausible facts on the face of the complaint in order to overcome the Defendant's motion to dismiss.

IV.    Conclusion

For the forgoing reasons, the undersigned respectfully submits that the

Defendant Aziz Abdullatf and Defendant T&S United, LLC's Motion to Dismiss

Counts Ten and Eleven of the Amended Complaint should be denied.


THE PLAINTIFF,
STEPHANIE WASHINGTON

By:    /s/ Winthrop S. Smith, III, Esq. (ct 30063)
Dey Smith Steele, LLC
9 Depot Street, 2nd Floor
Milford, CT 06460
Tel.: (203) 882-3351
Fax: (203) 882-3359
Email: winlll@deysmith.com


## CERTIFICATION

I hereby certify that on Monday, October 26, 2020, a copy of the foregoing
was filed electronically and served by U.S. Mail, postage prepaid, on anyone
unable to access, use or accept electronic filing. Notice of this filing will be sent
by email to all parties by operation of the Court's electronic filing system or by
mail to anyone unable to accept electronic filing as indicated on the Notice of
Electronic Filing. Parties may access this filing through the Court's CM/ECF
System.


/s/ Winthrop S. Smith, III, Esq. (ct 30063)


17

**EXHIBIT**

Jill Sloane

v.

Darcy Bhatia

No. UWYCV146023186S

Superior Court of Connecticut, Judicial District of Waterbury, Waterbury

April 28, 2016

UNPUBLISHED OPINION

**MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (#161)**

Andrew W. Roraback, J.

The issue presented is whether the court should grant the defendant's motion for summary judgment as to the plaintiff's amended complaint. The plaintiff's two-count amended complaint alleges intentional infliction of emotional distress and negligent infliction of emotional distress. The defendant moves for summary judgment as to count one on the ground that the defendant's conduct was not sufficiently extreme and outrageous to sustain a cause of action for intentional infliction of emotional distress. As to count two, the defendant moves for summary judgment on the ground that the defendant's conduct did not create an unreasonable risk of causing the plaintiff emotional distress. In addition, the defendant moves for summary judgment as to both counts on the ground that she is protected by a qualified immunity in reporting criminal conduct to the police. For the reasons that follow, the court hereby grants the motion for summary judgment as to count one and denies the motion as to count two.

**FACTS**

This action stems from a police report that the defendant made to the Southbury police department on March 1, 2013 in which the defendant recounted information allegedly provided to her by her children one of them had been mistreated by the plaintiff. On March 25, 2014, the plaintiff, Jill Sloane, filed a seven-count complaint against the defendant, Darcy Bhatia. The plaintiff later withdrew counts six and seven, which both alleged libel. On October 10, 2014, the court granted the defendant's motion to dismiss count one, which alleged intentional interference with a business relationship, for lack of personal jurisdiction over the defendant [59 Conn. L. Rptr. 133]. On December 17, 2014, the defendant moved to strike counts two (malicious prosecution), three (abuse of process) and

four (intentional infliction of emotional distress) of the original complaint. The plaintiff agreed that counts two and three should be stricken. On April 23, 2015, the court granted the defendant's motion to strike counts two, three and four of the original complaint.

On May 11, 2015, the plaintiff filed an amended complaint consisting of two counts: (1) intentional infliction of emotional distress[1] and (2) negligent infliction of emotional distress.[2] According to the plaintiff's amended complaint the plaintiff was, at all relevant times, the girlfriend of the defendant's ex-husband, Raj Bhatia. Raj Bhatia and the defendant are the parents of two minor children, Jesse and Remy Bhatia, who share their time between both parents.

With respect to count one, intentional infliction of emotional distress, the plaintiff alleges the following facts. The defendant falsely and maliciously stated to police officers Kyle Baudoin and George Slaiby that the plaintiff grabbed one of her sons and bruised him. Additionally, the defendant falsely and maliciously accused the plaintiff of having a pattern of yelling at and hitting the children. Moreover, the defendant coached her children to falsely accuse the plaintiff. When she filed her complaint, the defendant knew that the plaintiff had not done anything that warranted filing a report with the police. The defendant instituted the report against the plaintiff in order to gain favor in family court at the expense of her ex-husband and in contravention of the advice of her therapist, Patricia German. The defendant used her false complaint to try to secure a court order prohibiting the plaintiff from seeing the children and limiting Raj Bhatia from having contact with the children except under court supervision. In doing so, the defendant falsely represented to the court that her actions were endorsed by German. The defendant's wrongful and malicious actions caused the police to question the plaintiff and to fill out a warrant for her arrest, which was rejected by the state's attorney for lack of probable cause. As a further result of the defendant's actions, the police were mandated to report the false complaint to the Connecticut department of children and families (DCF). Thereafter, DCF interrogated the plaintiff, but later closed its investigation, finding the accusations to be unsubstantiated. As a result of the defendant's malicious and wrongful conduct, the plaintiff suffered emotional distress.[3]

With respect to count two, negligent infliction of emotional distress, the plaintiff alleges the following additional facts. The defendant initiated a formal criminal complaint, accusing the plaintiff of abusing one of her children. The defendant based her complaint on what her son allegedly told her, that the plaintiff physically hurt him and scared

him. Consequently, the police investigated the plaintiff for violating General Statutes § 53a-61, assault in the third degree, and General Statutes § 53-21, risk of injury to a child. The police completed an arrest warrant application, which was later rejected by the state's attorney for lack of probable cause.

On May 18, 2015, the defendant filed a motion to strike both counts of the amended complaint on the ground that the plaintiff failed to allege sufficient facts to state a claim. On October 27, 2015, the court denied the defendant's motion to strike both counts of the plaintiff's amended complaint. With regard to count one, the court found the allegations to be sufficiently egregious to set forth a claim for intentional infliction of emotional distress. With regard to count two, the court denied the defendant's motion to strike because she had failed to challenge the allegations for negligent infliction of emotional distress in her previous motion to strike several other counts of the original complaint. The original complaint had contained a negligent infliction of emotional distress count which was repeated verbatim in the amended complaint.

On November 19, 2015, the defendant filed an answer and special defenses. The defendant left the plaintiff to her proof regarding the allegations and asserted two special defenses. The first special defense is that all of the defendant's statements about the plaintiff were substantially true. The second special defense is that the defendant had a qualified privilege in making the alleged statements, she acted in good faith, and she did not abuse this privilege. The plaintiff denied the allegations of the special defenses in her reply filed on November 23, 2015.

On December 7, 2015, the defendant filed a motion for permission to move for summary judgment. On December 9, 2015, the plaintiff filed a brief in opposition to the motion. On February 3, 2016, the court granted the defendant's motion.

Presently before the court is the defendant's motion for summary judgment, filed on February 3, 2016, which is directed at both counts of the plaintiff's amended complaint. The defendant moves for summary judgment as to count one on the ground that the defendant's conduct was not so extreme and outrageous as to justify a cause of action for intentional infliction of emotional distress. As to count two, the defendant moves for summary judgment on the ground that the defendant's conduct did not create an unreasonable risk of causing the plaintiff emotional distress. Moreover, the defendant moves for summary judgment as to both counts on the ground that she is protected by a qualified privilege.[4] The motion is accompanied by a memorandum of law. On February 29, 2016, the plaintiff filed a memorandum of law in opposition to the defendant's motion for summary judgment. On the same day, the plaintiff filed

a corrected memorandum in opposition to the defendant's motion for summary judgment, removing duplicate documents that appeared on the record.[5]

**DISCUSSION**

**I**

As a threshold matter, the court will address two procedural issues raised by the parties. The first issue the court will address is the plaintiff's argument in her corrected brief in opposition to the defendant's motion for summary judgment that a motion for summary judgment is not the proper vehicle to contest the legal sufficiency of her claims. The second issue the court will address is the defendant's argument in her reply to the plaintiff's corrected brief in opposition to the motion for summary judgment that certain of the plaintiff's evidence submitted in support of her opposition to the defendant's motion for summary judgment is inadmissible at trial, and therefore, should not be considered by the court in ruling on the present motion for summary judgment. The court will address these issues in turn.

**A**

Preliminarily, the court will address the plaintiff's argument in her corrected brief in opposition to the defendant's motion for summary judgment that it is not proper to move for summary judgment to test the legal sufficiency of her amended complaint. At the outset, the plaintiff concedes that, with respect to count one, the defendant's use of a motion for summary judgment is proper to challenge whether the plaintiff has produced sufficient evidence to support a claim for intentional infliction of emotional distress. To the extent that the defendant attempts to use a motion for summary judgment to challenge the legal sufficiency of the amended complaint, however, the plaintiff argues that this is procedurally improper. Specifically, the plaintiff argues that the defendant waived her right to challenge the legal sufficiency of the negligent infliction of emotional distress claim because she failed to move to strike that count earlier.

In her reply brief, filed on February 29, 2016, the defendant argues that her motion for summary judgment is procedurally proper. The defendant avers that the court only determined that the plaintiff's allegations were of extreme and outrageous conduct of a nature sufficient to survive a motion to strike an intentional infliction of emotional distress count.[6] In the context of this motion for summary judgment, the court will determine whether a genuine issue of material fact exists with respect to whether a claim for intentional infliction of emotional distress might lawfully be maintained. Furthermore, the defendant argues that her motion for summary judgment regarding the negligent

infliction of emotional distress claim does not seek to challenge the legal sufficiency of the allegations, but rather, moves to show that the plaintiff cannot establish the elements of her claim.

Practice Book § 17-49 provides in relevant part that: " judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " A material fact . . . [is] a fact which will make a difference in the result of the case." *Escourse v. 100 Taylor Ave., LLC*, 150 Conn.App. 819, 823, 92 A.3d 1025 (2014). " [T]he moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Internal quotation marks omitted.) *Ramirez v. Health Net of the Northeast, Inc.*, 285 Conn. 1, 11, 938 A.2d 576 (2008). Regarding the appropriate time to file, " any party may move for a summary judgment as to any claim or defense as a matter of right at any time if no scheduling order exists and the case has not been assigned for trial." Practice Book § 17-44.[7]

" In contrast, [a] motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly, rather than narrowly." (Internal quotation marks omitted.) *Larobina v. McDonald*, 274 Conn. 394, 400, 876 A.2d 522 (2005).

In the present case, the defendant moves for summary judgment. Therefore, the court will use the standard of review applicable to motions for summary judgment. The issue before the court is not whether the counts are legally sufficient, but whether there exists any genuine issues of material fact.

**B**

The second preliminary issue the court will address is an evidentiary one raised by the defendant in her reply to the plaintiff's corrected brief in opposition to the motion for summary judgment. The defendant argues that certain evidence offered by the plaintiff is inadmissible at trial, and thus, should not be considered by the court in ruling on the present motion. The plaintiff does not counter this assertion in her subsequent brief.

" A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book § 17-45. " Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto." Practice Book § 17-46.

In the present case, the plaintiff's corrected brief in opposition to the defendant's motion for summary judgment relies, in part, on the testimony of Patricia German, a licensed marriage and family therapist, and George Slaiby, a Southbury police officer.

The plaintiff's exhibit seven includes testimony from Slaiby that he interviewed the Bhatia children, with their mother present at the beginning of the interview, at the Southbury police department. Slaiby testified, in part, to his observations of the alleged victim. Slaiby attested that: " Every time the child would answer, he would turn and look at [the defendant] . . . It looked like he was looking for approval." When asked whether that " raised[ed] any suspicions in his mind, " Slaiby answered, " A little bit."

Section 7-3 of the Connecticut Code of Evidence provides: " Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that . . . an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue." " Expert witnesses cannot be permitted to invade the province of the [trier of fact] by testifying as to the credibility of a particular witness or the truthfulness of a particular witness' claims . . . . [E]ven indirect assertions by an expert witness regarding the ultimate issue in a case can serve inappropriately to validate the truthfulness of a victim's testimony." (Citation omitted; internal quotation marks omitted.) *Doe v. Carreiro*, 94 Conn.App. 626, 630, 894 A.2d 993, cert. denied, 278 Conn. 914, 899 A.2d 620 (2006). Our Supreme Court stated " that the phrase 'ultimate issue' is not amenable to easy definition . . . As a rule, however, [t]estimony is objectionable if it embraces an opinion on the ultimate issue to be decided by the trier of fact . . . It is improper for a witness to offer testimony that essentially constitutes a legal opinion about the guilt of the defendant . . . The Appellate

Court characterized an ultimate issue as one that cannot reasonably be separated from the essence of the matter to be decided [by the trier of fact]." (Citations omitted; internal quotation marks omitted.) *State v. Finan*, 275 Conn. 60, 66, 881 A.2d 187 (2005).

In the present case, the veracity of the defendant's report to the police is an ultimate issue to be decided by the trier of fact. At the heart of both counts of the plaintiff's complaint is the issue of whether the defendant filed a false report. Slaiby's testimony as to whether his suspicions were raised is perilously close and inexorably linked to an ultimate issue that must be decided by a jury. Therefore, Slaiby's statement as to whether his suspicions were raised is at this juncture inadmissible pursuant to the Connecticut Code of Evidence § 7-3, and thus, will not be considered by the court in ruling on the present motion for summary judgment. The remainder of Slaiby's sworn testimony, however, includes other admissible statements, or statements not otherwise objected to, that the court will consider.

The plaintiff's exhibit three includes excerpts of deposition testimony from German. German testified that she was surprised to hear that the defendant filed a criminal complaint against the plaintiff because " [t]his was not a criminal anything. This was just some maltreatment of two little boys who were filled with pain and hurt. This wasn't criminal."

Section 7-1 of the Connecticut Code of Evidence provides: " If a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." " The general rule is that [nonexpert] witnesses must state facts and not their individual opinions, but there are exceptions to this rule as well established as the rule itself . . . [T]he opinions of common observers in regard to common appearances, facts and conditions have been received as evidence in a great variety of cases . . . Our Supreme Court has recognized that [e]very trial, as a rule, is filled with so-called opinion evidence from the nonexpert witness . . . When such nonexpert opinion evidence will probably aid the triers in their search for the truth, it meets the ultimate test of admissibility, and is not to be excluded because it states the conclusion of the witness based upon his observation and knowledge." (Citations omitted; internal quotation marks omitted.) *Czajkowski v. YMCA of Metro. Hartford, Inc.*, 149 Conn.App. 436, 445, 89 A.3d 904, 910 (2014). " Preliminary questions concerning the qualification and competence of a person to be a witness . . . or the admissibility of evidence shall be determined by the court." Conn. Code Evid. § 1-3.

In the present case, German has not been disclosed as an expert on criminal law. Therefore, she may not testify in the form of an opinion on matters of criminal law. Her statement that the plaintiff's conduct was not criminal is not rationally based on her perceptions and it is not helpful to a clear understanding of her testimony. It will not aid the trier of fact in determining the truth. Therefore, German's testimony that the plaintiff's conduct was not criminal will not be considered by the court in ruling on the present motion for summary judgment. The remainder of German's testimony, however, will be considered by the court. Accordingly, the court will only consider the admissible evidence submitted by the parties in deciding the present motion for summary judgment.

II

The court will now address the substance of the defendant's motion for summary judgment.

A

The first substantive argument the court will address is the defendant's claim that her report to the police is protected by a qualified privilege, and thus, the plaintiff cannot prevail on either of her claims.[8] The plaintiff counters by arguing that (1) the defendant's statements were false, (2) the defendant knew the statements were false or made them in conscious and reckless disregard to their truth, and (3) the defendant's statements were made from improper and unjustifiable motives.

" Our Supreme Court has held that statements made to the police in connection with a criminal investigation . . . are entitled to protection by a qualified privilege." *Mara v. Otto*, 127 Conn.App. 404, 409, 13 A.3d 1134 (2011). In *Gallo v. Barile*, 284 Conn. 459, 935 A.2d 103 (2007), our Supreme Court applied qualified privilege in a case involving allegations of intentional infliction of emotional distress. In *Gallo*, " the plaintiff alleged that the defendants had defamed him in statements made to a state trooper investigating the plaintiff's allegedly threatening behavior towards his supervisor . . . The Court concluded that such statements are entitled to qualified privilege." (Citation omitted.) *Hohmann v. GTECH Corp.*, 910 F.Supp.2d 400, 405 (D.Conn. 2012).

" A qualified privilege protects false statements that are not made maliciously. In other words, [a]lthough a qualified privilege insulates many defamatory statements and shields many defendants from liability, the privilege does not protect a defendant who makes statements that are both defamatory and malicious. *Gaudio v. Griffin Health Services Corp.*, 249 Conn. 523, 545, 733 A.2d 197 (1999); see also *Bleich v. Ortiz*, 196 Conn. 498, 504, 493 A.2d 236 (1985) ([e]ven when a legitimate interest is at stake, a claim

of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue). Furthermore, as this court recently has explained, the malice required to overcome a qualified privilege in defamation cases is malice in fact or actual malice. *Hopkins v. O'Connor*, 282 Conn. 821, 845, 925 A.2d 1030 (2007). Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth . . . Malice in fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives . . . *Id.*, at 846, 925 A.2d 1030; see also *Bleich v. Ortiz, supra*, at 504, 493 A.2d 236 ([f]or purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive)." (Internal quotation marks omitted.) *Gallo v. Barile, supra*, 284 Conn. 463-64 n.6. " [R]eckless disregard may be found where an individual publishes defamatory statements with a high degree of awareness of . . . probable falsity . . . or . . . entertained serious doubts as to the truth of [the] publication . . ." *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 639, 969 A.2d 736 (2009).

In the present case, the defendant's statements to the police initiated a criminal investigation of the plaintiff. The plaintiff has corroborated rather than disputed the vast majority of the material points contained in the report which the defendant submitted to the police. This is surely the case with respect to the fact that the plaintiff forcibly moved Jesse from the table to a couch after Jesse had spit up some stew that the plaintiff had made. The one subject matter as to which the plaintiff has provided evidence to create a genuine issue of material fact with respect to the veracity of the defendant's report to the police goes to the question of what Patti German observed on Jesse's arms on February 27, 2013. In the police report the defendant states " German wanted to see if there was any bruising. There I saw Jesse's arm and the bruises. Jesse showed us the arm and I could see the circular bruises on Jesse's right forearm this being four to five days after the incident. German took photographs of Jesse's arm with her iphone." In German's deposition testimony, she stated that she had never seen on the children any bruising which was attributable to the plaintiff.

As a matter of law statements made to police which are substantially true cannot form the basis for a claim of either intentional or negligent infliction of emotional distress. See *Curry v. Daly*, Superior Court, judicial district of New Britain, Docket No. CV-02-0516554-S, (December 2, 2003, Robinson, J.). With respect to making a determination as to whether a statement is substantially true, " [i]t is only when the court can say that the publication is not reasonably capable of any defamatory sense, that the court can rule, as

a matter of law, that the publication is not libelous or withdraw the case from the jury, or order a verdict for the defendant." (Internal quotation marks omitted.) *Burns v. Telegram Publishing Co.*, 89 Conn. 549, 552, 94 A. 917 (1915). " Although the determination of whether an allegedly libelous statement is substantially true [can be] one for the jury . . . both the common law and the First Amendment [to the United States constitution] submit the issue to 'close scrutiny' when appropriate. Summary judgment, therefore is often granted to defendants on the issue of substantial truth . . . [W]here minor inaccuracies [are] immaterial to the 'sting' or harm suffered by the plaintiff . . . [or] where the inaccuracies [are] of a technical nature that conveyed the same meaning as the true facts would have in the eyes of the average reader, summary judgment may be appropriate." (Citation omitted; internal quotation marks omitted.) *Mercer v. Cosley*, 110 Conn.App. 283, 303-04, 955 A.2d 550 (2008).

In this case, the issue of whether the statements made by the defendant regarding German's photographs of bruises on Jesse's arms render what the defendant reported less than substantially true is an issue for the jury because the court cannot conclude as a matter of law that they were minor or immaterial to the sting allegedly suffered by the plaintiff.

Individuals who make false statements to the police are ordinarily protected by a qualified privilege unless the statement was made with malice. See *Gallo v. Barile, supra*, 284 Conn. 463 n.6. According to the plaintiff, these statements were not only false, but motivated by malice. The conduct, as alleged and potentially supported by the plaintiff's evidence, was motivated by a desire to gain an advantage in family court at the expense of the plaintiff and Raj Bhatia and also to cause harm to the plaintiff. This is evidence of an improper or unjustifiable motive, which if proven, could support a finding of malice. On the other hand, a jury could find bruising did in fact occur and that it was not unreasonable for the defendant mother to make a statement to the police based what her child told her about being hurt by the plaintiff. In that case, the defendant's statements would be protected by a qualified immunity. Nevertheless, qualified immunity does not apply in the present motion for summary judgment because there is a genuine issue of material fact as to both malice and the truthfulness of the report of bruising. Therefore, the defendant's motion for summary judgment based on a qualified privilege defense is denied.

**B**

The next argument the defendant makes in her memorandum of law in support of her motion for summary judgment is that the plaintiff's claim for intentional infliction of emotional distress must fail because she has not adduced a factual predicate sufficient to support a finding of

extreme and outrageous conduct of a nature which would support this cause of action.

The plaintiff contends that the defendant's present motion for summary judgment seeks to reargue claims previously made in her motion to strike, and should be denied. The plaintiff argues that the court has already decided, in denying the defendant's previous motion to strike, that the allegations of the amended complaint are sufficiently extreme and outrageous. Besides, the plaintiff argues, the evidence in this case is adequate to permit a jury to determine that (1) the plaintiff's statements were false, (2) the plaintiff made the statements knowing they were false or made them with reckless disregard to their truth or falsity, and (3) the plaintiff made her statements with improper and unjustifiable motives.

" In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Carrol v. Allstate Ins Co.*, 262 Conn. 433, 442-43, 815 A.2d 119 (2003). " Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. *Bell v. Board of Education*, 55 Conn.App. 400, 410, 739 A.2d 321 (1999). Only where reasonable minds disagree does it become an issue for the jury. *Id.* " *Appleton v. Board of Education of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). " Therefore, in assessing a claim for intentional infliction of emotional distress, the court performs a gate-keeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not

fact finding, but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 88 Conn.App. 290, 295, 869 A.2d 275 (2005). In the context of a motion to strike, " the Superior Court cases that have found the allegation of filing a false complaint with the police sufficiently extreme and outrageous . . . the plaintiffs have alleged that they were arrested and/or required to appear in court based on the false claim." *Bremmer-McLain v. New London*, Superior Court, judicial district of New London, Docket No. CV-11-5014142-S, (June 1, 2012, Devine, J.), aff'd, 143 Conn.App. 904, 69 A.3d 351 (2013). A court may also perform its gate-keeping function in ruling on a motion for summary judgment. *Hartmann v. Gulf View Estates Homeowners Ass'n, Inc.*, 88 Conn.App. 290, 295, 869 A.2d 275 (2005).

In the present case, even in a light most favorable to the plaintiff, the facts that are not disputed demonstrate that the conduct complained of cannot be considered extreme and outrageous. What remains undisputed is the central fact surrounding the underlying incident that the plaintiff grabbed one of the defendant's children by the arm, pulled him out of his chair at the dinner table, and either put him on the couch or told him to sit there. The underlying incident is central to the report, and the fact that it took place is not in dispute. The undisputed evidence demonstrates that the child told the defendant that the plaintiff harmed him. Reporting that incident to the police is not conduct that can be considered to exceed all bounds tolerated by society. The plaintiff has not presented evidence to support the claim suggested in the allegations in her complaint that before going to the police the defendant had been advised by her therapist not to do so. What the parties disagree about is certain details of the event and the motivation behind filing the report. Moreover, while not dispositive of the issue, the plaintiff was not arrested nor was she required to appear in court. The defendant had no role in deciding what charges would be filed. Even if the defendant filed the report with ill will toward the plaintiff, extreme and outrageous conduct is not provable under the facts as presented in connection with this motion. As such, the defendant's motion for summary judgment is granted with respect to count one of the plaintiff's amended complaint.

C

The defendant's final argument is that the plaintiff cannot prevail on a claim for negligent infliction of emotional distress because the plaintiff cannot establish that the defendant's conduct created an unreasonable risk of causing her emotional distress. In response, the plaintiff argues that negligence cases are not ordinarily susceptible to resolution

by way of summary judgment. Moreover, the plaintiff contends that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the plaintiff's distress could have been detrimental to her physical health, and the defendant's conduct was the cause of the plaintiff's emotional distress.

" Connecticut recognizes a cause of action for negligent infliction of emotional distress. See *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). In general, to prevail on such a claim, a plaintiff must prove that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress. *Carrol v. Allstate Ins. Co., supra*, 262 Conn. 446. The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm. *Scanlon v. Connecticut Light & Power Co.*, 258 Conn. 436, 446-47, 782 A.2d 87 (2001). In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm. *Id.* " *Olson v. Bristol-Burlington Health District*, 87 Conn.App. 1, 5, 863 A.2d 748, cert. granted, 273 Conn. 914, 870 A.2d 1083 (2005) (appeal withdrawn May 25, 2005).

" [A] pivotal difference between claims for emotional distress based on intentional conduct and those based on negligent conduct is that an essential component of an intentional infliction claim is that the defendant's alleged behavior must be extreme and outrageous. A claim based on the negligent infliction of emotional distress requires only that the actor's conduct be unreasonable and create an unreasonable risk of foreseeable emotional harm. Thus . . . a complaint alleging negligent infliction of emotional distress need not include allegations of extreme and outrageous behavior." *Id.*, 7.

In the present case, the parties dispute whether the defendant's conduct in making an allegedly false report to the police was reasonable under the circumstances. The defendant presented evidence that it was reasonable for her to make a report to the police based on her son's statement that the plaintiff physically hurt him and scared him. The plaintiff presented evidence to the contrary, that the defendant knew her accusations were unfounded, or that she made them with reckless disregard to their truth or falsity. Furthermore, the parties dispute whether the defendant's conduct created an unreasonable risk of causing the plaintiff

emotional harm. The plaintiff presented evidence that the manner in which the defendant went about initiating the formal criminal complaint was motivated by design or with reckless indifference to causing the specific emotional harm suffered by the plaintiff.

The evidence submitted by the parties demonstrate that there is a genuine issue of material fact regarding (1) whether the defendant's conduct was unreasonable, and (2) whether the defendant created an unreasonable risk of foreseeable harm to the plaintiff. Accordingly, the defendant's motion for summary judgment as to count two is denied.

**CONCLUSION**

For the foregoing reasons, the court grants the defendant's motion for summary judgment as to count one and denies the motion as to count two of the plaintiff's amended complaint dated May 9, 2015.

---------

Notes:

[1]Count one of the operative amended complaint is a re-pleading of count four of the original complaint, which was stricken by the court on April 23, 2015.

[2]Count two of the operative amended complaint is in all respects identical to count five of the original complaint.

[3]In her amended complaint, the plaintiff alleges daily migraine headaches, sleeplessness and anxiety; which has severely impacted her ability to work, resulting in lost income. Moreover, the plaintiff alleges that the defendant has caused her relationship with the children to suffer.

[4]This is substantially the same language used in the defendant's second special defense, filed on November 19, 2015, which states that: " The defendant had a qualified privilege to make the alleged statements, acted in good faith, and did not abuse said qualified privilege."

[5]The plaintiff's corrected memorandum in opposition to the defendant's motion for summary judgment is identical in content to the original memorandum in opposition, except that it removes duplicate documents. The court will reference the corrected brief herein.

[6]On April 23, 2015, the court granted the defendant's motion to strike the intentional infliction of emotional distress count because the allegations in the original complaint were insufficient as a matter of law to set forth a claim. On October 27, 2015, the court denied the defendant's motion to strike the intentional infliction of emotional distress count because the more detailed

allegations in the amended complaint were sufficiently egregious to set forth a claim.

[7]In the present case, no scheduling order has been filed. Currently, jury selection is scheduled for May 19, 2016. Additionally, the court granted the defendant permission to file the present motion for summary judgment on February 3, 2016.

[8]The defendant also raises qualified immunity as her second special defense, filed on November 19, 2015.

---------