UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHANIE WASHINGTON | ) | CIVIL ACTION NO.: |
|    *-Plaintiff-* | ) | |
| | ) | |
| V. | ) | 3:20-cv-01111 (VLB) |
| | ) | |
| DEVIN EATON, TERRANCE POLLOCK, AZIZ ABDULLATTF, CURT B. LENG, JOHN SULLIVAN, TOWN OF HAMDEN, TOWN OF HAMDEN POLICE DEPARTMENT, RONNELL HIGGINS, YALE UNIVERSITY, JUSTIN ELICKER, OTONIEL REYES, CITY OF NEW HAVEN, NEW HAVEN POLICE DEPARTMENT, and T&S UNITED, LLC | ) ) ) ) ) ) ) ) ) ) ) | |
|    *-Defendants-* | ) | November 12, 2020 |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO DISMISS**

      The Defendants Aziz Abdulattf and T&S United, LLC hereby submit this Reply Memorandum in further support of their Motion to Dismiss the Plaintiff's Complaint as against them.  For the reasons set forth herein, and the reasons set forth in the original Memorandum the Motion should be granted and the Objection should be overruled.

      As we stated in the original Motion, this action presents a novel issue; namely, whether a crime victim who reports a crime to 9-1-1 may be sued by a bystander who is allegedly injured by police who misapply excessive force to the bystander while attempting to effect the arrest of the alleged perpetrator of the reported crime.

      We argued that the response should be negative for a number of

reasons. The Memorandum in Opposition fails even to address some arguments; namely, the non-existence of the purported cause of action and the plaintiff's lack of standing to complain about statements related to Mr. Witherspoon. As to the remainder of the arguments, we will address the deficiencies seriatim.

## FACTS AND PROCEDURAL HISTORY

While we assume the Court's familiarity with the statement of facts from the original Memorandum, some facts bear repeating or highlighting. There is no question that Ms. Washington was never mentioned in the 9-1-1 call. Indeed, there is nothing in the Complaint to suggest these defendants even knew Ms. Washington existed. There is no question that these defendants had no involvement whatsoever in the physical acts performed by the police defendants. There is no question that Mr. Witherspoon accosted three strangers at a service station at 4:00AM in an urban neighborhood and that police were called as a result. There is also no dispute about the avalanche of errors that ultimately led to Ms. Washington being hit by bullets.

Of somewhat greater concern is the Statement of Facts in the plaintiff's brief. The plaintiff is bound to the same rules on a Motion to Dismiss as the Defense. The facts must be limited to those set forth in the Complaint. The Opposition brief adds an entirely new allegation that Mr. Abdullattf supposedly conveyed to investigators that he never saw a firearm. Brief, at 4. That allegation is not in the Complaint and should

therefore not be in the current argument especially since it substantially surpasses what actually was alleged. The Brief also makes claims about corroborating evidence. Brief, at 8. Whether allegations are corroborated or not has nothing to do with the pending Motion to Dismiss. We respectfully submit these arguments are improper and should be ignored by the Court.

### THERE IS NO SUCH ACTION AS "FALSE REPORT"

As we noted in the original Memorandum, we had not found any authority for a cause of action of "false report." The plaintiff has not cited any either. We submit therefore that there are none. We submitted that the closest analog was defamation. Since all of the cases cited by the plaintiff are defamation cases, the plaintiff must concur.

In the Memorandum we set forth Connecticut law on defamation: To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to the third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. Craig v. Stafford Construction, Inc., 271 Conn. 78, 84 (2004). Assuming for the sake of argument that a defamatory statement was made, there is no allegation that the plaintiff (Ms. Washington) was identified in the statement. Indeed, there is no suggestion Ms. Washington was ever mentioned at all. As a result, the second prong is nonexistent so the action should be dismissed.

**Furthermore, in each of the cases cited by the parties the plaintiff was the person allegedly defamed. Accordingly, there is obviously a fundamental difference between Mr. Witherspoon who was identified as the "active player" and Ms. Washington who was never mentioned at all. In appears that, at best, the Complaint is an attempt to "bootstrap"** *Ms. Washington* **into a cause of action based upon an allegedly defamatory statement concerning** *Mr. Witherspoon*. **We respectfully submit that no authority exists for one party asserting defamation due to statements made about another. We certainly have not found any such authority and the plaintiff cites none. As a result, the plaintiff lacks standing and the action is not viable. In absence of a viable cause of action, the Complaint should be dismissed.**

**<u>AN ALLEGATION OF MALICE IS REQUIRED TO DEFEAT IMMUNITY</u>**

**In <u>Hopkins v. O'Connor</u>, 282 821, 846 (2007) the Court referred to the "talismanic language" required to survive a summary judgement motion. The language was "falsely and maliciously." Notably, that language does not appear in the Complaint. See Complaint, at 82. While the Complaint repeatedly claims that the police report proved false, it never sufficiently alleged malice.**

**The Complaint does not use the word "malice" at all. So the "talisman" is not there. But what is alleged is also insufficient. It is fundamental that malice generally includes some statement of motive. Our Courts have held that for purposes of our law of defamation, malice is not**

4

restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive.  <u>Bleich v. Ortiz</u>, 196 Conn. 498, 504 (1985).  "Malice in fact is sufficiently shown by proof that the publications were made with improper and unjustifiable motives."  <u>Hopkins v. O'Connor</u>, 282 Conn. 821, 846–47 (2007).  One would have a very hard task to find or imply a motive for the defendant to make a claim as against a complete stranger like the relationship between the defendant and Witherspoon.  It is perhaps unsurprising that the Complaint is utterly bereft of the allegation.  Some other Courts have perhaps implied a motive where it is alleged that the defendant "purposefully avoided the truth."  <u>Hopkins v. O'Connor</u>, 282 821, 846 (2007).  The Complaint does not allege that either.

All of the cases cited are normal "garden variety" defamation cases.  But this case contains the additional factor that the alleged statement was a panicked call for help from the police which is constitutionally protected and is also protected as a matter of public policy.  Accordingly, in absence of an alleged improper or unjustifiable motive, the Complaint should fail.  The plaintiff made no attempt to plead motive; likely because she cannot.

### THE OPPOSITION DOES NOT DEFEAT THE NOERR-PENNINGTON CLAIM

The opposition does not squarely address the authority cited in the original Memorandum in which we noted that in Connecticut, calls to the police, without any additional detail are not actionable.  We cited <u>Graff v. O'Connell</u>, 2003 Conn. Super. LEXIS 2686 (Aurigemma, J.)(2003) which

enforced the Noerr-Pennington Doctrine in connection with repeated calls to the police.  The plaintiff concedes the holding.  Brief, at 9-10.  The plaintiff attempts to distinguish that case by suggesting that there were many other types of protected reports.  <u>Id.</u>  With that we completely agree.  There are a whole host of public complaints that are protected.  None of them is as important or as protected as calls to the police reporting an attempted robbery.  So, far from undermining the defense argument, the plaintiff's brief largely supports it.

As expected, the plaintiff makes an attempt to assert the sham exception.  However, as noted in the original Memorandum, the sham exception simply does not apply here.  There is a two-part test to define the sham exception.  First, the action must be objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits.  Second, the baseless action must conceal an attempt to interfere directly with the business relationships through use of governmental process as opposed to the outcome of the process.  See e.g. <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.</u>, 508 U.S. 49, 60-62 (1993).  The present matter meets neither of the parts.

Even in the selective and highly sanitized version of events set out in the Complaint, the plaintiff cannot hide the fact that Mr. Witherspoon accosted complete strangers at 4AM at a service station.  Whatever errors the plaintiff thinks she can prove, the police report is not "objectively baseless."  Further, even if the Court were to excise the "business

6

relationship" language, it clear that the second part contemplates some improper or unjustifiable motive. No such thing – or anything close – is alleged.

## CONNECTICUT REJECTED THE APPORTIONMENT ARGUMENT

In the initial Memorandum, the defense asserted that the actions of Eaton and Pollock are superseding intervening causes as a matter of law. We might add that Mr. Witherspoon's actions are as well. In response, the plaintiff incorrectly claims that superseding causes are no longer considered in Connecticut. Interestingly, in almost the next sentence, the plaintiff cites "intentional torts" and "criminal events" as explicit exceptions to the rule upon which they rely. Brief, at 11. The actions of Eaton and Pollock (especially as alleged) are both intentional torts and criminal acts. Accordingly, they manifestly fit within the exception.

The plaintiff then goes on to discuss the apportionment process. That argument totally ignores Conn. Gen. Stat. §52-572h(o). As the undersigned is intimately well aware, our Supreme Court first opined that apportionment could be had between tortfeasors in non-negligence cases. Bhinder v. Sun Co., Inc., 246 Conn. 223 (1998). The Court later reversed after the legislature unambiguously clarified the statute. Bhinder v. Sun Co., Inc., 263 Conn. 358 (2003). In Bhinder II, the Court upheld a decision by the Superior Court striking an apportionment complaint brought by Sunoco against a shooter who killed an employee of their franchisee. As a result, we respectfully submit both the legislature and the Supreme Court

7

have unambiguously held that there cannot be apportionment between the moving defendants and the shooters in this case. Allard v. Liberty Oil Equip. Co., Inc., 253 Conn. 787, 803 (2000).  As such, the analysis set out in the original Memorandum applies rather than that in the opposition brief.

**THE PLAINTIFF FAILS TO ADDRESS LODGE V. ARRET SALES**

In the original Memorandum, the defense cited Lodge v. Arett Sales Corp., 246 Conn. 563 (Conn. 1998).  Although the plaintiff attempts to extrapolate a cause of action from a handful of cases in which a landowner was held liable *in negligence* for failure to prevent a foreseeable criminal act, the plaintiff fails to address the case that most obviously correlates to the instant fact pattern.

In Lodge, the defendant Wells Fargo caused a false report.  That false report generated an emergency call to the Waterbury Fire Department.  The Fire Department attempted to respond but never arrived because of a motor vehicle collision en route.  The cause of the accident was determined to be faulty brakes on the fire engine.  We submit the fact that the responding agency was police rather than fire is a distinction without a difference.  We further submit that the intentional actions by the police in this case constitute much more significant intervening causes than negligent maintenance.  As such, if anything, the instant case is much more compelling than Lodge.

It was never suggested that Lodge was anything other than a straight negligence case.  In this case, the intervening conduct is explicitly alleged

8

to be deliberate, reckless and intentional.  Further, the resulting harm in this case was substantially more attenuated in <u>Lodge</u> because purportedly afflicted plaintiff was an alleged bystander rather than the principal actor. As a result we respectfully submit that <u>Lodge</u> should be deemed controlling as a matter of law and the case should be dismissed.

## CONCLUSION

For all the reasons set forth herein as well as the reasons set forth in the original Memorandum, the defendants Aziz Abdullattf and T & S United LLC submit the Motion to Dismiss should be granted and the plaintiff's Complaint should be dismissed as against them.  More particularly, Count Ten and Count Eleven should be dismissed with prejudice.

The Defendants,
Aziz Abdullattf and T&S United, LLC

By: _____/s/_____
John J. Morgan (ct13312)
Barr & Morgan
84 West Park Place, Third Floor
Stamford, CT 06901
Tel: (203) 356-1595
Fax: (203) 504-8926
jmorgan@pmpalawyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2020 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: _____/s/_____
John J. Morgan (ct13312)
Barr & Morgan
84 West Park Place, Third Floor
Stamford, CT 06901
Tel: (203) 356-1595
Fax: (203) 504-8926
jmorgan@pmpalawyer.com